# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10.<br><br>    Defendants. | **CASE NO. 1:11-cv-01112**<br><br>**Honorable Judge Milton I. Shadur** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AMENDMENT OF THE CLASS DEFINITION, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING**

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko
Peter A. Muhic
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Class Counsel*

**THE COLLINS LAW FIRM, P.C.**
Shawn M. Collins
Robert J. Dawidiuk
Megan A. Drefchinski
1770 North Park Street
Suite 200
Naperville, Illinois 60563
Phone: (630) 527-1595
Facsimile: (630) 527-1193

*Liaison Class Counsel*

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .......................................... 3

    A.    Description of the Action ........................................................................ 3

    B.    Investigation of Claims and Discovery .................................................. 4

    C.    Motion Practice Clarified the Issues in the Action ............................... 6

    D.    Settlement Negotiations ......................................................................... 8

    E.    The Proposed Settlement ....................................................................... 9

    F.    Reasons for the Settlement ................................................................... 10

    G.    Proposed Timetable ............................................................................. 11

III.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .................... 12

    A.    The Proposed Notice Plan Meets the Requirements of Due Process.................. 12

    B.    Description of the Notice Plan .............................................................. 13

IV.    THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL .................................................................... 14

    A.    The Strength of Plaintiffs' Case Compared to the Terms of the Settlement ....... 16

    B.    The Likely Complexity, Length, and Expense of Continued Litigation.............. 18

    C.    The Amount of Opposition to the Settlement By Affected Parties .................... 19

    D.    The Opinion of Competent Counsel ..................................................... 19

    E.    The Stage of the Proceedings and the Amount of Discovery Completed........... 21

V.    THE PROPOSED SETTLEMENT CLASS MEETS THE PREREQUISITES FOR CERTIFICATION PURSUANT TO FEDERAL RULE 23 ................... 22

    A.    This Court Previously Certified a Class in This Action ....................... 22

    B.    The Amended Settlement Class Satisfies the Requirements of Rule 23(a) ......... 24

        1.    Numerosity ................................................................................ 24

        2.    Commonality ............................................................................. 24

        3.     Typicality ................................................................................. 26

        4.     Adequacy of Representation ..................................................... 27

    C.    The Class May Be Properly Certified Under Rule 23(b)(1) ............................... 28

        1.     Certification Under Rule 23(b)(1)(B) is Most Appropriate ................... 28

        2.     This Action Also May Be Certified Under Rule 23(b)(1)(A)................. 29

    D.    Appointment of Class Counsel ........................................................... 29

VI.    CONCLUSION ............................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott v. Lockheed Martin Corp.*,
    No. 06-cv-0701, 2009 WL 969713 (S.D. Ill. Apr. 3, 2009) ..................................29

*In re Advanta Corp. ERISA Litig.*,
    No. 09-cv-04974 (E.D. Pa. June 4, 2010) ..............................................................20

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1977)...............................................................................................14

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
    Nos. 07-cv-2898, 09-cv-2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ........15, 16, 19, 21

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134
    F.3d 873 (7th Cir. 1998) ....................................................................................14, 15, 19

*AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330, 346 (N.D. Ill. 2010)....................................................................15

*In re Beazer Homes USA, Inc. ERISA Litig.*,
    No. 07-cv-00952-RWS (N.D. Ga. Oct. 11, 2007) ................................................20

*Brieger v. Tellabs, Inc.*,
    659 F. Supp. 2d 967 (N.D. Ill. 2009) ...............................................................2, 17, 25

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
    No. 12-cv-688 (W.D. Okla. Dec. 6, 2012)............................................................20

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
    No. 12-cv-688 (W.D. Okla. Dec. 6, 2012)............................................................21

*Chesemore v. Alliance Holdings, Inc.*,
    276 F.R.D. 506 (W.D. Wis. 2011)........................................................................12

*Dann v. Lincoln Nat'l Corp.*,
    No. 08-cv-5740 (E.D. Pa. June 4, 2009)...............................................................20

*DiFelice v. U.S. Airways, Inc.*,
    436 F. Supp. 2d 756 (E.D. Va. 2006) ...................................................................17

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ................................................................................16

*Donovan v. St. Joseph County Sheriff,*
No. 11-cv-133, 2012 WL 1601314 (N.D. Ind. May 3, 2012) .................................................30

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) ...................................................................................................16

*In re First American Corp. ERISA Litig,*
No. 07-cv-01357 (C.D. Cal. Feb. 1, 2008) ..............................................................................20

*Gautreaux v. Pierce,*
690 F.2d 616 (7th Cir. 1982) ...................................................................................................15

*George v. Kraft Foods Global, Inc.,*
251 F.R.D. 338 (N.D. Ill. 2008)...............................................................................................23

*George v. Kraft Foods Global, Inc.,*
270 F.R.D. 355 (N.D. Ill. 2010).........................................................................................26, 29

*Hargrove v. Eaglepicher Corp.,*
No. 10-cv-10946, 2012 WL 1668152 (E.D. Mich. May 10, 2012) .........................................18

*Harper v. Sheriff of Cook County,*
581 F.3d 511 (7th Cir. 2009) ...................................................................................................24

*Harris v. First Regional Bancorp,*
No. 10-cv-07164 (C.D. Cal. Jan. 6, 2011) ..............................................................................20

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) .......................................................................................15, 16, 18

*Landgraff v. Columbia.HCA Healthcare Corp.,*
No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ...........................................17

*In re Lear ERISA Litig.,*
No. 06-cv-11735 (E.D. Mich. June 30, 2006) .........................................................................20

*Loomis v. Exelon Corp.,*
No. 06-cv-4900, 2007 WL 2060799 (N.D. Ill. June 26, 2007)................................................29

*Maley v. DelGlobal Techs. Corps.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................................16

*McCabe v. Crawford & Co.,*
210 F.R.D. 631 (N.D. Ill. 2002)...............................................................................................24

*In re Merck & Co., Inc. Sec. Der., & "ERISA" Litig.,*
MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009)................................................23, 29

*In re Merck & Co., Inc. Sec. Der., & "ERISA" Litig.*,
  MDL No. 1658, No. 05-cv-02369 (D.N.J. Oct. 19, 2011).......................................................23

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  No. 08-cv-1974 (D.N.J. June 22, 2012)..........................................................14, 22, 23

*Moore v. Simpson*,
  No. 96-cv-2971, 1997 U.S. Dist. LEXIS 13791 (N.D. Ill. Sept. 5, 1997)..............................25

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)............................................................................................12

*Muro v. Target Corp.*,
  580 F.3d 485 (7th Cir. 2009)...............................................................................26

*In re National City Corp. Securities, Derivative and Employee Retirement Income
  Security Act (ERISA) Litig.*,
  No. 08-cv-70000 (N.D. Ohio May 12, 2008)...........................................................20

*Nelson v. Hodowal (IPALCO)*,
  512 F.3d 347 (7th Cir. 2008)...............................................................................17

*Nelson v. Ipalco Enterprises, Inc.*,
  No. 02-cv-477, 2005 WL 1924332 (S.D. Ind. Aug. 11, 2005)..........................................18

*Nowak v. Ford Motor Co.*,
  240 F.R.D. 355 (E.D. Mich. 2006).......................................................................20

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006)...............................................................................26

*In re R.H. Donnelley Corp. ERISA Litig.*,
  No. 09-cv-7571 (N.D. Ill. Nov. 14, 2012).........................................................14, 25, 26

*In re R.H. Donnelley ERISA Litig.*,
  No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010)...............................................................20

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004).......................................................................29

*In re Raytheon ERISA Litig.*,
  No. 03-cv-10940 (D. Mass. Sept. 18, 2003).............................................................20

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993)...................................................................................27

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992).........................................................................25, 26

*In re Schering Plough Corp. ERISA Litig.,*
    589 F.3d 585 (3d. Cir. 2009)....................................................................23, 28

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    130 U.S. 1431 (2010).................................................................................24

*Shane, et al. v. Amcore, et al.,*
    No. 10-cv-50089 (N.D. Ill. Mar. 24, 2011)..............................................20

*In re: SLM Corp. ERISA Litig.,*
    No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008)...............................................20

*Smith v. Krispy Kreme Doughnut Corp.,*
    No. 05-cv-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) .......................17, 24

*In re SunTrust Banks, Inc. ERISA Litig.,*
    No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) ..................................................20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ....................................................................15

*Thomas v. SmithKline Beecham Corp.,*
    201 F.R.D. 386 (E.D. Pa. 2001).................................................................27

*Walter v. Level 3 Comm., Inc.,*
    No. 09-cv-0658 (D. Colo. Mar. 26, 2012) ................................................14

*In re Westar Energy Inc. ERISA Litig.,*
    No. 03-cv-4032 (D. Kan. Sept. 23, 2003) .................................................20

*In re Williams Cos. ERISA Litig.,*
    231 F.R.D. 416 (N.D. Okla. 2005).............................................................23

*In re Xcel Energy, Inc.,*
    364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................18

*Yost v. First Horizon,*
    No. 08-cv-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) ............................29

*In re YRC Worldwide Inc. ERISA Litig.,*
    No. 09-cv-02593, Preliminary Approval Order at 4 (D. Kan. Nov. 22, 2011) .........14

**STATUTES**

29 U.S.C. § 1109.....................................................................................3

29 U.S.C. § 1132.....................................................................................3

Class Action Fairness Act of 2005, 28 U.S.C. § 1715................................11

## RULES

FED. R. CIV. P. 23 ................................................................................................ passim

FED. R. CIV. P. 23(a) ...........................................................................................24, 28

FED. R. CIV. P. 23(a)(1) .............................................................................................24

FED. R. CIV. P. 23(a)(2) .........................................................................................24, 25

FED. R. CIV. P. 23(a)(3) .............................................................................................26

FED. R. CIV. P. 23(a)(4) .............................................................................................27

FED. R. CIV. P. 23(b) ............................................................................................24, 28

FED. R. CIV. P. 23(b)(1) ..............................................................................2, 12, 28, 29

FED. R. CIV. P. 23(b)(1)(A) ....................................................................................28, 29

FED. R. CIV. P. 23(b)(1)(B) ........................................................................................29

FED. R. CIV. P. 23(b)(3) .............................................................................................12

FED. R. CIV. P. 23(c)(2)(A) .........................................................................................12

FED. R. CIV. P. 23(e) .......................................................................................13, 14, 15

FED. R. CIV. P. 23(g) ...........................................................................................20, 29

FED. R. CIV. P. 23(g)(1)(A) .........................................................................................30

FED. R. CIV. P. 23(g)(4) .............................................................................................30

FED. R. CIV. P. 30(b)(6) ...............................................................................................5

## OTHER AUTHORITIES

7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, Fed. Prac. & Proc. §
    1797.6 (3d ed. 2010) .............................................................................................14

Employee Retirement Income Security Act of 1974 .....................................................2

Plaintiffs Mary Dalton and Emil Adolphson, (collectively "Named Plaintiffs" or "Plaintiffs"), participants in the Old Second Bancorp, Inc. Employees' 401(k) Savings Plan and Trust (the "Plan"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of the Proposed Settlement ("Motion for Preliminary Approval") entered into with Defendants,[1] and respectfully move this Court for an Order (1) granting preliminary approval to the proposed Settlement Agreement And Release (the "Settlement" or "Settlement Agreement"),[2] (2) amending the Class definition, (3) approving the form and manner of providing notice of the Settlement to the proposed Settlement Class (the "Notice Plan"), and (4) scheduling of a Final Approval Hearing.

## I.      INTRODUCTION

Plaintiffs and Defendants (collectively, the "Parties") have reached a proposed Settlement of this case providing for a monetary payment of $7,500,000.00 (the "Settlement Amount"), which will provide substantial benefits to members of the Settlement Class, and resolve all claims asserted by Plaintiffs in this Action on behalf of the Plan and Settlement Class. In light of the facts, governing law, and the substantial risks of continued litigation, Plaintiffs and Class Counsel[3] believe the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the proposed Settlement Class as it provides for an immediate and meaningful

---

[1]  "Defendants" refers, collectively, to Old Second Bancorp, Inc., Old Second National Bank, the Employee Benefits Committee of Old Second Bancorp, Inc., J. Douglas Cheatham, James Eccher, William B. Skoglund, Robert DiCosola, Jeff West, and Stewart Beach.

[2]  The Settlement Agreement, attached hereto as Exhibit A, itself has several exhibits. These exhibits include the Preliminary Approval Oder proposed by all parties to the Settlement Agreement, which is appended to the Settlement Agreement as Exhibit 1, and the proposed Final Approval Order and Judgment appended to the Settlement Agreement as Exhibit 2. The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein. Thus, all capitalized terms not otherwise defined in this Memorandum shall have the same meaning as ascribed to them in the Settlement Agreement.

[3]  "Class Counsel" means Kessler Topaz Meltzer & Check, LLP, referred to hereinafter as KTMC.

1

recovery. Resolving this case at this juncture allows the Parties to avoid continued and costly litigation that would deplete available insurance coverage and could result in a judgment less than the recovery under the Settlement Agreement, or even no recovery at all.

Plaintiffs have vigorously prosecuted this Action. In addition to defeating Defendants' motion to dismiss the Action, Plaintiffs obtained class certification as well as significant rulings in discovery disputes. Nevertheless, there is no doubt that lawsuits of this type brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) face significant litigation and trial risks. KTMC tried an analogous case to verdict in this same jurisdiction – *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009) – and is particularly qualified to realistically evaluate the risks of continued litigation. The Parties agreed to the proposed Settlement only after arm's length negotiations by experienced counsel on both sides during the course of three separate mediation sessions utilizing two different mediators.

As discussed *infra*, by Order dated September 20, 2011, this Court certified a class in the Action pursuant to FED. R. CIV. P. 23(b)(1) with an open-ended class period. Dkt. No. 79. As part of the Settlement Agreement, the Parties seek an amendment of the Class definition to establish February 25, 2013 (the date the Settlement Agreement was executed) as the end date for the Class Period. Finally, the proposed Notice Plan which consists of individualized direct-mail, publication, and an Internet settlement website, as described herein, is consistent with the forms of notice approved in directly analogous actions and satisfies due process concerns. Such notice will inform Settlement Class Members of the terms of the Settlement, how to object to the Settlement and the date of the Final Approval Hearing.

As set forth below in detail, all prerequisites for preliminary approval have been met and the proposed Settlement should be preliminarily approved allowing Plaintiffs to provide notice to the Settlement Class.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Description of the Action

Plaintiff Mary Dalton initiated the Action against Defendants on February 17, 2011 by filing a complaint pursuant to §§ 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132.  Dkt. No. 1.  An amended complaint was filed on June 21, 2011, in which Plaintiff Adolphson joined Plaintiff Dalton as a Named Plaintiff in the Action.  Dkt. No. 39.

Plaintiffs alleged in Count I that certain Defendants, each having responsibilities regarding the management and investment of Plan assets, breached their fiduciary duties to the Plan, to Plaintiffs, and to the proposed Class by failing to prudently and loyally manage the Plan's investment in Company securities by:  (1) continuing to offer Old Second Stock as a Plan investment option when it was imprudent to do so; (2) failing to provide complete and accurate information to Plan participants regarding the Company's financial condition and the prudence of investing in Company Stock; and (3) maintaining the Plan's pre-existing significant investment in Old Second Stock when it was no longer a prudent investment for the Plan.

Plaintiffs alleged in Count II that certain Defendants breached their fiduciary duties by failing to adequately monitor other persons to whom management/administration of Plan assets was delegated, despite the fact that such Defendants knew or should have known that such other fiduciaries were imprudently allowing the Plan to continue offering Old Second Stock as an investment option and continued investing Plan assets in Old Second Stock when it was no longer prudent to do so.

On June 15, 2012, Plaintiffs filed a second amended complaint ("Second Amended Complaint") to add a third count. Dkt. No. 103. The new Count contains additional allegations against Defendant Beach, specifically for breach of the duty of loyalty and for failing to avoid conflicts of interest while serving as a fiduciary of the Plan. These allegations were associated with Defendant Beach's activities prior to resigning from the wealth management division of Old Second National Bank (the "Bank") in July 2011 to establish a rival financial advisory firm.

### B. Investigation of Claims and Discovery

Before filing the initial complaint in this matter, Class Counsel reviewed voluminous public records regarding the Company, reviewed relevant and recent case law, and considered potential legal claims. As described below, prior to filing the amended complaints, Plaintiffs' additional investigation included, but was not limited to: (i) reviewing documents produced by Defendants, including Plan-related documents received in response to Plaintiffs' request for such documents pursuant to ERISA § 104(b); (ii) review of publicly-available materials related to the Company and the Plan; (iii) analysis of specific corporate transactions; (iv) interviews of Plan participants', and (v) depositions of Defendants and witnesses.

Informal discovery was initiated on February 16, 2011 when Class Counsel wrote to Old Second on behalf of Plaintiff Dalton requesting all operative Plan-related documents during the Class Period. On March 17, 2011, Old Second responded through its counsel producing several hundred pages of the requested documents. Thereafter, the Parties engaged in formal discovery. On May 6, 2011 and May 13, 2011, respectively, Plaintiffs served Defendants with requests for production of documents and interrogatories regarding ERISA-specific issues. Defendants served their responses to the interrogatories on June 24, 2011, but the requests for production

required a lengthy meet and confer process. It was not until September 23, 2011 that the Parties reached an agreement regarding the scope of documents to be produced.

Plaintiffs also served Defendants with separate requests for production of documents and interrogatories regarding merits-related issues on September 7, 2011, to which Defendants responded on October 7, 2011. Altogether, Defendants produced over 90,000 pages of documents in this Action.

Defendants also served discovery upon Plaintiffs. On May 16, 2011, Defendants served a request for production of documents on Plaintiff Dalton, and subsequently served a request for production of documents on Plaintiff Adolphson on June 27, 2011 to which Plaintiffs responded.

On August 10, 2011, Plaintiffs conducted a FED. R. CIV. P. 30(b)(6) deposition of the Plan. Defendants produced Defendant DiCosola as the deponent, who testified to the operation and administration of the Plan. In late 2011 and into 2012, Plaintiffs served supplemental discovery requests on Old Second and also took the depositions of two Defendants – Robert DiCosola (December 7, 2011) and Jeff West (January 4, 2012). During that time period, Plaintiffs also served subpoenas on the Plan's auditor Grant Thorton, the Plan's two recordkeepers during the Class Period, HPL&S and Retirement Direct, and the Plan's fiduciary counsel Barack Ferrazzano Kirschbaum & Nagelberg LLP ("Barack Ferrazzano"). Plaintiffs also served subpoenas on former Bank employees, Rodney Sloan (former Chief Risk Officer), and as described in greater detail below, on Jonathon Hylton, Nicholas A. Latko, and Michael J. Morcos. Plaintiffs also served a subpoena on the firm of Bazos, Freeman, Kramer, Schuster, Vanek and Kolb with respect to allegations against Defendant Beach. Meanwhile, Defendants also continued their discovery efforts which included deposing Plaintiff Dalton on January 12, 2012 and Plaintiff Adolphson on January 13, 2012.

After a stay of the case through May 2012 for the Parties to engage in mediation (as discussed in more detail below), discovery resumed. This included the production and review of substantial documents and other electronically stored information. On September 19, 2012, Plaintiffs deposed Mr. Morcos, who worked closely with Defendant Beach, and on October 18, 2012, Plaintiffs deposed Mr. Sloan. On November 7, 2012, Plaintiffs deposed Andrew K. Strimaitis, an attorney with Barack Ferrazano, in his capacity as the Plan's fiduciary counsel.

 The above efforts enabled Plaintiffs to delve into the merits of the Action including identifying the Defendants, other persons and entities believed to have discretionary fiduciary authority or control over the Plan and the Plan's assets. With respect to the Second Amended Complaint in particular, Plaintiffs' allegations against Defendant Beach were based on information obtained through their counsel's investigation (including pleadings from a separate case) and diligent review of documents produced in discovery, as well as deposition testimony.

### C. Motion Practice Clarified the Issues in the Action

Critical issues in the litigation were extensively briefed by the Parties. On July 20, 2011, Defendants moved to dismiss Plaintiffs' first amended complaint (Dkt. No. 47). On August 10, 2011, Plaintiffs filed their opposition to Defendants' motion to dismiss (Dkt. No. 66), and Defendants filed their reply memorandum seven days later (Dkt. No. 71).

On August 16, 2011, Plaintiffs filed their motion for class certification. Dkt. No. 68. Defendants responded to Plaintiffs' class certification motion on August 30, 2011 (Dkt. No. 76), and Plaintiffs filed their reply memorandum on September 6, 2011 (Dkt. No. 78). On September 20, 2011, this Court granted in part and denied in part Plaintiffs' class certification motion. Dkt. No. 79. Specifically, the Court certified a class with Plaintiff Adolphson as the sole class

representative, but rejected Plaintiff Dalton as a proposed class representative due to particular circumstances with her employment.

On December 23, 2011, the Parties filed an agreed motion with the Court seeking to stay the litigation so the Parties could select an appropriate mediator and participate in a formal mediation session. Dkt. No. 91. The Court granted the motion on January 11, 2012, and stayed the Action until March 14, 2012. Dkt. No. 93. After a request by the Parties, the Court extended the stay until May 17, 2012. Dkt. No. 96. As described below, despite serious efforts, no settlement was reached at that time. Accordingly, following a status hearing on May 30, 2012, the Court lifted the stay and the Parties resumed a full litigation posture.

Based on information obtained during Plaintiffs' investigatory and discovery efforts described above, Plaintiffs filed the Second Amended Complaint on June 15, 2012. On June 29, 2012, Defendants moved to dismiss Plaintiffs' Second Amended Complaint. Dkt. No. 109. Plaintiffs responded on July 13, 2012 (Dkt. No. 130), and Defendants filed a reply on July 20, 2012 (Dkt. No. 143).

Concurrently, the Parties engaged in significant briefing related to discovery sought by the Plaintiffs in June and July of 2012. As noted above, on June 20, 2012, Plaintiffs served subpoenas on three former Bank employees, who were associates of Defendant Beach, seeking documents and information related to the conflicts of interest allegations against Defendant Beach. On July 6, 2012, Defendants moved to quash the subpoenas (Dkt. No. 112), and on July 10th, the three third-parties filed a motion to join the motion to quash (Dkt. No. 128). Plaintiffs filed an opposition to Defendants' motion to quash on August 1, 2012 (Dkt. No. 144), and Defendants filed their reply memorandum five days later (Dkt. No. 145).

Additionally, on July 16, 2012, Plaintiffs filed three motions to compel production of discovery regarding three sets of discovery: (1) the conflicts of interest allegations against Defendant Beach; (2) the financial performance of Old Second during the Class Period; and (3) Old Second's acquisition of HeritageBanc, Inc. Dkt. Nos. 131-139. Defendants opposed Plaintiffs' motions to compel on July 19, 2012 (Dkt. Nos. 140, 141), and Plaintiffs filed their reply memoranda on August 6, 2012. Dkt. Nos. 146-148.

On August 7th, the Court entered a minute order granting two of Plaintiffs' motions to compel (Dkt. No. 151), and three weeks later on August 28th entered another minute order granting Plaintiffs' third motion to compel. Dkt. No. 152. Additionally, the Court denied Defendants' motion to quash the three third-party subpoenas related to the conflicts of interest allegations against Defendant Beach. Dkt. No. 151.

On November 2, 2012, this Court entered a Memorandum Opinion and Order denying Defendants' motion to dismiss in its entirety. Dkt. No. 161. Subsequently, on November 16, 2012, Defendants filed their answer to Plaintiffs' Second Amended Complaint. Dkt. No. 162. Shortly thereafter, the Parties agreed to restart their settlement discussions.

### D. Settlement Negotiations

The settlement negotiations in this Action were intense and certainly arm's-length. As noted above, the Parties participated in three separate mediation sessions and utilized two different mediators. First, on May 3, 2012, the Parties participated in a full-day mediation session in Chicago before the Honorable Donald P. O'Connell, Chief Judge Circuit Court of Cook County, IL (Ret.). In advance of that session, the Parties submitted extensive, written, confidential mediation memoranda to Judge O'Connell, and Class Counsel consulted with appropriate experts concerning damages and liability issues. During the mediation, attended by

counsel and individual parties, the Parties made formal presentations and engaged in spirited debate as to critical legal and factual issues concerning liability and damages. The Parties concluded discussions that day remaining far apart in their respective positions and returned to a litigation posture. On October 30, 2012, counsel and individual parties (including Plaintiff Adolphson) again attended an in-person mediation session in Chicago before Judge O'Connell. After another round of spirited debates, the Parties were unable to reach an agreement to settle but mutually agreed to participate in a subsequent mediation session with another well-respected mediator, David Geronemus of JAMS. On the eve of Thanksgiving (November 21, 2012), the Parties met with Mr. Geronemus in Stamford, Connecticut and presented their respective positions. Following a day of intense negotiations, the Parties agreed in principle to the Settlement.

Throughout the litigation and extensive mediation process, Class Counsel was cognizant of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. The arm's-length nature of the three separate mediations (as well as interim settlement discussions) involving well-respected mediators and the participation of experienced advocates for the Parties, strongly support the conclusion that the proposed Settlement is fair, reasonable, and adequate.

### E. The Proposed Settlement

The Settlement provides that the Defendants will pay $7,500,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[4] In exchange, the

---

[4] The Plan of Allocation is attached to the Settlement Agreement as Exhibit 3. The Plan of Allocation is premised on calculating a Plan participant's pro rata distribution based upon his/her balance in the Plan on the first day of the Class Period plus any acquisitions of Old Second Stock during the Class Period, and then subtracting all dispositions of Old Second Stock during the Class Period and the balance, if any, of Old Second Stock remaining on the last day of the Class Period.

Plaintiffs and the Plan will dismiss their claims, as set forth more fully in the Settlement Agreement. The Settlement Agreement also sets forth the proposed Notice Plan to Settlement Class Members, and provides for the payment of attorneys' fees and Plaintiffs' Case Contribution Awards, both of which are subject to Court approval. Further, the Settlement Agreement provides for an Independent Fiduciary to review the terms and conditions of the Settlement and render an opinion as to its fairness.[5]

### F. Reasons for the Settlement

Plaintiffs have entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of their claims, which are based on Class Counsel's extensive experience with ERISA litigation, the investigation performed in connection with filing the initial complaint and the amended complaints, and the additional facts obtained from the extensive discovery conducted during the course of litigation. Class Counsel, in negotiating the proposed Settlement, considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors, which were debated during the extensive mediation process. Defendants have and certainly would continue to argue in dispositive motions and/or at trial, among other things, that even if Old Second Stock were determined to be an imprudent investment option at some point in time, by the time it would have been deemed imprudent, the price of Old Second Stock would have been so low that the amount of damages suffered and/or recoverable by the Plan would be minimal. To be sure, there is no assurance Plaintiffs would prevail if litigation were to continue – much less, that they would recover more than $7,500,000.00.

---

[5] Per the Settlement Agreement and Preliminary Approval Order, the Independent Fiduciary has until fourteen days before the Final Approval Hearing to render an opinion as to the Settlement's fairness.

In sum, based upon their extensive investigation both before and during the litigation, their analysis of the risks inherent in continuing litigation and establishing liability and damages, and the likelihood of appeals associated with any trial verdict, Class Counsel support the proposed Settlement and the certain and immediate benefit to the Settlement Class Members provides.

### G.    Proposed Timetable

The Parties request that the Court schedule a Final Approval Hearing at least ninety (90) days from the date Defendants mail notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"), and at least sixty (60) days from the mailing of the Class Notice. To effectuate this schedule, the Parties request the Court to schedule a Final Approval Hearing on June 10, 2013, or later at the Court's convenience. The Parties have consented to the following generalized scheduling assuming the Court preliminarily approves the Settlement:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing CAFA Notice. | 10 days after the filing of the Motion for Preliminary Approval of the Settlement Agreement (*see* Order, ¶ 5), or March 8, 2013. |
| Deadline for mailing of Class Notice to Settlement Class Members. | 30 days after entry of the Preliminary Approval Order (*see* Order, ¶ 4), or _____, 2013. |
| Deadline for posting Notice on the dedicated Settlement website. | 30 days after entry of the Preliminary Approval Order (*see* Order, ¶ 4), or _____, 2013. |
| Deadline for publishing Notice in *The Beacon News*. | 30 days after entry of the Preliminary Approval Order (*see* Order, ¶ 4), or _____, 2013. |
| Filing of Motion for Attorney's Fees, Reimbursement of Expenses, and for Case Contribution Awards to Named Plaintiffs. | 31 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 8), or _____, 2013. |
| Filing of Motion in Support of Final Approval of Settlement. | 31 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 9), or _____, 2013. |
| Deadline for filing all Objections to the Settlement, including Objections by CAFA Notice Recipients. | 21 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 10), or _____, 2013. |
| Deadline for filing Appearance of Counsel regarding all Objections, including Objections by CAFA Notice Recipients. | 21 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 10), or _____, 2013. |
| Deadline for filing Intention to Appear at Final Approval Hearing regarding all Objections, including Objections by CAFA Notice Recipients. | 21 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 12), or _____, 2013. |
| Deadline for Defendants to advise Class Counsel | 14 days prior to the date of the Final Approval |

| | |
|---|---|
| whether the Independent Fiduciary has approved the Settlement. | Hearing (*see* Order, ¶ 7), or _____ ___, 2013 |
| Deadline for filing response to any Objections. | 7 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 10), or _____ ___, 2013. |
| Deadline for filing any supplemental brief in support of the Settlement. | 7 days prior to the date of the Final Approval Hearing (*see* Order, ¶ 11), or _____ ___, 2013. |
| Deadline for filing the Independent Fiduciary's report regarding the Settlement with the Court. | 7 days prior to the date of the Final Approval Hearing, (*see* Order, ¶ 7), or _____ ___. |
| Final Approval Hearing date. | On or after 90 days after CAFA Notice sent, or at the Court's convenience, but not less than 90 days after CAFA Notice sent [which is June 10, 2013] (*see* Order, ¶ 3), or _____ ___, 2013. |

## III. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A. The Proposed Notice Plan Meets the Requirements of Due Process

In order to satisfy the due process considerations of the Federal Rules of Civil Procedure, notice to Settlement Class Members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Rule 23(c)(2)(A) provides that, for any certified class under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 518 (W.D. Wis. 2011). "Unlike for class actions certified under Rule 23(b)(3), the language of 23(c)(2)(A) is permissive, but it remains the court's duty to determine whether notice is proper." *Id.*

As set forth below, Plaintiffs' proposed means of Class Notice readily satisfies this standard and the mandate of due process. The combination of the targeted newspaper publishing, direct mail, and Internet website posting should cause actual notice to reach a very high percentage of affected Plan participants and beneficiaries.

**B.      Description of the Notice Plan**

The proposed Notice Plan will fully inform Settlement Class Members about the Action, the proposed Settlement, and the facts that they need to make informed decisions about their rights.  The Notice Plan includes multiple components designed to reach the largest number of Class members possible.  First, the Class Notice, attached as Exhibit 1.A to the Settlement Agreement will be sent by first-class mail to the last known address of the Settlement Class Members at least 60 days prior to the Final Approval Hearing.  Additionally, by that same date, the Class Notice will be posted on a dedicated Settlement website established by Class Counsel, along with other documents related to the litigation such as a list of frequently asked questions and the Settlement Agreement with all of its Exhibits.  The Class Notice will also provide potential Settlement Class Members with contact information for Class Counsel.  In addition to the Class Notice, Class Counsel will also cause the Publication Notice to be published, no later than sixty (60) days prior to the Final Approval Hearing in *The Beacon News*, a newspaper published in the Aurora, Illinois area where Old Second is headquartered.  The Publication Notice is thus designed to supplement the individually-mailed Class Notice.

The Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).  The proposed Notice Plan is consistent with the process Class Counsel has utilized in other cases to reach settlement class members.  The proposed notices describe in plain English:  (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) the maximum attorneys' fees and Plaintiffs' Case Contribution Awards that may be sought; (iv) the procedure and timing for objecting to the Settlement; and (v) the date and place for the Final Approval Hearing.  This District Court and others have approved as fair, similar notices and/or notice plans.  *See, e.g.*, *Shane v. Edge, et al.*,

No. 10-cv-50089, Order Granting Preliminary Approval of Class Action Settlement, slip op. at 6 (N.D. Ill. Jan. 15, 2013); *In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-7571, Final Judgment And Order at 4 (N.D. Ill. Nov. 14, 2012); *In re Sears Roebuck & Co. ERISA Litig.*, No. 02-cv-8324, Findings And Order Preliminarily Approving Proposed Class Action Settlement at 4 (N.D. Ill. Mar. 1, 2007); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-1974, Order Preliminarily Approving Settlement at 6 (D.N.J. June 22, 2012); *Walter v. Level 3 Comm., Inc.*, No. 09-cv-0658, Order And Final Judgment at 5 (D. Colo. Mar. 26, 2012); *In re YRC Worldwide Inc. ERISA Litig.*, No. 09-cv-02593, Preliminary Approval Order at 4 (D. Kan. Nov. 22, 2011).

In sum, the proposed Notice Plan satisfies the requirements of due process. *See* 4 Newberg on Class Actions § 11:53 (4th ed. 2010) ("The notice need not be unduly specific. The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."); 7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1797.6 (3d ed. 2010) (noting that courts have approved notices "as long as sufficient contact information is provided to allow the class members to obtain more detailed information about those matters").

## IV. THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

Parties may not settle a class action without the approval of the district court. *See* FED. R. CIV. P. 23(e); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1977). The process for approving a settlement under Rule 23(e) involves two steps. First, the court must determine whether the proposed settlement deserves preliminary approval, and if it does, the court must then direct notice to the class for comment prior to final approval. *See Armstrong v. Bd. of Sch.*

14

*Dirs. of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Second, after the class members receive notice, the court must determine whether final approval is warranted. *Id.*

The Seventh Circuit Court of Appeals has established a five (5) factor test for courts to utilize in evaluating proposed settlements. Under this test, "a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of continued litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). *See also Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (same); *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07-cv-2898, 09-cv-2026, 2011 WL 3290302, at *5 (N.D. Ill. July 26, 2011) ("*AIG*") (same). Notably, the district courts should "not focus on individual components of the settlements, but rather view them in their entirety." *Id.*

At the preliminary approval stage, a court should perform just a "summary version" of the analysis set forth above. *Id.* at *6. A court is not required to make a final determination at this stage that a settlement is fair and reasonable, but instead must preliminarily evaluate the fairness of the proposed settlement and determine whether there is any reason not to notify class members of the proposed settlement or not to hold a final approval hearing. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *AIG*, 2011 WL 3290302, at *6 ("At the preliminary approval stage, however, the court's task is merely to determine whether the proposed settlement is within the range of possible approval, not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards.") (citations omitted); *AT&T*

*Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (noting courts conduct "a more summary version" of the final fairness inquiry at the preliminary approval stage); Annotated Manual for Complex Litigation Fourth, § 21.6 (2004) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies… and appears to fall within the range of possible approval, the court should direct notice to issue and schedule a final approval hearing.")

Given the cost and complexity of class actions, courts certainly favor settlements. *See, e.g., Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation.") (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)). As explained below, the Parties' proposed Settlement satisfies the Seventh Circuit's criteria for approval, and therefore, the Court should preliminarily approve the Settlement and authorize notice to be issued to the Settlement Class.

### A.    The Strength of Plaintiffs' Case Compared to the Terms of the Settlement

As the *AIG* court noted, "'[i]n evaluating the strengths of the case, an important consideration is the various risks and costs that accompany continuation of the litigation.'" *AIG*, 2011 WL 3290302, at *6 (quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). In this Action, there were substantial risks and costs if the litigation continued. While Class Counsel believes that Plaintiffs would ultimately prevail at trial, counsel recognizes that ultimate success is not assured and believes that this substantial Settlement, when viewed in light of the risks of proving both liability and the recoverable damages, is unquestionably fair, adequate, and reasonable. *See Maley v. DelGlobal Techs. Corps.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("while plaintiffs believe there is substantial evidence to support their claims,

the complexities and uncertainties of this litigation nevertheless warrant the approval of the [s]ettlement").

Prior to entering into the Settlement, Class Counsel carefully considered the risks of continuing with litigation and the inherent delay in any payment to the Settlement Class if the claims were litigated to conclusion. Class Counsel are mindful of the intrinsic difficulty of establishing liability and damages in this ever evolving area of ERISA law, and the obstacles to recovery posed by Defendants' asserted defenses in this type of action. *See, e.g.*, *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-cv-00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) (recognizing that "ERISA law is a highly complex and quickly-evolving area of the law" as a factor supporting the proposed settlement).

While Plaintiffs are confident that they would ultimately prevail at trial, success can never be guaranteed. In fact, to the best of Class Counsel's knowledge, only four similar ERISA class actions concerning publicly traded company stock have gone to trial, and in each instance, the defendants prevailed.[6]

The negotiated cash settlement in the amount of $7,500,000.00 provides an exceptional recovery to the Settlement Class, which numbers about 700 persons.[7] Thus, the gross settlement exceeds $10,000 on average per person. Weighing the prospect of securing this guaranteed benefit for the Settlement Class against the uncertainty of continued litigation of heavily disputed claims, favors approval of the Settlement.

---

[6] *See Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009); *Nelson v. Hodowal (IPALCO)*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006); *Landgraff v. Columbia.HCA Healthcare Corp.*, No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000).

[7] *See, e.g.*, the Form 5500 filed with the Department of Labor and Internal Revenue Service for the Plan for 2011 noting 694 Plan participants at the beginning of the year.

**B.      The Likely Complexity, Length, and Expense of Continued Litigation**

The Settlement in this Action comes at an opportune time given that, if the litigation continues, there will be substantial additional expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.  As noted *supra*, the Parties conducted substantial discovery in this Action prior to entering into the Settlement.  However, significant discovery and litigation lies ahead in the absence of the Settlement.  If litigation continues, the Parties would continue their discovery efforts, including the depositions of other named Defendants and multiple other third-party witnesses, as well as expert witnesses on the issues of liability and damages.  Additionally, the Parties would likely both file motions for summary judgment.  Moreover, a trial in this Action would be complex given the factual and legal issues relevant to Defendants' decision to continue offering Company Stock as a Plan investment option during the Class Period and Plaintiffs' arguments as to why such conduct was imprudent.  Further, even if Plaintiffs prevailed at trial, it could be years from now before any putative Settlement Class Member received any benefit in light of the likely appeals to follow.

As the Seventh Circuit recognized, the prospect of long and complex litigation weighs in favor of preliminary approval.  *See Isby*, 75 F.3d at 1199-1200 (settlement of litigation that "would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would "likely involve weeks, perhaps months, of trial time" represented "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial.")  *See also In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1001 (D. Minn. 2005) (nothing "this area of ERISA law is in its developmental stages…. In short, plaintiffs faced many risks with no guarantee of success").[8]  On balance, the immediate, guaranteed

---

[8] *See also Hargrove v. Eaglepicher Corp.*, No. 10-cv-10946, 2012 WL 1668152, at *2 (E.D. Mich. May 10, 2012) ("An ERISA case involves highly-specialized and complex areas of law"); *Nelson v. Ipalco*

benefit to the Settlement Class provided by this Settlement outweighs the uncertainty of continued, costly, and time-consuming litigation.

### C. The Amount of Opposition to the Settlement By Affected Parties

Although the Named Plaintiffs, who are Settlement Class Members, both approve the Settlement, this factor cannot be fully analyzed until notice has been sent to the Settlement Class. *See AIG*, 2011 WL 3290302, at *7 (recognizing it is "premature to fully assess this factor" before notice has been issued). Accordingly, if the Court preliminarily approves the Settlement and authorizes notice to be sent to the Settlement Class, Class Counsel will address any opposition to the Settlement in its final approval papers before the Final Approval Hearing in accordance with the proposed schedule discussed *supra* in Section II.G.

### D. The Opinion of Competent Counsel

The fourth factor, the opinion of competent counsel, further supports the preliminary approval of this Settlement. As the court recognized in *AIG*, "[t]he court is 'entitled to rely heavily on the opinion of competent counsel.'" *AIG*, 2011 WL 3290302, at *8 (citing *Armstrong*, 616 F.2d at 325). As set forth below Class Counsel in this Action has substantial experience litigating similar ERISA class action cases, along with other complex litigation, and are well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement.

KTMC, headed by Joseph H. Meltzer, chair of the ERISA Litigation Department, and his partners Edwards W. Ciolko and Peter A. Muhic, are highly qualified ERISA class action

---

*Enterprises, Inc.*, No. 02-cv-477, 2005 WL 1924332, at *3 (S.D. Ind. Aug. 11, 2005) (finding "the important and complex area of law implicated by plaintiffs' [ERISA] claims is neither mature nor uniform").

attorneys and unequivocally recommend this Settlement.[9]  KTMC has been named Lead or Co-Lead Counsel in numerous breach of fiduciary duty class actions within this District and across the nation.[10]  Recently, in appointing KTMC interim lead class counsel in another ERISA breach of fiduciary duty class action, a fellow district court stated:

> [T]he Court finds that KTMC is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary class actions.  Further, KTMC's litigation efforts have resulted in favorably court opinions in a number of ERISA decisions denying motions to dismiss and motions for summary judgment.  KTMC has also prevailed in appeals before the First, Third, Sixth, and Ninth Circuits resulting I seminal decisions that have helped shape this relatively new area of ERISA jurisprudence.  Moreover, KTMC is one of only a very few firms in the country with trial experience in ERISA "company stock" fiduciary breach class actions.  Finally, in addition to its extensive litigation experience, KTMC has also in successfully engaged in extensive, intricate and successful settlement negotiations and mediations involving complex legal and factual issues involving ERISA claims, resulting in large recoveries for affected classes.

---

[9]  *See* firm resume of KTMC attached hereto as Exhibit B.

[10]  Actions in which KTMC was appointed Lead or Co-Lead counsel include *In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, No. 12-cv-688 (W.D. Okla. Dec. 6, 2012) (order appointing KTMC interim class counsel); *Harris v. First Regional Bancorp*, No. 10-cv-07164 (C.D. Cal. Jan. 6, 2011) (Order appointing KTMC interim class counsel); *Shane, et al. v. Amcore, et al.*, No. 10-cv-50089 (N.D. Ill. Mar. 24, 2011) (order appointing KTMC Co-Lead Class Counsel for the Plaintiffs); *In re Advanta Corp. ERISA Litig.*, No. 09-cv-04974 (E.D. Pa. June 4, 2010); *In re R.H. Donnelley ERISA Litig.*, No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010); *Dann v. Lincoln Nat'l Corp.*, No. 08-cv-5740 (E.D. Pa. June 4, 2009) (order appointing KTMC as Interim Class Counsel for the putative plaintiff class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure); *In re SunTrust Banks, Inc. ERISA Litig.*, No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) (appointing KTMC Interim Co-Lead Class Counsel); *In re: SLM Corp. ERISA Litig.*, No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008); *In re First American Corp. ERISA Litig*, No. 07-cv-01357 (C.D. Cal. Feb. 1, 2008); *In re National City Corp. Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litig.*, No. 08-cv-70000 (N.D. Ohio May 12, 2008); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-cv-00952-RWS (N.D. Ga. Oct. 11, 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *In re Lear ERISA Litig.*, No. 06-cv-11735 (E.D. Mich. June 30, 2006); *In re Raytheon ERISA Litig.*, No. 03-cv-10940 (D. Mass. Sept. 18, 2003); *In re Westar Energy Inc. ERISA Litig.*, No. 03-cv-4032 (D. Kan. Sept. 23, 2003).

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, No. 12-cv-688, slip op. at 5-6 (W.D. Okla. Dec. 6, 2012) (order appointing KTMC interim class counsel). In addition, Liaison Class Counsel, The Collins Law Firm, P.C., has extensive experience in complex litigation, including ERISA class actions and cases involving financial institutions, and also recommends this Settlement.[11]

Based on its extensive experience litigating and successfully resolving ERISA breach of fiduciary duty cases and their investigation and evaluation of the facts and legal issues in this case, Class Counsel strongly recommend this Settlement.

### E.    The Stage of the Proceedings and the Amount of Discovery Completed

A court must consider whether the parties to a proposed settlement are adequately informed of the facts and issues in the case. However, as the *AIG* court noted, "the standard under this factor is not whether it is conceivable that more discovery could possibly be conducted" but whether sufficient information has been garnered to allow a fair evaluation of the case. *AIG*, 2011 WL 3290302, at *8. Here, the Parties would no doubt complete more discovery if the case were to progress to trial, but nevertheless, as described in Section II.B, Plaintiffs conducted substantial investigation prior to filing suit and then afterward conducted a tremendous amount of discovery which included review of more than ninety thousand pages of documents produced by Defendants and third-parties. The substantial information obtained during discovery, as well as Class Counsel's investigations, provided Plaintiffs an informed understanding of the strengths and weaknesses of the Action. The totality of the Plaintiffs' discovery efforts in conjunction with the mediation sessions strongly support approval of the Settlement.

---

[11]  The firm resume of The Collins Law Firm, P.C. is attached hereto as Exhibit C.

V.   **THE PROPOSED SETTLEMENT CLASS MEETS THE PREREQUISITES FOR CERTIFICATION PURSUANT TO FEDERAL RULE 23**

A.   **This Court Previously Certified a Class in This Action**

As noted *supra*, on September 20, 2011, this Court entered an Order granting class certification. *See* Dkt. No. 79 ("Plaintiffs' motion for class certification [68] is granted in part"). The Court certified the following class:

> All Persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between April 25, 2008, and the present (the "Class Period") and whose Plan accounts included investments in Old Second common stock.

For purposes of settlement, Plaintiffs request, and Defendants do not oppose, that the Court amend the class so that the end date for the Class Period is February 25, 2013, the date the Settlement Agreement was executed. Having an end date to the Class Period will allow an orderly allocation of the Settlement proceeds because the Parties now know the universe of Plan participants eligible to partake in this Settlement, *i.e.*, all participants in the Plan from April 25, 2008 to February 25, 2013. Additionally, to the extent the prior certified class could be read to not include persons who had signed releases (*e.g.*, the Court found Plaintiff Dalton atypical of the class because she had signed a release), the Parties have agreed that the Settlement Class includes all persons who meet the definition of the Class Period regardless of whether he or she signed a severance agreement and release upon terminating employment with Old Second.

During the mediation, Class Counsel specifically negotiated to include in the Settlement Class those individuals who signed a release upon their termination from the Company in the Settlement Class, as the signing of a release does not bar the right to recovery in the settlement context. A sister district court faced with the same issue endorsed this approach. Specifically, in the *Merck ERISA* action, during litigation the court certified a class of plan participants

excluding those who had signed releases upon the completion of their employment with Merck. *See In re Merck & Co., Inc. Sec. Der., & "ERISA" Litig.*, MDL No. 1658, 2009 WL 331426, at *9 (D.N.J. Feb. 10, 2009). However, the *Merck* court later granted preliminary approval of the proposed settlement which specifically *included* these individuals. *See In re Merck & Co., Inc. Sec. Der., & "ERISA" Litig.*, MDL No. 1658, No. 05-cv-02369, Amended Preliminary Approval Order, Dkt. No. 273, slip. op. at 2 (D.N.J. Oct. 19, 2011) (noting "[t]he Court has previously certified this case as a Class Action. For the ***purposes of settlement only***, the definition of the Class is ***amended***," to include "***all*** former participants and beneficiaries of the Plans" who purchased and/or held shares of company stock) (emphasis added). S*ee also In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-07571, Final Judgment and Order, at (N.D. Ill. Nov. 14, 2012) (granting parties' request to certify a settlement class which included settlement class members who signed a general release upon their termination from the company).

Moreover, the Third Circuit in *In re Schering Plough Corp. ERISA Litig.* noted that it is not uncommon for a class to be certified where, like the instant Action, "the claim being brought for breach of fiduciary duties… the class representatives had not signed releases whereas some members of the proposed class had signed releases." 589 F.3d 585, 601 n.16 (3d. Cir. 2009) (citing *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338 (N.D. Ill. 2008); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416 (N.D. Okla. 2005)). Accordingly, for purposes of this Settlement, Plaintiffs believe it is proper and fair for the Settlement Class Members who signed a general release upon their termination from the Company to be able to participate in the recovery from this action for the losses to their retirement accounts and for Plaintiff Adolphson to represent the Settlement Class including these individuals.

### B.     The Amended Settlement Class Satisfies the Requirements of Rule 23(a)

To be entitled to class certification, a plaintiff must satisfy each of Rule 23(a)'s four prerequisites to class certification:   (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.   In addition, the proposed class must meet one of the three requirements of Rule 23(b).   *See Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009); Fed. R. Civ. P. 23.   A plaintiff whose suit meets the criteria specified by Rule 23 is categorically entitled to pursue his/her claims as a class action.   *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 U.S. 1431, 1437 (2010).   This Court has already found the requirements of Rule 23 satisfied in this Action.   *See* Dkt. No. 79.   The Amended Settlement Class equally satisfies each prerequisite of Rule 23.

### 1.     Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.   To satisfy this requirement, a plaintiff need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class.   *See, e.g., Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).   "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)."   *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002).   In this Action, there are about 700 individuals in the Settlement Class.[12]   Accordingly, the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2.     Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."   "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of

---

[12]   As noted above, the Plan's 2011 Form 5500 states there were 694 Plan participants at the beginning of 2011.

Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Id.* at 1017-18. As the court noted when certifying the class in the *Tellabs* ERISA action, "a common set of operative facts is usually present when defendants are claimed to have engaged in standardized conduct toward the members of the proposed class." *Brieger*, 245 F.R.D. at 349. That is precisely the situation here.

The paramount issue shared by all Settlement Class Members is whether Defendants breached their fiduciary duties owed to the Plan and the Plan's participants by allowing the Plan to invest and remain invested in Old Second Stock when it was no longer prudent to do so. This query is sufficient to meet the commonality requirement of Rule 23(a)(2). In addition, the following common questions of law and fact (among others) exist as to all members of the Settlement Class and predominate over any questions affecting solely individual potential Class members:

- whether Defendants were fiduciaries of the Plan;
- whether Defendants breached their fiduciary duties;
- whether the Plan and its participants were injured by such breaches; and
- whether the Class is entitled to damages as a result.

"All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants." *Moore v. Simpson*, No. 96-cv-2971, 1997 U.S. Dist. LEXIS 13791, *9-10 (N.D. Ill. Sept. 5, 1997); *see also R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-7571, Final Judgment and Order, slip op. at 2 (N.D. Ill. Nov. 14, 2012) (referencing similar list of common questions of law and fact regarding defendants' fiduciary duties owed and breached in concluding the commonality requirement was satisfied).

### 3. Typicality

The typicality element of Rule 23(a)(3) requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and … [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quoting *Rosario*, 963 F.2d at 1018).

Here, Plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of other Settlement Class Members and are based on the same legal theory. The Named Plaintiffs were participants in the Plan during the Class Period and had part of their individual Plan accounts invested in Old Second Stock during that time. Plaintiffs alleged harm to themselves and the Plan arising out of Defendants' breach of fiduciary duties under ERISA during the Class Period. Based on these facts and allegations, Plaintiffs undoubtedly satisfy the typicality requirement. *See In re R.H. Donnelley Corp. ERISA Litig.*, Final Judgment and Order at 2-3 (N.D. Ill. Nov. 14, 2012) (finding typicality met where "[t]he Named Plaintiffs allege that they were Plan participants during the Class Period with Plan accounts that included investment in Company Stock, that the Plan's fiduciaries treated them and all other Plan participants alike, and that Plan-wide relief is necessary and appropriate under ERISA"); *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 366-67 (N.D. Ill. 2010) (finding typicality, reasoning "Plaintiffs, like other members of their putative class, seek relief on behalf of the Plan for alleged breaches of fiduciary duty" and "the relevant conduct-allegedly imprudent decisions involving the Funds and legal theory-breach of fiduciary duty under ERISA-are the same for Plaintiffs and other members of their proposed class.").

### 4.      Adequacy of Representation

Finally, Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).   An analysis of the adequacy of representation has two parts:  "the adequacy of the named plaintiff's counsel, and the adequacy of the representation provided in protecting the different, separate, and distinct interest of the class members."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

With respect to the adequacy of plaintiffs to represent the class in this type of ERISA action, another district court recognized:

> [B]ecause the named plaintiffs are challenging the same unlawful conduct and seeking the same relief as the rest of the class … the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the first prong of the adequacy of representation requirement.  In particular, … the right to relief of the named plaintiffs, like that of the absent class members, depends on demonstrating that the defendants violated the terms fo the plans, violated provisions of ERISA, and breached their fiduciary duties.

*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396 (E.D. Pa. 2001).

Here, as noted above, the Court entered an Order granting in part Plaintiffs' motion for class certification specifically certifying the class with Plaintiff Adolphson as the class representative.   *See* Dkt. No. 79.   Consistent with the Court's Order, Plaintiffs seek the appointment of Plaintiff Adolphson as the representative for the Settlement Class.[13]   Plaintiff Adolphson has no interests antagonistic to the interests of the absent Settlement Class Members, and will have to show the same wrongdoing to himself by Defendants as to the absent Settlement Class Members to establish Defendants' liability.   Further, Plaintiffs are suing for Plan-wide

---

[13]  Plaintiff Dalton remains a Named Plaintiff in the Action, but is not a Settlement Class Representative.

relief that will inure to the direct benefit of the Plan and to the entire proposed Settlement Class. Accordingly, there is no conflict between Plaintiff Adolphson and members of the proposed Settlement Class, as they share the same harm and interest in recovering. *See In re: R.H. Donnelley Corp. ERISA Litig.*, Final Judgment and Order at 3 (finding adequacy prong satisfied where "Named Plaintiffs have no conflicting interests with absent members of the Settlement Class"); *Shane v. Edge, et al.*, No. 10-cv-50089, Order Granting Preliminary Approval of Class Action Settlement at 2 (N.D. Ill. Jan. 15, 2013) (same).

Second, as set forth in detail above, Plaintiffs have retained qualified, experienced attorneys who are at the forefront of this type of ERISA breach of fiduciary duty class action litigation. *See* discussion *supra* in Section IV.D; *see also* firm resumes of Class Counsel and Liaison Class Counsel attached hereto as Exhibits B and C, respectively. In light of this, Plaintiffs and their counsel satisfy the adequacy of representation element.

## C.     The Class May Be Properly Certified Under Rule 23(b)(1)

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three alternatives of FED. R. CIV. P. 23(b). Rule 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members.

### 1.     Certification Under Rule 23(b)(1)(B ) is Most Appropriate

Many courts have relied upon subsection (b)(1)(B) of Rule 23 in certifying class actions based upon allegations that defendants breached their fiduciary obligations to plaintiffs. Indeed, the Third Circuit recently held that "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (citations omitted). Courts within this

district have echoed that holding. *See, e.g.*, *George*, 270 F.R.D. at 369 (same); *Neil*, 275 F.R.D. at 267 (same); *Loomis v. Exelon Corp.*, No. 06-cv-4900, 2007 WL 2060799, at *5 (N.D. Ill. June 26, 2007) (same). Because Plaintiffs pursue the instant ERISA claims in a representative capacity in accordance with ERISA's remedial provisions, this Action is particularly appropriate for class action treatment under Rule 23(b)(1)(B).

### 2. This Action Also May Be Certified Under Rule 23(b)(1)(A)

In the alternative, certification under subsection (b)(1)(A) is appropriate. In fact, it is not uncommon for courts to certify ERISA class actions under both subsections of Rule 23(b)(1). *See, e.g.*, *Yost v. First Horizon*, No. 08-cv-2293, 2011 WL 2182262, at *13-14 (W.D. Tenn. June 3, 2011) (certifying class under Rule 23(b)(1)(A) and 23(b)(1)(B)); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701, 2009 WL 969713, at *9 (S.D. Ill. Apr. 3, 2009) (same). A number of district courts have recognized that the nature of the case, which challenges Defendants' Plan-wide conduct, makes this result particularly appropriate. *See, e.g.*, *In re Merck & Co., Inc. Sec., Der. & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009) (certifying class under Rule 23(b)(1)(A) and noting "the risk of establishing inconsistent standards under ERISA is particularly strong where, as here, a central element of the prudence claims is not an individual matter: the fiduciary duties are owed to the plan"); *Rankin v. Rots*, 220 F.R.D. 511, 523 (E.D. Mich. 2004) ("A failure to certify a class could expose defendants to multiple lawsuits and risk inconsistent decisions"). Accordingly, the Court may also certify the Settlement Class under Rule 23(b)(1)(A).

### D. Appointment of Class Counsel

Federal Rule 23(g) specifies that unless a statute provides otherwise, a court that certifies a class must appoint class counsel, and an attorney appointed to serve as class counsel "must

fairly and adequately represent the interests of the class." *Donovan v. St. Joseph County Sheriff*, No. 11-cv-133, 2012 WL 1601314, at *8 (N.D. Ind. May 3, 2012) (quoting FED. R. CIV. P. 23(g)(4)). In making this determination "the court must consider the following: '(i) the work counsel has done in investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'" *Donovan*, 2012 WL 1601314, at *8 (citing FED. R. CIV. P. 23(g)(1)(A)).

As detailed above, Class Counsel performed extensive research and investigation in connection with filing and litigating the instant Action. *See* discussion *supra* in Section II.B. Class Counsel prosecuted this litigation before this Court, devoting considerable time and resources to these proceedings to protect the rights of the Named Plaintiffs and the Settlement Class. Class Counsel are well versed in ERISA breach of fiduciary duty claims and complex class action in general. Moreover, The Collins Law Firm, P.C. in its role as Liaison Class Counsel assisted Class Counsel with the litigation of this Action. Together, Class and Liaison Class Counsel dedicated substantial resources to aggressively prosecute this matter and protect the interest of the Named Plaintiffs and the Class. Accordingly, Plaintiffs respectfully request that this Court designate KTMC as Class Counsel for the Settlement Class and The Collins Law Firm, P.C. as Liaison Class Counsel for the Settlement Class.

## VI. CONCLUSION

Based on the foregoing, Plaintiffs respectfully move this Court to grant their Unopposed Motion for Preliminary Approval of Class Action Settlement, Amendment of the Class Definition, Approval of Class Notice, and Scheduling of a Final Approval Hearing.

DATED:  February 26, 2013          Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

/s/ Mark K. Gyandoh
Edward W. Ciolko
Peter A. Muhic
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Class Counsel*


**THE COLLINS LAW FIRM, P.C.**
Shawn M. Collins
Robert J. Dawidiuk
Megan A. Drefchinski
1770 North Park Street
Suite 200
Naperville, Illinois 60563
Phone:  (630) 527-1595
Facsimile:  (630) 527-1193

*Liaison Class Counsel*

## CERTIFICATE OF SERVICE

The Undersigned hereby certifies that on this 26th day of February 2013, a true and accurate copy of Plaintiffs' Memorandum of Law In Support of Unopposed Motion For Preliminary Approval of Class Action Settlement, Amendment of the Class Definition, Approval of Class Notice, And Scheduling of a Final Approval Hearing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification to the following:

> W. Scott Porterfield
> Roger H. Stetson
> Alison Leff
> BARACK FERRAZZANO KIRSCHBAUM
>   & NAGELBERG LLP
> 200 West Madison Street, Suite 3900
> Chicago, Illinois 60606
> Tel: (312) 984-3100
> Facsimile: (312) 984-3150

> *Attorneys for Defendants*

/s/ Mark K. Gyandoh