# EXHIBIT A

# Settlement Agreement

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10. <br><br> Defendants. | **CASE NO. 1:11-cv-01112** <br><br> **Judge Milton I. Shadur** |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("*Settlement Agreement*") is entered into by and between: (i) the *Named Plaintiffs* in the above-captioned *Action,* for themselves and on behalf of the *Settlement Class* and the *Plan,* and the (ii) *Defendants* (collectively, the "*Parties*") pursuant to Rule 23 of the Federal Rules of Civil Procedure and subject to court approval.

WHEREAS, *Named Plaintiffs* in the above-captioned *Action* assert various *Claims* for relief under *ERISA* against *Defendants*, all of which *Claims* are disputed by *Defendants*; and

WHEREAS, the *Parties* desire to fully resolve and settle with finality the *Action*;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants and agreements herein described, and acknowledged by each of them to be fair and reasonable, and intending to be legally bound, do hereby mutually agree as follows:

1. **DEFINITIONS**

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1. "*Action*" shall mean *Dalton, et al. v. Old Second Bancorp, Inc., et al.*, No. 1:11-cv-01112 (N.D. Ill.).

1.2. "*Administrative Committee Defendants*" shall mean the Employee Benefits Committee of *Old Second* and its individual members and the Retirement Committee of *Old Second* and its individual members, named as defendants in the *Action*.

1.3. "*Affiliate*" shall mean, with respect to a *Person*, any entity which owns or controls, is owned or controlled by, or is under common ownership or control with that *Person*.

1.4. "*Agreement Execution Date*" shall mean the date on which the final signature of the *Parties* is affixed to this *Settlement Agreement*.

1.5. "*CAFA*" shall mean the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

1.6. "*CAFA Notice*" shall mean notice of this proposed *Settlement* to the appropriate federal and state officials, as provided by *CAFA*. The cost and expense associated with providing CAFA Notice shall be borne by *Defendants' Insurers*.

1.7. "*CAFA Notice Recipients*" shall have the meaning set forth in Section 2.1.4.

1.8. "*Case Contribution Award*" shall mean the monetary amount awarded by the *Court* to be paid from the *Settlement Amount* to each *Named Plaintiff* in recognition of *Named Plaintiffs'* assistance in the prosecution of this *Action*, for which *Class Counsel* may seek an amount not exceeding $10,000 for Emil Adolphson and $5,000 for Mary Dalton. Any such *Case Contribution Award* shall be subject to the approval of the *Court* upon notice to the *Settlement Class* as set forth in Section 11.3 below.

1.9. "*Claims*" shall mean any and all claims, counterclaims, crossclaims, complaints, charges, demands, actions, causes of action, judgments, debts, expenses, losses, liabilities, and obligations, including attorneys' fees, expenses and costs.

1.10. "*Class Counsel*" shall mean Kessler Topaz Meltzer & Check, LLP.

1.11. "*Class Notice*" shall mean the form of notice appended as *Exhibit* A to the form of *Preliminary Approval Order*, attached hereto as *Exhibit* 1.

1.12. "*Class Period*" shall mean the period from April 25, 2008 to the *Agreement Execution Date*.

1.13. "*Company*" or "*Old Second*" shall mean Old Second Bancorp, Inc., each of its *Affiliates*, and each of its predecessors and *Successors-In-Interest*, including, without limitation, Old Second National Bank.

1.14. "*Company Stock Fund*" or "*Old Second Stock Fund*" shall mean the investment fund within the *Plan* that invested primarily in shares of *Old Second* common stock.

1.15. "*Court*" shall mean the United States District Court for the Northern District of Illinois.

1.16.  "*Defendants*" shall mean *Old Second*, the *Administrative Committee Defendants* and the *Individual Defendants*, collectively.

1.17.  "*Defendants' Insurers*" shall mean The Cincinnati Insurance Company, which insured *Defendants* under Policy Nos. BCP 873 82 06 and BCP 873 74 29, and XL Specialty Insurance Company, which insured *Defendants* under Policy No. ELU120082-11, at all relevant times in connection with this *Action*.

1.18.  "*Defendants' Released Claims*" are any potential or asserted claims or demands against the *Named Plaintiffs*, *Class Counsel*, *Liaison Class Counsel*, or the *Settlement Class Members* by the *Defendants* or the *Defendants' Insurers* that arise from the institution or prosecution of this *Action* or relating to the settlement of any of *Plaintiffs' Released Claims*.

1.19.  "*Defendants' Released Persons*" shall mean the *Named Plaintiffs*, the *Settlement Class*, *Class Counsel* and *Liaison Class Counsel*.

1.20.  "*Effective Date*" shall mean the date upon which the *Final Approval Order and Judgment* becomes *Final*.

1.21.  "*ERISA*" shall mean the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, as amended.

1.22.  "*Escrow Account*" shall mean an account at an established financial institution agreed upon by the *Parties* that is established for the deposit of any amounts relating to the *Settlement* as funded by *Defendants' Insurers* in accordance with Section 8.1.

1.23.  "*Final*" shall mean, with respect to any judicial ruling or order, an order that is final for purposes of 28 U.S.C. § 1291, and that:  (a) the time has expired to file an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari or other writ ("*Review Proceeding*") with respect to such judicial ruling or order with no such *Review Proceeding* having been filed; or (b) if a *Review Proceeding* has been filed with respect to such judicial ruling or order, (i) the judicial ruling or order has been affirmed without modification and with no further right of review, or (ii) such *Review Proceeding* has been denied or dismissed with no further right of review.

1.24.   "*Final Approval Hearing*" shall have the meaning set forth in Section 2.1.1.1.

1.25.  "*Final Approval Order and Judgment*" shall mean an order by the *Court* which approves the fairness, reasonableness, and adequacy of the *Settlement* as set forth in Section 2.1.5 and is substantially in the form attached hereto as *Exhibit* 2.

1.26.  "*Financial Institution*" shall have the meaning set forth in Section 8.1.1.

1.27.   "*Immediate Family Members*" shall mean the parents, siblings, spouses and children of any of the *Individual Defendants*.

1.28.   "*Independent Fiduciary*" shall mean a *Plan* fiduciary retained by *Old Second*, in *Old Second's* sole discretion and at *Defendants' Insurers'* expense, to evaluate the fairness of the *Settlement* to the *Plan* and issue a release on the *Plan's* behalf.  The *Independent Fiduciary* shall have no relationship with or interest in *Named Plaintiffs* or *Defendants* that might affect such *Person's* best judgment as a fiduciary.

1.29.   "*Individual Defendants*" shall mean J. Douglas Cheatham, James Eccher, William B. Skoglund, Robert DiCosola, Jeff West and Stewart Beach.

1.30.   "*Liaison Class Counsel*" shall mean The Collins Law Firm, P.C.

1.31.   "*Mediators*" shall mean the Honorable Donald P. O'Connell (Ret.) and David Geronemus, Esq.

1.32.   "*Named Plaintiffs*" shall mean Emil Adolphson and Mary Dalton.

1.33.   "*Net Settlement Fund*" shall mean the *Settlement Fund* less the costs for provision of *Class Notice*, *Settlement* administration costs, taxes, *Court*-approved attorneys' fees and litigation costs, *Case Contribution Awards* for the *Named Plaintiffs* and other costs the *Court* deems payable from the *Settlement Fund*.

1.34.    "*Objection*" shall have the meaning set forth in 2.1.5.3.

1.35.    "*Old Second Stock*" shall mean the common stock of Old Second Bancorp, Inc.

1.36.   "*Old Second Stock Fund*" shall mean the fund in the *Plan* that was invested in *Old Second Stock*.

1.37.   "*Parties*" shall mean *Named Plaintiffs* and *Defendants.*

1.38.   "*Person*" shall mean an individual, partnership, corporation, governmental entity or any other form of legal entity or organization.

1.39.   "*Plaintiffs' Released Claims*" shall mean any and all *Claims* of any nature whatsoever, whether individual, representative, or derivative, known or unknown, accrued or unaccrued, by or on behalf of the *Plan*, the *Named Plaintiffs* and the *Settlement Class*, including respective heirs, beneficiaries, executors, administrators, *Successors* and assigns that: (a) were brought or could have been brought in the *Action* and arise out of the same or substantially similar facts, circumstances, situations, transactions or occurrences as those alleged in the *Action* during the *Class Period*; (b) were brought or could have been brought under *ERISA* based on or relating to the investment of *Plan* assets in *Old Second Stock* by or through the *Plan* during the *Class Period*; and/or (c) are related to the prosecution, defense or settlement of the *Action*.

1.40.   "*Plaintiffs' Released Persons*" shall mean:  (a) *Old Second* and its parents, *Affiliates*, subsidiaries, predecessors, *Successors*, assigns, and past or present directors, officers, controlling persons, attorneys, counselors, insurers, reinsurers, financial or investment advisors, consultants, accountants,  representatives or agents, and (b) each of

the other *Defendants* and their heirs, executors, trustees, personal representatives, estates or administrators, attorneys, counselors, insurers, reinsurers, financial or investment advisors, consultants, accountants, advisors, representatives or agents.

1.41. "*Plan*" shall mean the Old Second Bancorp, Inc. Employees' 401(k) Savings Plan and Trust.

1.42. "*Plan of Allocation*" shall mean the Plan of Allocation approved by the *Court* as contemplated by Section 2.1.5 and as described in Section 9.3.3 and in the form attached hereto as *Exhibit* 3.

1.43. "*Plan Recordkeeper(s)*" shall mean the *Plan's* current and past recordkeepers, including present recordkeeper Retirement Direct and former recordkeeper HPL&S.

1.44. "*Preliminary Approval Motion*" shall have the meaning set forth in Section 2.1.1.1.

1.45. "*Preliminary Approval Order*" shall have the meaning set forth in Section 2.1.1.1 and be substantially in the form attached hereto as *Exhibit* 1.

1.46. "*PTCE 2003-39*" refers to the ERISA Prohibited Transaction Class Exemption 2003-39, "Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75632-40, as amended.

1.47. "*Publication Notice*" shall mean the form of notice appended as *Exhibit B* to the form of *Preliminary Approval Order*, attached hereto as *Exhibit 1*.

1.48. "*Released Claims*" refers collectively to the *Plaintiffs' Released Claims* and *Defendants' Released Claims* as defined in Sections 1.41 and 1.18, respectively.

1.49. "*Review Proceeding*" shall have the meaning set forth in Section 1.23.

1.50. "*Second Amended Complaint*" shall mean the Second Amended Class Action Complaint filed on June 15, 2012 in the *Action*.

1.51. "*Settlement*" shall mean the settlement to be consummated under this *Settlement Agreement*.

1.52. "*Settlement Administrator*" shall mean the third-party vendor retained by *Class Counsel* to assist with all administrative matters related to the *Settlement* as described in Sections 2.1.4, 2.1.4.1, 5.1, 9.3.3, and 9.3.4. The *Settlement Administrator's* fees and expenses shall be paid out of the *Settlement Amount*.

1.53. "*Settlement Agreement*" shall refer to this *Settlement Agreement,* including any modifications or amendments adopted pursuant to Section 12.5.

1.54.    "*Settlement Amount*" shall mean the sum of seven million five hundred thousand U.S. dollars ($7,500,000.00)

1.55.    "*Settlement Class*" shall mean all *Persons* (excluding *Defendants* and their *Immediate Family Members*) who were participants in or beneficiaries (including alternate payees) of the *Plan* at any time between April 25, 2008 and the *Agreement Execution Date* (the "*Class Period*") and whose individual *Plan* accounts included investments in *Old Second Stock* during the *Class Period*.

1.56.    "*Settlement Class Member*" shall mean a member of the *Settlement Class*.

1.57.    "*Settlement Condition #1*" shall have the meaning set forth in Section 2.1.

1.58.    "*Settlement Condition #2*" shall have the meaning set forth in Section 2.2.

1.59.    "*Settlement Condition #3*" shall have the meaning set forth in Section 2.3.

1.60.    "*Settlement Condition #4*" shall have the meaning set forth in Section 2.4.

1.61.    "*Settlement Fund*" shall mean the *Settlement Amount* deposited in the *Escrow Account* in accordance with Section 8.1 and all subparts thereof.

1.62.    "*Successors*" or "*Successors-In-Interest*" shall mean a *Party* or *Person's* estate, executor, legal representative, heirs, successors, or assigns, including successors or assigns that result from corporate mergers or other structural changes, and any other *Person* who can make a legal claim by or through such *Party* or *Person*.

1.63.    "*Terminate*" or "*Termination*" shall have the meaning set forth in Section 10.1.

1.64.    "*Terminating Party*" shall have the meaning set forth in Section 10.1.

2.    **CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

The *Settlement* shall not become effective unless and until each and every one of the conditions and obligations in Sections 2.1 through 2.4 ("*Settlement Conditions*") has been either satisfied or waived in writing by the *Party* entitled to the benefit of the condition or obligation. Except as otherwise provided in this *Settlement Agreement*, the *Parties* will use reasonable, good faith, best efforts to cause each of the *Settlement Conditions* to occur, including supporting the *Settlement Agreement* through any *Review Proceeding*.

2.1.    Condition #1:  *Final Court* Approval and Class Certification.  The *Court* must approve the *Settlement* and certify a *Settlement Class* for settlement purposes, and the *Court's* approval of the *Settlement* must become *Final*, in accordance with the following steps:

2.1.1.    Motion for Preliminary Approval of *Settlement.*

2.1.1.1.    The *Parties* will, in good faith, use reasonable efforts consistent with ordinary commercial practice to enable the *Named Plaintiffs* to file as soon as practicable a motion ("*Preliminary Approval Motion*") with the *Court* for an order (the "*Preliminary Approval Order*") substantially in the form annexed hereto as *Exhibit* 1, including the exhibits thereto, and the *Parties* shall, in good faith, take reasonable steps to (a) secure expeditious entry of the *Preliminary Approval Order* by the *Court*; and (b) seek a date for a hearing to finally determine whether the *Settlement* is fair, reasonable, and adequate pursuant to Rule 23(g) of the Federal Rules of Civil Procedure ("the *Final Approval Hearing*), at least ninety (90) calendar days following the mailing of the *CAFA* Notice and sixty (60) days following the mailing and publication of the *Class Notice*, or at such other time set by the *Court*.

2.1.1.2.    Class Certification. In connection with the proceedings for preliminary and final approval of the proposed *Settlement*, *Named Plaintiffs* shall, through *Class Counsel*, seek orders (preliminary and final, respectively) modifying the previously certified class in this *Action* to meet the definition of the *Settlement Class* pursuant to FED. R. CIV. P. 23(b)(1). For *Settlement* purposes only, and to effectuate this *Settlement Agreement*, *Defendants* shall consent to such certification of the *Settlement Class*.

2.1.2.  Entry of *Preliminary Approval Order*.   The *Court* shall enter a *Preliminary Approval Order* substantially in the form annexed hereto as *Exhibit* 1.  If the *Court* does not enter the *Preliminary Approval Order* (either initially,or if a *Review Proceeding* has been initiated, then after the conclusion of a *Review Proceeding*) then (a) there shall be no obligation by the *Defendants* or *Defendants' Insurers* to pay any portion of the *Settlement Amount*, and (b) any *Party* may *Terminate* this *Settlement Agreement* pursuant to Section 10.

2.1.3.  Issuance of Notice Plan.  Pursuant to the *Preliminary Approval Order* to be entered by the *Court*, the *Settlement Administrator* shall cause the *Class Notice* and the *Publication Notice* to be disseminated to the *Settlement Class* in the same or substantially the same forms attached as *Exhibits* A and B, respectively to the *Preliminary Approval Order*.   The *Settlement Administrator* shall cause the *Publication Notice* to be published one time in *The Beacon-News* (newspaper published in the Aurora, IL area).

2.1.4.  Pursuant to *CAFA*, Defendants shall prepare and provide *CAFA Notices* to the Federal Deposit Insurance Corporation, the Office of the Comptroller of Currency and the Attorneys General of all states in which members of the Class reside (the "*CAFA Notice Recipients*") within ten (10) calendar days after filing of the *Preliminary Approval Motion*.  In the event that the *Preliminary Approval Order* provides for any modifications to the *CAFA Notices*, then Defendants shall prepare and issue supplemental or amended *CAFA Notices* as appropriate.

2.1.5.   *Final Approval Order and Judgment.*

2.1.5.1.      The *Named Plaintiffs* shall file a motion seeking final approval of the *Settlement* ("*Final Approval Motion*") with the *Court* no later than 31 days before the *Final Approval Hearing* is scheduled.  In the *Final Approval Motion*, the *Named Plaintiffs* will request that the *Court*, on or after the *Final Approval Hearing*:  (a) enter a *Final Approval Order and Judgment*, substantially in the form attached as *Exhibit* 2, granting final approval of the *Settlement* and dismissing the *Action* without prejudice with direction to the Clerk of Court to enter final judgment pursuant to FED. R. CIV. P. 54(b), finding that there is no just reason for delay of enforcement or appeal of the Final Approval Order; (b) approve the distribution of the *Net Settlement Fund* as provided in the *Plan of Allocation*; (c) determine the amount of legal fees and expenses to be awarded to *Class Counsel* as contemplated by Section 11 of this *Settlement Agreement*; and (d) determine the *Case Contribution Award*, if any, to be awarded to each of the *Named Plaintiffs*.

2.1.5.2.      The *Final Approval Motion* also shall ask the *Court* to permanently enjoin: (i) the members of the *Settlement Class* from bringing in any forum any of *Plaintiffs' Released Claims* against any of *Plaintiffs' Released Persons* and (ii) *Defendants* from bringing in any forum any of *Defendants' Released Claims* against any of *Defendants' Released Persons*.

2.1.5.3.      The *Final Approval Motion* also shall request that the *Court* rule that any *Class Member* or *CAFA Notice Recipient* who wishes to object to this *Settlement* or otherwise be heard concerning this *Settlement* shall timely inform the *Court* in writing of his, her or its intent to object to this *Settlement* and/or to appear at the *Final Approval Hearing* by following the procedures set forth in the *Class Notice* as to *Class Members* ("*Objection*").  To be considered timely, the *Objection* must bear a postmark that is no later than twenty-one (21) calendar days before the *Final Approval Hearing*.  The *Objection* must set forth any and all objections to this *Settlement* and include any supporting papers and arguments.

2.1.5.4.      At the *Final Approval Hearing*, the *Named Plaintiffs* and *Defendants* shall request that the *Court* rule on any *Objections* to the *Settlement* by any *Class Members* and find that the *Settlement* is fair, reasonable and adequate, and enter the *Final Approval Order and Judgment*.

2.1.5.5.      The *Parties* agree to support entry of the *Final Approval Order and Judgment*, including through the conclusion of any *Review Proceeding*.  Further, *Defendants* shall not take any adverse position with respect to the matters described in clauses b, c, or d of Section 2.1.5.1, so long as disposition of those matters is substantially in accordance with the provisions of Section 9 and Section 11 of this *Settlement Agreement*.  The *Parties* otherwise covenant and agree to reasonably cooperate with one another and to take all

actions reasonably necessary to effectuate the *Settlement Agreement* and to obtain a *Final Approval Order and Judgment*.

2.1.5.6.    The *Settlement* provided for in this *Settlement Agreement* is expressly conditioned upon the entry of the *Final Approval Order and Judgment* by the *Court*, and the *Final Approval Order and Judgment* becoming *Final* in accordance with Sections 2.1.5.1, 2.1.5.2, 2.1.5.3, 2.1.5.4 and 2.1.5.5. In the event that the *Court* denies approval to any material term of the *Settlement*, at the conclusion of any *Review Proceeding*, any *Party* may *Terminate* the *Settlement* pursuant to Section 10.

2.2.    Condition #2: Funding of *Settlement Amount*.  *Defendants' Insurers* must have caused the *Settlement Amount* to be deposited into the *Settlement Fund* in accordance with Section 8.1.2.

2.3.    Condition #3: Resolution of CAFA Objections (If Any).  In the event that any of the *CAFA Notice Recipients* object to and request material modifications to the Settlement, *Named Plaintiffs* agree to cooperate and work with *Defendants* to overcome such *Objection(s)* and requested material modifications but have no obligation to alter any material term or condition of the *Settlement*.  In the event such *Objection(s)* or requested material modifications are not overcome, *Defendants* shall have the right to *Terminate* the *Settlement Agreement* pursuant to Section 10.

2.4.    Condition #4: *Independent Fiduciary's* Approval.

2.4.1.    Approval by the *Independent Fiduciary*.

(A)    The *Independent Fiduciary* must approve the *Settlement* in accordance with this Section 2.4.1.  Subject to *Defendants'* right to waive this condition, as described in Section 2.4.2, the *Settlement* shall be contingent upon the *Independent Fiduciary*: (a) approving the *Settlement,* including the *Plan of Allocation*; (b) granting a written release of *Plaintiffs' Released Claims* to *Plaintiffs' Released Persons* on behalf of the *Plan* under Section 3.1; and (c) making a determination that the *Settlement* complies with the terms of the Department of Labor's Prohibited Transaction Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, *PTE 2003-39*, including a finding that the *Settlement* does not constitute a prohibited transaction under *ERISA* § 406.  The *Independent Fiduciary* shall make these findings in a written report.  The *Parties* shall cooperate in providing information to the *Independent Fiduciary*, as he may request.  Further, the *Parties* agree to meet and confer in good faith to attempt to resolve any concerns or objections raised by the *Independent Fiduciary*.  The *Independent Fiduciary* shall have no authority to renegotiate any terms set forth in this *Settlement Agreement* without the *Parties'* consent.

(B)    *Defendants' Insurers* shall bear all costs and expenses associated with the *Independent Fiduciary* and incurred by the *Independent Fiduciary* or *Defendants'* counsel.  In no event shall any fees or expenses of the *Independent*

*Fiduciary* be chargeable to the *Settlement Fund*, *Named Plaintiffs*, *Class Counsel*, *Liaison Class Counsel*, or the *Settlement Class*.

2.4.2. <u>Waiver of Approval by the *Independent Fiduciary*</u>. *Defendants* shall determine in their sole discretion whether the *Settlement* shall be contingent on any, some, or all of the conditions identified in Section 2.4.1(A). Any waiver of any of those conditions by *Defendants* shall be effective only if in writing and signed by *Defendants* or an authorized officer or representative of *Defendants*.

2.4.3. <u>Notice of Approval by the *Independent Fiduciary* or Waiver</u>. *Defendants* shall notify *Class Counsel* no later than fourteen (14) days prior to the *Final Approval Hearing* as to whether the *Independent Fiduciary* has provided the requisite approval, authorization, or finding, or whether *Defendants* have elected to waive the conditions identified in Section 2.4.1(A). In the event that the *Independent Fiduciary* provides the requisite approval, authorization, or finding, the *Parties* shall cooperate in filing the report of the *Independent Fiduciary* approving the *Settlement* with the *Court* no later than seven (7) days prior to the *Final Approval Hearing*.

## 3. RELEASES

3.1. <u>*Named Plaintiffs*, the *Settlement Class*, and the *Plan's* Releases</u>. Upon the *Effective Date*, the *Named Plaintiffs* (or their *Successors*) shall and hereby do conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge, and the *Plan* and the *Settlement Class* shall, by operation of the *Final Approval Order and Judgment*, be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the *Plaintiffs' Released Persons* from all *Plaintiffs' Released Claims*.

3.2. <u>*Defendants'* Releases</u>. Upon the *Effective Date*, *Defendants* shall conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge *Defendants' Released Persons* from all of *Defendants' Released Claims*.

3.3. <u>Scope of Releases</u>. The releases and discharges set forth in Sections 3.1 and 3.2 shall not include the release or discharge of any rights or duties of the *Parties* arising out of this *Settlement Agreement*, including the express warranties and covenants contained herein.

3.4. In the event that any court with original or appellate jurisdiction over this *Action* determines that any portion of Section 3 of this *Settlement Agreement* is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify Section 3 to conform with such determination.

## 4. COVENANTS

4.1. <u>Covenants Not to Sue.</u>

4.1.1.  From and after the *Effective Date*, *Named Plaintiffs*, on their own behalf and on behalf of the *Settlement Class*, the *Plan*, *Class Counsel* and *Liaison Class Counsel,* covenant and agree:  (a) not to file any *Claim* (whether individually, derivatively, on behalf of a class, or in any other capacity) released under Section 3 against any of *Plaintiffs' Released Persons*; and (b) that the foregoing covenant and agreement shall be a complete defense to any such *Claims* against any of *Plaintiffs' Released Persons*.  Nothing herein, however, shall preclude any action or claim related to the interpretation and/or enforcement of this *Settlement Agreement*.

4.1.2.  From and after the *Effective Date*, *Defendants* covenant and agree:  (a) not to file any *Claim* released under Section 3 against any of *Defendants' Released Persons* or any other *Defendant*; and (b) that the foregoing covenants and agreements shall be a complete defense to any such *Claims* against any of *Defendants' Released Persons* or any *Defendant*.

4.2.   Taxation of *Settlement Amount*.  *Named Plaintiffs* acknowledge on their own behalf, and on behalf of the *Settlement Class*, that none of the *Plaintiffs' Released Persons* has any responsibility to pay any income or other taxes due on funds deposited in the *Settlement Fund*, including those funds that *Class Counsel* receives from the *Settlement Amount*, should any be awarded pursuant to Section 11 of this *Settlement Agreement*.  Nothing herein shall constitute an admission or representation that any income or other taxes will or will not be due on the *Settlement Amount*.  *Named Plaintiffs* and the *Settlement Class* intend that the amounts allocated pursuant to the *Plan of Allocation* will be used to restore claimed losses to the *Plan* on account of the investment in *Old Second Stock* and are intended by *Named Plaintiffs* and the *Settlement Class* to be "restorative payments" within the meaning of Revenue Ruling 2002-45.

5.  **PROVISION OF PARTICIPANT DATA TO SETTLEMENT ADMINISTRATOR**

5.1.   *Old Second* shall use reasonable efforts consistent with ordinary commercial practice to provide the *Settlement Administrator*, in electronic format, within thirty (30) days following the *Agreement Execution Date*, the names, Social Security Numbers and last known addresses of the *Settlement Class Members* that were/are on file with the *Plan Recordkeepers* and timely respond to any reasonable written requests for reasonably accessible data in the *Plan Recordkeepers'* possession, custody or control necessary to effectuate Class Notice and implement the *Plan of Allocation*.  *Old Second* will provide confirmation from or on behalf of the *Plan Recordkeepers* that such information or data provided accurately reflects what is stored on the *Plan Recordkeepers'* systems.  In the event that the production of additional data is required and the *Plan Recordkeepers* charge a fee for the production of any additional data, the additional charges should be paid by *Defendants' Insurers*.

6. **REPRESENTATIONS AND WARRANTIES**

    6.1.    *Named Plaintiffs'* Representations and Warranties.

        6.1.1.  *Named Plaintiffs* represent and warrant, as of the date hereof and as of the *Effective Date*, that they have not sold, assigned, transferred, hypothecated, pledged or encumbered, in whole or in part, voluntarily or involuntarily, any of *Plaintiffs' Released Claims* against any of *Plaintiffs' Released Persons.*

        6.1.2.  *Named Plaintiffs*, on their own behalf and on behalf of the *Plan* and the *Settlement Class*, represent and warrant that, from and after the *Effective Date*, they and the *Settlement Class* shall have no surviving *Claim* against any of the *Plaintiffs' Released Persons* with respect to the *Plaintiffs' Released Claims*.

    6.2.    *Parties'* Representations and Warranties.  Each of the *Parties* represents and warrants, severally and not jointly, to each of the other *Parties*:

        6.2.1.  That he, she, or it is voluntarily entering into this *Settlement Agreement* as a result of arms-length negotiations among his, her or its counsel, with the assistance of the *Mediators*; that in executing this *Settlement Agreement* he, she, or it is relying solely upon his, her or its own judgment, belief and knowledge, and the advice and recommendations of his, her, or its own independently selected counsel, concerning the nature, extent and duration of his, her, or its rights and *Claims* hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as expressly provided herein, he, she, or it has not been influenced to any extent whatsoever in entering into this *Settlement Agreement* by any representations, warranties, or statements, or omissions pertaining to any of the foregoing matters by any *Party* or by any *Person* representing any *Party*.

        6.2.2.  That he, she, or it assumes the risk of mistake as to facts or law and the *Settlement Agreement* shall not be subject to termination, modification, or rescission by reason of any mistake as to facts or law.

        6.2.3.  That he, she, or it has carefully read the contents of this *Settlement Agreement*, and that he, she, or it has freely entered into this *Settlement Agreement*.

        6.2.4.  That he, she, or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement* and all of the matters pertaining thereto, as he, she, or it deems necessary.

    6.3.    Signatories' Representations and Warranties.  Each individual executing this *Settlement Agreement* on behalf of any other *Person* or the *Settlement Class* does hereby personally represent and warrant to the other *Parties* that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

7. **NO ADMISSION OF LIABILITY**

7.1.    <u>No Decision on the Merits</u>.  Each of the *Parties* understands and agrees that:  (a) this *Settlement Agreement* embodies a compromise settlement of disputed claims for the purpose of avoiding the costs, disruptions, and uncertainties associated with further litigation; (b) nothing in this *Settlement Agreement*, including the furnishing of consideration for this *Settlement*, shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Defendants*, or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or admission of wrongdoing or liability in the *Action* or any other proceeding; and (c) this *Settlement Agreement* and the payments made hereunder do not constitute a ruling on the merits, an admission as to any issue of fact or principle at law, or an admission of any liability or wrongdoing of any kind. *Defendants* specifically and expressly deny any liability or wrongdoing of any kind.

7.2.    <u>Reliance on Federal Rule of Evidence 408</u>.  This *Settlement Agreement* has been executed in reliance upon the provisions of Rule 408 of the Federal Rules of Evidence and all similar state rules precluding the introduction of evidence regarding settlement negotiations or agreements and neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence, or otherwise introduced in any action or proceeding, for any purpose, except (a) in an action or proceeding seeking to enforce or interpret the terms of this *Settlement Agreement* or arising out of or relating to the *Preliminary Approval Order* or the *Final Approval Order and Judgment*, or (b) in an action or proceeding where the releases or covenants not to sue provided pursuant to Sections 3 and 4 of this *Settlement Agreement* may serve as a bar to recovery.

8. **THE CREATION OF THE SETTLEMENT FUND**

8.1.    <u>The *Settlement Fund*</u>.

8.1.1.    No later than five (5) business days after the entry of the *Preliminary Approval Order*, *Class Counsel* shall establish at a federally-insured financial institution (the "*Financial Institution*") an account (the "*Escrow Account*") for the purpose of holding the *Settlement Amount* to be deposited into the account (the "*Settlement Fund*"); and (b) provide notice to *Defendants* and *Defendants' Insurers* pursuant to section 8.1.2 of the information needed to deposit the *Settlement Amount* into the *Settlement Fund*.  The *Escrow Account* shall be governed by an escrow agreement and subject to the jurisdiction of the *Court*. The monies in the *Settlement Fund* shall be considered a common fund created as a result of the *Action*.

8.1.2.    In consideration of, and expressly in exchange for, all of the promises and agreements set forth in this *Settlement Agreement*, *Defendants* and *Defendants' Insurers* shall cause the *Settlement Amount* to be deposited into the *Settlement Fund* by wire transfer within ten business (10) days after entry of the *Preliminary Approval Order*, provided that *Class Counsel* has provided *Defendants* and *Defendants' Insurers* the information necessary to complete the wire transfer, to

include the name of the *Financial Institution* and the account number of the *Escrow Account*.

8.1.3.  The *Settlement Fund* shall accrue and retain interest and income earned thereon for the benefit of the *Settlement Class* and shall be invested at the direction of *Class Counsel* only in (a) United States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury with a maturity period not to exceed thirty (30) days, (b) repurchase agreements collateralized by such securities, and/or (c) mutual funds or money market accounts, provided that such funds or accounts invest exclusively in United States Treasury securities and/or securities of United States agencies.  Funds in the *Escrow Account* shall not be commingled with any other accounts or monies.

8.1.4.  The *Settlement Administrator* shall structure and manage the *Settlement Fund* to qualify as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code (the "*Code*") and U.S. Treasury regulations promulgated thereunder.  It is intended that the *Settlement Fund* be structured and administered to ensure, to the maximum degree possible, that the portion of the *Settlement Fund* that is contributed to the *Plan* for distribution to *Settlement Class Members* pursuant to the *Plan of Allocation* will qualify for the favorable tax treatment available for tax-qualified plans and trusts under Sections 401(a) and 501(a) of the *Code*.  The *Parties* shall not take a position in any filing or before any tax authority inconsistent with such treatment.  The *Final Approval Motion* shall request that the *Final Approval Order and Judgment* provide that once the *Net Settlement Fund* is transferred to the reinstated *Plan*, the *Net Settlement Fund* shall be considered "plan assets" of the *Plan* within the meaning of ERISA.

8.1.5.  For purposes of Section 486B of the *Code* and the regulations promulgated thereunder, the "administrator" of the *Settlement Fund* shall be the *Settlement Administrator*.  The *Settlement Administrator*, or any accounting firm that it may retain, shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Section 486B of the *Code* and regulations promulgated thereunder.

8.1.6.  All income and other taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be paid out of the *Settlement Fund*.  Reasonable fees and expenses incurred for or by any third-party vendor appointed by *Class Counsel* for calculation, allocation, and distribution pursuant to the *Plan of Allocation* shall also be paid from the *Settlement Fund*.

8.1.7.  *Class Counsel* shall have signature authority over the *Settlement Fund*, and shall direct the *Financial Institution* to pay from the *Settlement Fund* all reasonable costs of administering the *Settlement Fund* without further order of the *Court*, which expenses shall include:  (a) reasonable expenses associated with the preparation and filing of all income and other tax reports and income and other

14

tax returns required to be filed by the *Settlement Fund*; (b) payment of any income and other taxes owed by the *Settlement Fund*; (c) reasonable expenses associated with the preparation and issuance of any required Form(s) 1099 associated with payments from the *Settlement Fund*; and (d) fees charged and expenses incurred by the *Financial Institution*, the third-party administrator, the *Settlement Administrator* or any accounting firm they may retain.

8.1.8. *Class Counsel* shall instruct the *Financial Institution* to set aside appropriate reserves from the *Settlement Fund* for income and other taxes and for the purpose of satisfying future or contingent expenses or obligations, including expenses of *Settlement Fund* administration, before any disbursement is made as provided in Section 9.3 of this *Settlement Agreement*. *Defendants* shall take no position, directly or indirectly, with respect to such matters, unless the *Independent Fiduciary* objects to such matters.

8.1.9. Except as provided in Sections 8, 9, and 11 of the *Settlement Agreement*, no monies shall be paid to *Class Counsel*, *Liaison Class Counsel*, *Named Plaintiffs*, the *Settlement Class*, or the *Plan* from the *Settlement Fund*, and neither *Class Counsel* nor *Liaison Class Counsel* shall seek or obtain any monies from the *Settlement Fund*.

8.1.10. The *Parties* acknowledge and agree that *Defendants* and the *Defendants' Insurers* shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the *Settlement Fund*, for any expenses the *Settlement Fund* may incur, or for any income and other taxes that may be payable by the *Settlement Fund* or any direct or indirect distributee therefrom.

8.2. The *Settlement Amount* is the Sole Monetary Contribution. The *Settlement Amount* shall be the full and sole monetary obligation of *Defendants* and *Defendants' Insurers* in connection with the *Settlement* and under this *Settlement Agreement*, and shall be paid into the *Settlement Fund* by *Defendants' Insurers*. The *Settlement Amount* specifically covers any claims for any reasonable costs or expenses associated with or related to the *Notice Plan*. Except as otherwise specified in this *Settlement Agreement*, *Named Plaintiffs*, the *Settlement Class*, *Class Counsel*, and *Liaison Class Counsel* shall bear their own costs and expenses (including attorneys' fees) in connection with the *Settlement*, the negotiation and documentation of this *Settlement Agreement*, and securing all necessary court orders and approvals with respect to the same. Except as otherwise provided for herein, the *Named Plaintiffs*, *Defendants*, and their respective counsel shall not charge any fees or expenses to the *Settlement Fund*.

9. **PAYMENTS FROM THE SETTLEMENT FUND**

9.1. *Parties'* Expenses. Except as otherwise provided herein, *Defendants* and their counsel shall not charge any fees or expenses to the *Settlement Fund*. All other costs not provided for herein that *Defendants* incur relating to the *Settlement* shall be borne by *Defendants* or *Defendants' Insurers*. All other costs not provided for herein that the

*Named Plaintiffs* or the *Settlement Class* incur relating to the *Settlement* shall be borne by *Named Plaintiffs*.

9.2.    Expenses of the *Notice Plan*.  *Class Counsel* shall direct the *Financial Institution* in writing to disburse from the *Settlement Fund* the payment of reasonable costs of the *Notice Plan*.

9.3.    Disbursements from the *Settlement Fund*.  *Class Counsel* shall direct the *Financial Institution* to disburse money from the *Settlement Fund* as follows:

9.3.1.   For any *Case Contribution Award*, as provided in Section 10.3.

9.3.2.   For income and other taxes and expenses of the *Settlement Fund* as provided in Sections 8.1.7 and 8.1.8.

9.3.3.   For the *Plan of Allocation*, *Class Counsel* shall propose to the *Court* a *Plan of Allocation* in substantial conformity to the one attached hereto as *Exhibit* 3, which shall provide for the calculation, allocation, and distribution of the *Net Settlement Fund*.   Such *Plan of Allocation* shall provide the method for calculating the specific dollar amount to be allocated by the *Plan* to the *Plan* account for each member of the *Settlement Class*.  The *Plan of Allocation* proposed by *Class Counsel* shall be sufficiently specific to allow the *Settlement Administrator* to perform the calculations called for in the *Plan of Allocation*. The *Settlement Administrator* shall be exclusively responsible and liable for calculating the amounts payable to the members of the *Settlement Class* pursuant to the *Plan of Allocation*, except to the extent any liability or claims relating to the calculation of amounts payable arise from inaccurate or incomplete data as provided by *Old Second* and/or the *Plan's Recordkeepers*.

9.3.4.   The data reasonably necessary to perform calculations pursuant to the *Plan of Allocation* shall be provided by *Old Second*, or the *Plan* trustee/*Plan Recordkeepers* within 30 (thirty) days of entry of the *Preliminary Approval Order*.   As soon as is reasonably practicable after the *Effective Date*, *Class Counsel* shall direct the *Financial Institution* to disburse the *Net Settlement Fund* to the *Plan*.  *Defendants* shall then direct the *Plan* to distribute the *Net Settlement Fund* to members of the *Settlement Class* pursuant to the *Plan of Allocation*.  The *Plan,* or at the *Plan's* discretion, the *Plan's Recordkeeper*, shall then be exclusively responsible for distributing the *Net Settlement Fund* to the members of the *Settlement Class* in accordance with the *Plan of Allocation* based on the calculations of the *Settlement Administrator*.  Distribution of the *Net Settlement Fund* to members of the *Settlement Class* shall be completed by the *Plan Recordkeeper* within 10 (ten) business days of receipt of the *Net Settlement Fund*. *Class Counsel* shall have no responsibility or liability for the *Settlement Administrator's* calculations or the distribution of the *Net Settlement Fund* to the members of the *Settlement Class*.  The *Plan* or the *Plan's Recordkeepe*r shall be responsible for taking reasonable steps to provide accurate data that is utilized in performing the calculations under the *Plan of Allocation*.  *Defendants*, to the

16

extent they were participants or beneficiaries of the *Plan* at any time during the *Class Period*, will be excluded from the *Settlement Class* and the *Plan of Allocation*.

9.3.5.   For attorneys' fees and expenses, as described in Section 11.

9.3.6.   The *Case Contribution Award*, *Plan of Allocation*, and award of attorneys' fees and expenses as described in Section 11 are matters separate and apart from the *Settlement* between the *Parties*, and no decision by the *District Court* or any other court concerning the *Case Contribution Award*, *Plan of Allocation* or award of attorneys' fees and expenses shall affect the validity of the *Settlement Agreement*, the releases or covenants granted herein, or the finality of the *Settlement* provided that the *Defendants* and *Defendants' Insurers* shall not be responsible to pay *Named Plaintiffs* or the *Settlement Class* any amount in excess of the *Settlement Amount*.

## 10.    TERMINATION OF THE SETTLEMENT AGREEMENT

10.1.    <u>Termination</u>.   A *Party* may terminate this *Settlement* as set forth in this Section 10, and the *Settlement Agreement* shall thereupon become null and void ("*Terminate*" or "*Termination*"), if any of the *Settlement Conditions* are not satisfied, unless the *Parties* mutually agree otherwise or the *Party* entitled to the benefit of the unsatisfied *Condition* waives that *Condition*.   A *Party* seeking to *Terminate* the *Settlement* (the "*Terminating Party*") must give notice of its intent to *Terminate* this *Settlement* to the other *Parties* in writing within fifteen (15) business days following the event giving rise to *Termination*. Within thirty (30) business days after such notice is given by the *Terminating Party*, the *Parties* may mutually agree to modify this *Settlement Agreement*.   If the *Parties* do not mutually agree to modify this *Settlement Agreement* within thirty (30) business days after a *Terminating Party* gives notice of *Termination* to the other *Parties*, then the *Termination* shall become effective and the provisions of Section 10.2 will apply.   If the *Settlement Agreement* is *Terminated*, the *Settlement* shall be null and void, except the provisions set forth in Sections 10.1 and 10.2, and any other Section expressly incorporated therein, shall survive any such *Termination*.

10.2.    <u>Consequences of *Termination* of the *Settlement Agreement*</u>.   If the *Settlement Agreement* is *Terminated* and thus rendered null and void for any reason specified in Section 10.1, the following shall occur:

10.2.1. Within fifteen (15) business days following the *Termination* of the *Settlement Agreement*, *Class Counsel* shall return to *Defendants' Insurers* the amounts contributed to the *Settlement Fund*, with all interest and income earned thereon, except that neither *Class Counsel* nor any other *Person* shall have an obligation to reimburse to the *Settlement Fund* for the reasonable costs of the *Notice Plan*, or other reasonable costs and expenses of the *Settlement Fund* charged to the *Settlement Fund* under Sections 8.1.6 and 8.1.7 of the *Settlement Agreement*.

10.2.2. The *Action* shall for all purposes with respect to the *Parties* revert to its status as of the day immediately before the *Agreement Execution Date*.

10.2.3. Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in this *Action* or any action or proceeding for any purpose, except in an action or proceeding arising under, or to give effect to a provision of, this *Settlement Agreement*. The understandings and agreements contained in Sections 7.1 and 7.2 shall survive any termination of this *Settlement Agreement*.

11. **ATTORNEYS' FEES AND EXPENSES**

11.1.   <u>Motion for Attorneys' Fees and Expenses</u>.  *Class Counsel* and *Liaison Class Counsel* may move the *Court* for an award of attorneys' fees not to exceed one-third of the *Settlement Amount* (a maximum amount of $2,500,000.00) and for reimbursement of expenses associated with the *Action*, to be paid from the *Settlement Fund*, including fees incurred in securing all necessary court orders and approvals with respect to the *Settlement Agreement*.  *Defendants* will not oppose any fee motion submitted by *Class Counsel* and *Liaison Class Counsel*, provided that *Class Counsel* and *Liaison Class Counsel* do not move for an award of attorneys' fees in excess of one-third of the *Settlement Fund*, and *Defendants* will not oppose any motion for reimbursement of expenses reasonably incurred in prosecuting the *Action*.

11.2.   <u>Disbursement of Attorneys' Fees and Expenses</u>.  *Class Counsel* may direct payment of any *Court*-approved award of fees and expenses from the *Settlement Fund* immediately upon entry of the *Final Approval Order and Judgment* by the *Court* and (if separate) an order approving *Class Counsel's* and *Liaison Class Counsel's* petition for fees and costs.

11.2.1. In the event that the *Settlement* fails to become *Final* or for any reason terminates despite the good faith efforts of the *Parties*, *Class Counsel* and *Liaison Class Counsel* shall redeposit into the *Settlement Fund* the attorneys' fees and expenses originally paid out of the *Settlement Fund*, plus interest and income accrued thereon for the period from payment from the *Settlement Fund* to *Class Counsel* and *Liaison Counsel* at a rate equal to the compounded rate of interest earned by the *Settlement Fund* during the same period. Such a repayment will be due within thirty (30) days of the event that caused the *Settlement* to fail to obtain *Final Approval* or *Terminate*.

11.3.   <u>Motion for *Named Plaintiffs' Case Contribution Awards*</u>.  *Class Counsel* may move the *Court* for a *Case Contribution Award*, which shall not exceed $10,000 for Emil Adolphson and $5,000 for Mary Dalton, payable to the *Named Plaintiffs* solely from the *Settlement Fund*.  Unless the *Independent Fiduciary* has an objection, *Defendants* will not oppose any motion for a *Case Contribution Award.*

11.4.   <u>Disbursement of *Named Plaintiffs' Case Contribution Awards*</u>.  On the *Effective Date*, *Class Counsel* may instruct the *Financial Institution* in writing to disburse payment to the *Named Plaintiffs* in the amount awarded by the *Court* (or as modified, as

necessary, following any appeal) as a *Case Contribution Award* from the *Settlement Fund*.

11.5. <u>Post-Award Expenses</u>. *Class Counsel* may make a supplemental motion to the *Court* for an award of reasonable expenses with respect to post-*Settlement* proceedings and administration, and any such award shall be payable only from the *Settlement Fund* and not by *Defendants* or the *Defendants' Insurers*.

12. **MISCELLANEOUS PROVISIONS**

12.1. <u>Advice of Counsel</u>. In entering into this *Settlement Agreement*, each *Party* represents and warrants that it has relied upon the advice of its attorneys, that it has completely read the terms of this *Settlement*, and that the terms of this *Settlement* have been explained to it by its attorneys. Each *Party* further represents and warrants that it fully understands and voluntarily accepts the terms of the *Settlement*.

12.2. <u>Authority</u>. Each *Person* executing this *Settlement Agreement* hereby represents and warrants that he or she has the full authority to do so. Each *Party* further represents and warrants that it has not assigned or transferred to any person any *Claim* released in this *Settlement Agreement*, in whole or in part.

12.3. <u>Governing Law</u>. This *Settlement Agreement* shall be governed by the laws of the United States of America, to the extent applicable, and otherwise in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Illinois relating to contracts made and to be performed in Illinois.

12.4. <u>Severability</u>. In the event that any court with original or appellate jurisdiction over this *Action* issues a *Final* determination that any portion of Section 3 of this *Settlement Agreement* is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify Section 3 to conform with such determination. With the sole exception set forth in the preceding sentence, the provisions of this *Settlement Agreement* are not severable.

12.5. <u>Amendment</u>. Before entry of the *Final Approval Order and Judgment*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties* with notice to be given to the *Court* of the agreed modification or amendment. Following entry of the *Final Approval Order and Judgment*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties*, and approved by the *Court*. Amendments and modifications may be made without notice to the *Settlement Class* unless notice is required by law or the *Court*.

12.6. <u>Waiver</u>. The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving party. The waiver by any of the *Parties* of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

12.7.  Construction.  None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.  Rather, for the purposes of construing or interpreting this *Settlement Agreement*, the *Parties* agree that the *Settlement Agreement* is to be deemed to have been drafted equally by all *Parties* hereto and shall not be construed for or against any of the *Parties*.

12.8.  Principles of Interpretation.  The following principles of interpretation apply to this *Settlement Agreement*.

12.8.1. Headings.  The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement*.

12.8.2. Singular and Plural.  Definitions apply to the singular and plural forms of each defined term.

12.8.3. Gender.  Definitions apply to the masculine, feminine, and neuter genders of each defined term.

12.8.4. References to a *Person*.  References to a *Person* are also to the *Person's Successors-in-Interest*.

12.8.5. Terms of Inclusion.  Whenever the words "include," "includes," or "including" are used in this *Settlement Agreement*, they shall not be limiting but rather shall be deemed to be followed by the words "but not limited to."

12.9.  Dispute Resolution.  Disputes over the construction or interpretation of the *Settlement* shall be decided by the *Court*, unless otherwise agreed by the *Parties*.

12.10. Further Assurances.  Each of the *Parties* agrees, without further consideration and as part of effectuating the *Settlement*, that it will in good faith execute and deliver such other documents and take such other actions as may be reasonably necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.

12.11. Notices.  Any notice, demand or other communication under this *Settlement Agreement* (other than the *Class Notice* or *Publication Notice*, or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid) or delivered by reputable express overnight courier, with a copy by email.

IF TO *NAMED PLAINTIFFS* OR THE *SETTLEMENT CLASS*:

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

280 King of Prussia Road
Edward W. Ciolko
Email:  eciolko@ktmc.com
Peter A. Muhic
Email:  pmuhic@ktmc.com
Mark K. Gyandoh
Email:  mgyandoh@ktmc.com
Julie Siebert-Johnson
Email:  jsjohnson@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

IF TO *DEFENDANTS:*

**BARACK FERRAZZANO KIRSCHBAUM**
**  & NAGELBERG LLP**
W. Scott Porterfield
Email:  scott.porterfield@bfkn.com
Roger H. Stetson
Email:  roger.stetson@bfkn.com
Alison Rosene Leff
Email:  alison.leff@bfkn.com
200 West Madison Street, Suite 3900
Chicago, IL 60606
Telephone:  (312) 984-3100
Facsimile:  (312) 984-3150

12.12.  <u>Entire Agreement</u>.  This *Settlement Agreement* contains the entire agreement among the *Parties* relating to this *Settlement*.  This *Settlement Agreement* supersedes any settlement terms or settlement agreements relating to the *Parties* which were previously agreed upon orally or in writing by any of the *Parties*.

12.13.  <u>Counterparts</u>.  This *Settlement Agreement*, and any amendments thereto, and waivers of conditions, may be executed by exchange of executed signature pages by facsimile or Portable Document Format ("PDF") as an electronic mail attachment, and any signature transmitted by facsimile or PDF via electronic mail for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*.  This *Settlement Agreement* may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, taken together, shall constitute one and the same instrument.

12.14.  <u>Binding Effect</u>.  This *Settlement Agreement* binds and inures to the benefit of the *Parties* hereto, their assigns, heirs, administrators, executors and *Successors*.

12.15.  <u>Agreement Execution Date</u>.  The date on which the final signature is affixed below shall be the *Agreement Execution Date*.

12.16.  <u>No Benefits to Non-Parties</u>.  Except as otherwise expressly provided herein, this *Settlement Agreement* is not intended to confer any benefits upon any *Person.*

12.17.  <u>Integration of Exhibits</u>.  The exhibits to this *Settlement Agreement* are an integral and material part of the *Settlement* and are hereby made a part of the *Settlement Agreement.*

12.18.  <u>Deadlines Falling on Weekends or Holidays</u>.  To the extent that any deadline set forth in this *Settlement Agreement* falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

FOR *NAMED PLAINTIFFS* AND ON BEHALF OF THE *SETTLEMENT CLASS*:

Dated: 2/25/13 _____

By: _____
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko
Peter A. Muhic
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Class Counsel*

**THE COLLINS LAW FIRM, P.C.**
Shawn M. Collins
Robert J. Dawidiuk
Megan A. Drefchinski
1770 North Park Street
Suite 200
Naperville, IL 60563
 Telephone: (630) 527-1193

*Liaison Class Counsel*

FOR *DEFENDANTS*:

Dated: 2/25/13 _____

By: _____
**BARACK FERRAZZANO**
**KIRSCHBAUM**
**& NAGELBERG LLP**
W. Scott Porterfield
Roger H. Stetson
Alison Rosene Leff
200 West Madison Street, Suite 3900
Chicago, IL 60606
Telephone: (312) 984-3100

*Counsel for Defendants*

23

FOR CINCINNATI INSURANCE COMPANY

Dated:_____     By:  _____, Esq.
                                        Cincinnati Insurance Company



                                        Telephone:


FOR XL SPECIALTY INSURANCE COMPANY




Dated:  February 25, 2013          By:

                                        James A. Skarzynski, Esq.
                                        XL Specialty Insurance Company



                                        Telephone:  212-820-7720

FOR CINCINNATI INSURANCE COMPANY

Dated: _2/26/13_____     By _____, Esq.
                                       Cincinnati Insurance Company

     **The Cincinnati Insurance Company**
     **Attn: Darren Rutledge**
     **P.O. Box 145496**
     **Cincinnati, OH 45250-5496**     Telephone: _513·603·5750_

FOR XL SPECIALTY INSURANCE COMPANY

Dated: _____     By: _____, Esq.
                                       XL Specialty Insurance Company

                               Telephone:

24

## EXHIBITS

Group Exhibit 1:     *Preliminary Approval Order*
                            Exhibit A to *Preliminary Approval Order:  Class Notice*
                            Exhibit B to *Preliminary Approval Order: Publication Notice*
                            Exhibit C to *Preliminary Approval Order: CAFA  Notice*
                            Exhibit D to *Preliminary Approval Order:  Independent Fidcuiary Resume*

Exhibit 2:     *Final Appproval Order and Judgment*

Exhibit 3:     *Plan of Allocation*

# EXHIBIT 1
# to the Settlement Agreement

## *Preliminary Approval Order*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated, ) ) ) ) | **CASE NO. 1:11-cv-01112** |
| Plaintiffs, ) ) ) | **Judge Milton I. Shadur** |
| v. ) ) ) |  |
| OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10. ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. ) ) |  |

## ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, MODIFYING CLASS CERTIFICATION FOR SETTLEMENT PURPOSES, APPROVING FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING

This *Action* involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), with respect to the Old Second Bancorp, Inc. Employees' 401(k) Savings Plan and Trust (the "*Plan*").[1] The terms of the *Settlement* are set out in the Settlement Agreement and Release, fully executed as of February 25, 2013 (the "*Settlement Agreement*"), by counsel on behalf of the *Named Plaintiffs* and *Defendants*, respectively.

Pursuant to the *Named Plaintiffs'* Motion for Preliminary Approval of the Settlement, on _____, the *Court* preliminarily considered the *Settlement* to determine, among other things, whether the *Settlement* is sufficient to warrant the issuance of notice to members of the proposed *Settlement Class*. Upon reviewing the *Settlement Agreement* and the matter having come before the *Court* at the _____ hearing, due notice having been given and the *Court* having been fully advised in the premises, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.     **Class Certification.** The *Court* has previously certified this *Action* as a class action pursuant to FED. R. CIV. P. 23. On September 20, 2011, the Court issued its order certifying the following Class under FED. R. CIV. P. 23(b)(1):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between April 25, 2008 and the present (the "Class Period") and whose Plan accounts included investments in Old Second common stock.

(a)     In connection with the *Settlement*, *Named Plaintiffs* have requested, and *Defendants* do not oppose, modification of the certified class for settlement purposes only to include anyone who meets the following definition regardless of whether he or she signed a severance agreement and release upon terminating employment with *Old Second*:

---

[1]     All italicized terms not otherwise defined in this Order shall have the same meaning as ascribed

1

All *Persons* (excluding *Defendants* and their *Immediate Family Members*) who were participants in or beneficiaries (including alternate payees) of the *Plan* at any time between April 25, 2008 and February 25, 2013 (the "*Class Period*") and whose individual *Plan* accounts included investments in *Old Second Stock* during the *Class Period*.

(b)     Accordingly, the *Court*, in conducting the settlement approval process required by FED. R. CIV. P. 23, preliminarily modifies the definition of the certified class, solely for the purpose of settlement, as set forth in section 1(a) above under FED. R. CIV. P. 23(b)(1) (the "*Settlement Class*").

(c)     Further, consistent with the *Court's* September 20, 2011 Order, the *Court* hereby appoints *Named Plaintiff* Emil Adolphson as the representative for the *Settlement Class* and *Class Counsel* and *Liaison Class Counsel* as counsel for the *Settlement Class*. Mary Dalton remains a *Named Plaintiff* in the *Action*.

2.     **Preliminary Approval of Proposed *Settlement*** – The *Settlement Agreement* is hereby preliminarily approved as fair, reasonable, and adequate. This *Court* preliminarily finds that: (a) the proposed *Settlement* resulted from serious, informed, extensive and arms'-length negotiations with the assistance of experienced mediators; (b) the *Settlement Agreement* was executed only after *Class Counsel* and *Liaison Class Counsel* had conducted appropriate investigation and discovery regarding the strengths and weaknesses of *Named Plaintiffs'* claims; (c) *Class Counsel* and *Liaison Class Counsel* represent that they have concluded that the proposed *Settlement* is fair, reasonable, and adequate; and (d) the proposed *Settlement* is in the best interest of the *Named Plaintiffs* and the *Settlement Class*. The *Court* finds that those whose claims would be settled, compromised, dismissed, or released pursuant to the *Settlement* should be given notice and an opportunity to be heard regarding final approval of the *Settlement* and other matters.

---

to them in the *Settlement Agreement*.

3. ***Final Approval Hearing*** – A hearing is scheduled for _____
to make a final determination, concerning among other things:

- Whether the *Settlement* merits final approval as fair, reasonable and adequate;

- Whether the *Action* should be dismissed with prejudice pursuant to the terms of
  the *Settlement*;

- Whether the notice method proposed by the *Parties*: (i) constitutes the best
  practicable notice; (ii) constitutes notice reasonably calculated, under the
  circumstances, to apprise members of the *Class* of the pendency of the litigation,
  their right to object to the *Settlement*, and their right to appear at the *Final
  Approval Hearing*; (iii) is reasonable and constitutes due, adequate, and sufficient
  notice to all persons entitled to notice; and (iv) meets all applicable requirements
  of the Federal Rules of Civil Procedure and any other applicable law;

- Whether *Class Counsel* adequately represented the *Settlement Class* for purposes
  of entering into and implementing the *Settlement*;

- Whether the proposed *Plan of Allocation* should be approved; and

- Whether any application(s) for attorneys' fees and expenses and *Case
  Contribution Awards* to the *Named Plaintiffs* is fair and reasonable and should be
  approved.

4. ***Class Notice*** – The *Parties* have presented to the *Court* a proposed form of *Class
Notice*, attached hereto as Exhibit A and a summary of the Class Notice in the form of a
*Publication Notice*, attached hereto as Exhibit B. The *Court* finds that both such forms of notice
fairly and adequately: (a) describe the terms and effects of the *Settlement Agreement*, the
*Settlement*, and the *Plan of Allocation*; (b) notify the *Settlement Class* that *Class Counsel* and

*Liaison Class Counsel* will seek attorneys' fees and reimbursement of expenses from the *Settlement Fund*, payment of the costs of administering the *Settlement* out of the *Settlement Fund*, and for a *Case Contribution Award* of $5,000 for *Named Plaintiff* Mary Dalton and $10,000 for *Named Plaintiff* Emil Adolphson for their services in such capacity; (c) give notice to the *Settlement Class* of the time and place of the *Final Approval Hearing*; and (d) describe how the recipients of the *Class Notice* may object to any of the relief requested. The *Parties* have proposed the following manner of communicating the notice to members of the *Settlement Class*, and the *Court* finds that such proposed manner is the best notice practicable under the circumstances. Accordingly, the *Court* directs that *Class Counsel* shall:

- By no later than _____, cause the *Class Notice*, with such non-substantive modifications thereto as may be agreed upon by the *Parties*, to be provided by first-class mail, postage prepaid, to the last known address of each member of the *Settlement Class* who can be identified through reasonable effort.

- By no later than _____, cause the *Class Notice* to be published on the website identified in the *Class Notice*, www.OldSecondERISAsettlement.com, which will also host and make available copies of all *Settlement*-related documents, including the *Settlement Agreement*.

- By no later than _____, cause the *Publication Notice* to be published in *The Beacon News* one time.

5.    **CAFA Notice** – The form of notice and notice procedure proposed by *Defendants* pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("*CAFA Notice*") complies with the requirements of the Act and is hereby approved. *Old Second* shall mail the *CAFA Notice* (attached hereto as Exhibit C) on or before _____.

4

6.     **Independent Fiduciary** – *Old Second*, on behalf of itself and the *Plan*, retained Evercore Trust Company ("Evercore") to serve as an independent fiduciary of the *Plan* ("*Independent Fiduciary*") to determine whether the *Settlement Agreement* should be authorized for the *Plan* and to make any other determinations called for by the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, PTE 2003-39 ("*PTE 2003-39*"). The *Named Plaintiffs* do not object to the retention of Evercore. This *Court* finds that, as set forth in Evercore's resume (attached hereto as Exhibit D), Evercore is qualified to serve as *Independent Fiduciary* and to make the determinations called for by *PTE 2003-39*.

7.     The *Independent Fiduciary* shall make the determinations called for by *PTE 2003-39* on or before _____. In the event the *Independent Fiduciary* provides the requisite approval, authorization or finding pursuant to *PTE 2003-39*, the report of the *Independent Fiduciary* shall be filed with the *Court* on or before _____.

8.     **Petition for Attorney's Fees and Litigation Costs and *Case Contribution Awards*** – Any petition by *Class Counsel* or *Liaison Class Counsel* for attorney's fees, litigation costs and *Case Contribution Awards* to the *Named Plaintiffs*, and all briefs in support thereof, shall be filed no later than _____.

9.     **Briefs in Support of Final Approval of the *Settlement*** – Briefs and other documents in support of *Final Approval* of the *Settlement* shall be filed no later than _____.

10.     **Objections to *Settlement*** – Any member of the *Settlement Class* or authorized recipient of the *CAFA Notice* may file an objection to the fairness, reasonableness, or adequacy of the *Settlement*, to any term of the *Settlement Agreement*, to the *Plan of Allocation*, to the

5

proposed award of attorneys' fees and expenses, the payment of costs of administering the Settlement out of the *Settlement Fund*, or to the request for a *Case Contribution Award* for the *Named Plaintiffs*. An objector must file with the *Court* a statement of his, her, or its objection(s), specifying the reason(s), if any, for each such objection made, including any legal support and/or evidence that the objector wishes to bring to the *Court's* attention or introduce in support of the objection(s). The objector must also mail copies of the objection(s) and any supporting law and/or evidence to *Class Counsel* and *Liaison Class Counsel* and to counsel for the *Defendants*. The addresses for filing objections with the *Court* and serving objections on counsel are as follows:

> *For Filing*:
>
> Clerk of the Court
> United States District Court for the Northern District of Illinois, Eastern Division
> Everett McKinley Dirksen United States Courthouse
> 219 South Dearborn Street
> Chicago, IL 60604
>
> Re: *Dalton, et al. v. Old Second Bancorp, Inc. et al.*,
>      Civil Action No. 1:11-cv-01112 (N.D. Ill.).
>
> *To Class Counsel:*
>
> Edward W. Ciolko
> Peter A. Muhic
> Mark K. Gyandoh
> Julie Siebert-Johnson
> KESSLER TOPAZ MELTZER & CHECK, LLP
> 280 King of Prussia Road
> Radnor, Pennsylvania 19087
> Telephone: (610) 667-7706
> Facsimile: (610) 667-7056
>
> *To Defendants' Counsel*
>
> W. Scott Porterfield
> Roger H. Stetson
> Alison Leff

BARACK FERRAZZANO KIRSCHBAUM
& NAGELBERG, LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
Telephone: (312) 984-3100
Facsimile: (312) 984-3150

The objector or his, her, or its counsel (if any) must serve copies of the objection(s) (together with any supporting materials) on counsel listed above and file the objection(s) and supporting materials with the *Court* no later than _____. If an objector hires an attorney to represent him, her, or it for the purposes of making an objection pursuant to this paragraph, the attorney must also serve a notice of appearance on counsel listed above and file it with the *Court* no later than _____. Any member of the *Settlement Class* or other *Person* who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the *Settlement*, and any untimely objection shall be barred. Any responses to objections shall be filed with the *Court* and served on opposing counsel no later than _____. There shall be no reply briefs.

11. Any additional briefs the *Parties* may wish to file in support of the *Settlement* shall be filed no later than _____.

12. **Appearance at *Final Approval Hearing*** – Any objector who files and serves a timely, written objection in accordance with paragraph 10 above may also appear at the *Final Approval Hearing* either in person or through qualified counsel retained at the objector's expense. Objectors or their attorneys intending to appear at the *Final Approval Hearing* must serve a notice of intention to appear (and, if applicable, the name, address, and telephone number of the objector's attorney) on *Class Counsel* and *Liaison Class Counsel* and *Defendants'* counsel (at the addresses set out above) and file it with the *Court* by no later than _____

7

_____. Any objector who does not timely file and serve a notice of intention to appear in accordance with this paragraph shall not be permitted to appear at the *Final Approval Hearing*, except for good cause shown.

13. **Notice Expenses** – The expenses of printing, mailing, and publishing of the Class Notice and Publication Notice required herein shall be paid from the *Settlement Fund*.

14. **Service of Objections On Opposing Counsel** – *Defendants'* counsel and *Class Counsel* and *Liaison Class Counsel* shall promptly furnish each other with copies of any and all *Objections* to the *Settlement* that come into their possession.

15. **Termination of *Settlement*** – This Order shall become null and void, *ab initio*, and shall be without prejudice to the rights of the *Parties*, all of whom shall be restored to their respective positions as of November 21, 2012, the day immediately before the *Parties* reached agreement to settle the *Action*, if the *Settlement* is terminated in accordance with the terms of the *Settlement Agreement*.

16. **Use of Order** – This Order is not admissible as evidence for any purpose against *Defendants* in any pending or future litigation. This Order shall not be construed or used as an admission, concession, or declaration by or against *Defendants* of any finding of fiduciary status, fault, wrongdoing, breach, omission, mistake, or liability. This Order shall not be construed or used as an admission, concession, or declaration by or against *Named Plaintiffs* or the *Settlement Class* that their claims lack merit, or that the relief requested in the *Action* is inappropriate, improper, or unavailable. This Order shall not be construed or used as an admission, concession, declaration, or waiver by any *Party* of any arguments, defenses, or claims he, she, or it may have, including, but not limited to, any objections by *Defendants* to class certification, in the event that the *Settlement Agreement* is terminated. Moreover, the *Settlement Agreement* and any

8

proceedings taken pursuant to the *Settlement Agreement* are for settlement purposes only. Neither the fact of, nor any provision contained in, the *Settlement Agreement* or its exhibits, nor any actions taken thereunder, shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity of any claim or defense that has been, could have been, or in the future might be asserted.

17.    **Jurisdiction** – The *Court* hereby retains jurisdiction for purposes of implementing the *Settlement*, and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the *Settlement* as may from time to time be appropriate, and to resolve any and all disputes arising thereunder.

18.    **Continuance of *Final Approval Hearing*** – The *Court* reserves the right to continue the *Final Approval Hearing* without further written notice.

SO ORDERED this ____ day of _____, 2013.


_____
Hon. Milton I. Shadur
United States District Judge

9

# EXHIBIT A
# to the Preliminary Approval Order

## *Class Notice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CASE NO. 1:11-cv-01112

Judge Milton I. Shadur

## NOTICE OF CLASS ACTION SETTLEMENT
**YOUR LEGAL RIGHTS MIGHT BE AFFECTED IF YOU ARE A MEMBER OF THE FOLLOWING CLASS:**

All Persons (excluding the individually-named Defendants and their Immediate Family Members) who were participants in or beneficiaries of the Old Second Bancorp, Inc. 401(k) Savings Plan (the "Plan") at any time between April 25, 2008 and February 25, 2013, inclusive (the "Class Period"), and whose accounts included investments in Old Second Stock at any point during the Class Period.

**PLEASE READ THIS NOTICE CAREFULLY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER. YOU HAVE NOT BEEN SUED.**

Judge Milton I. Shadur of the United States District Court for the Northern District of Illinois (the "Court") has preliminarily approved a proposed settlement (the "Settlement") of a class action lawsuit brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Settlement will provide for a payment to the Plan and for allocation of the payment to members of the Settlement Class who had portions of their Plan accounts invested in the Old Second Bancorp, Inc. ("Old Second") Stock Fund ("Company Stock Fund"). The terms of the Settlement are summarized below.

The Court has scheduled a hearing (the "Final Approval Hearing") to consider Named Plaintiffs' motion for final approval of the Settlement and Class Counsel's Petition for attorneys' fees and costs and for Case Contribution Awards to the Named Plaintiffs. The Final Approval Hearing before U.S. District Judge Milton I. Shadur has been scheduled for _____, at _____ a.m., in the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, Room 2303, 219 South Dearborn Street, Chicago, IL 60604, or such other courtroom as the Court may designate.

Any objections to the Settlement or the petition for attorneys' fees, reimbursement of expenses for Case Contribution Awards to the Named Plaintiffs must be served in writing on Class Counsel and on Defendants' attorneys, as identified on Page 7 of this Notice of Class Action Settlement ("Notice"). The procedure for objecting is described below.

This Notice contains summary information with respect to the Settlement. The complete terms and conditions of the Settlement are set forth in a Settlement Agreement and Release ("Settlement Agreement"). Capitalized terms used in this Notice, but not defined in this Notice, have the meanings assigned to them in the Settlement Agreement. The Settlement Agreement, and additional information with respect to this lawsuit and the Settlement is available at an Internet site dedicated to the Settlement, www.OldSecondERISAsettlement.com.

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT BY FOLLOWING THE PROCEDURES DESCRIBED BELOW.

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| YOU ARE NOT REQUIRED TO FILE A CLAIM IF YOU ARE ENTITLED TO A PAYMENT UNDER THE SETTLEMENT | If the Settlement is approved by the Court and you are a member of the Settlement Class, you will not need to file a claim to receive a Settlement Amount if you are entitled to receive a payment under the Settlement Agreement. |

| | |
|---|---|
| AGREEMENT. | |
| **HOW SETTLEMENT PAYMENTS WILL BE DISTRIBUTED.** | If you are currently participating in the Plan and Settlement Class member, any share of the Net Settlement Fund to which you are entitled will be deposited into your Plan account. If you are no longer a Plan participant but are a Settlement Class member, any share of the Net Settlement Fund to which you are entitled will be deposited in a Plan account that will be established for you, if necessary, and you will be notified of such account. |
| **YOU MAY OBJECT TO THE SETTLEMENT BY** | If you wish to object to any part of the Settlement, you may (as discussed below) write to the Court and counsel about why you object to the Settlement. |
| **YOU MAY ATTEND THE FINAL APPROVAL HEARING TO BE HELD ON** _____. | If you submit a written objection to the Settlement to the Court and counsel before the Court-approved deadline, you may (but do not have to) attend the Final Approval Hearing about the Settlement and present your objections to the Court. You may attend the Final Approval Hearing even if you do not file a written objection, but you will only be allowed to speak at the Final Approval Hearing if you file a written objection in advance of the Final Approval Hearing AND you file a Notice of Intention To Appear, as described in the answer to Question 16 in this Notice. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.
- The Court still has to decide whether to approve the Settlement. Payments will be made only if the Court approves the Settlement and that approval is upheld in the event of any appeal.

Further information regarding this litigation and this Notice may be obtained by contacting Class Counsel:

Edward W. Ciolko
Peter A. Muhic
Mark K. Gyandoh
Julie Siebert Johnson
KESSLER TOPAZ
MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 610-667-7056

Class Counsel has established a toll-free phone number to receive your comments and questions: 855-756-6642. You may also send an email to OldSecondERISAsettlement@ktmc.com. You should contact Class Counsel with any questions regarding this Settlement, not the Court.

| WHAT THIS NOTICE CONTAINS |
|---|

SUMMARY OF SETTLEMENT ............................................................................................................ 2
BASIC INFORMATION .................................................................................................................... 3
1. WHY DID I GET THIS NOTICE PACKAGE? ..................................................................... 3
2. WHAT IS THE ACTION ABOUT? ................................................................................... 3
3. WHY IS THIS CASE A CLASS ACTION? ......................................................................... 4
4. WHY IS THERE A SETTLEMENT? ................................................................................. 5
5. HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT? ..................................... 5
THE SETTLEMENT BENEFITS—WHAT YOU GET .......................................................................... 5
6. WHAT DOES THE SETTLEMENT PROVIDE? .................................................................... 5
7. HOW MUCH WILL MY PAYMENT BE? ......................................................................... 5
8. HOW MAY I RECEIVE A PAYMENT? ............................................................................ 6
9. WHEN WOULD I GET MY PAYMENT? ........................................................................... 6
10. CAN I GET OUT OF THE SETTLEMENT? ......................................................................... 6
THE LAWYERS REPRESENTING YOU .......................................................................................... 6
11. DO I HAVE A LAWYER IN THE CASE? ........................................................................... 6
12. HOW WILL THE LAWYERS BE PAID? ........................................................................... 6
13. HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT? ................................... 7
THE FINAL APPROVAL HEARING ............................................................................................... 7
14. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ... 7
15. DO I HAVE TO COME TO THE HEARING? ....................................................................... 7
16. MAY I SPEAK AT THE HEARING? ................................................................................. 7
IF YOU DO NOTHING ................................................................................................................. 8
17. WHAT HAPPENS IF I DO NOTHING AT ALL? .................................................................. 8
GETTING MORE INFORMATION ................................................................................................. 8
18. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? .................................................. 8

**SUMMARY OF SETTLEMENT**

This litigation (the "Action") is a class action in which Named Plaintiffs allege that the Defendants breached fiduciary duties owed to the participants in and beneficiaries of the Plan under ERISA arising from the Plan's investments in the Company Stock Fund during the Class Period. Copies of the latest version of the complaint, the Second Amended Complaint, and other documents filed in the Action are available at www.OldSecondERISAsettlement.com or from Class Counsel.

A Settlement Fund consisting of $7,500,000 (seven million five hundred thousand U.S. dollars) in cash (the "Settlement Amount") is being established in the Action. The Settlement Amount will be deposited into an Escrow Account, and the Settlement Amount, together with any interest earned, will constitute the Settlement Fund. Payment of any taxes, expenses, approved attorneys' fees and costs and payment of Case Contribution Awards to the Named Plaintiffs, and costs of administering the Settlement will be paid out of the Settlement Fund. After the payment of such fees, costs, and awards, the amount that remains will constitute the Net Settlement Fund. The Net Settlement Fund will be allocated to Settlement Class members according to a Plan of Allocation to be approved by the Court.

## STATEMENT OF POTENTIAL OUTCOME OF THE ACTION

Defendants strongly dispute the claims asserted in the Action. Further, Named Plaintiffs would face an uncertain outcome if the Action were to continue. Continued litigation could result in a judgment greater or less than $7.5 million, or in no recovery at all.

The Named Plaintiffs and the Defendants disagree on liability and do not agree on the amount that would be recoverable even if the Named Plaintiffs were to prevail at trial. The Defendants deny all claims and contentions by the Named Plaintiffs. The Defendants deny that they are liable to the Settlement Class and that the Settlement Class or the Plan has suffered any damages for which the Defendants could be held legally responsible. Having considered the uncertainty and risks inherent in any litigation, particularly in a complex case such as this, the Named Plaintiffs and Defendants have concluded that it is desirable that the Action be fully and finally settled on the terms and conditions set forth in the Settlement Agreement.

## STATEMENT OF ATTORNEYS' FEES AND COSTS SOUGHT IN THE ACTION

Class Counsel will apply to the Court for an order awarding attorneys' fees not in excess of thirty-three and one third percent (33 1/3%) of the Settlement Amount (a maximum amount of $2,500,000), plus reimbursement of expenses. Any amount awarded will be paid from the Settlement Fund. Defendants have no responsibility for payment of such fees and expenses.

## WHAT WILL THE NAMED PLAINTIFFS GET?

The Named Plaintiffs will share in the allocation of the Net Settlement Fund on the same basis as all other members of the Settlement Class. In addition, the Named Plaintiffs will ask the Court to award $5,000 to Named Plaintiff Mary Dalton and $10,000 to Named Plaintiff Emil Adolphson as Case Contribution Awards for their participation in the Action and representation of the Settlement Class, respectively. Any such awards will be paid solely from the Settlement Fund.

## BASIC INFORMATION

### 1.   WHY DID I GET THIS NOTICE PACKAGE?

You or someone in your family may have been a participant in or a beneficiary of the Plan during **the period from April 25, 2008 to February 25, 2013**, during which time the Plan account included an investment in the Company Stock Fund.

The Court directed that this Notice be sent to you because if you fall within the definition of the Settlement Class, you have a right to know about the Settlement and the options available to you regarding the Settlement before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the Net Settlement Fund will be paid to the Plan and then allocated among Settlement Class members according to a Court-approved Plan of Allocation. This Notice describes the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of this case is the United States District Court for the Northern District of Illinois, Eastern Division. The persons who sued on behalf of themselves and the Plan are called the "Named Plaintiffs," and the people they sued are called "Defendants." The Named Plaintiffs are Mary Dalton and Emil Adolphson. The Defendants are J. Douglas Cheatham, James Eccher, William B. Skoglund, Robert DiCosola, Jeff West, Stewart Beach (collectively, the "Individual Defendants"), Old Second Bancorp, Inc., Old Second National Bank, and the Employee Benefits Committee of Old Second Bancorp, Inc. (the "Company"). The Action is known as *Dalton, et al. v. Old Second Bancorp, Inc. et al.*, No. 11-CV-1112 (N.D. Ill.).

### 2.   WHAT IS THE ACTION ABOUT?

The Action claims that under ERISA, the Defendants owed fiduciary duties of loyalty, care, and prudence to the Plan and that they violated those duties in connection with the Plan's investments in Old Second Stock.

During the Class Period, participants in the Plan were able to allocate their account balances among various investment funds, including the Company Stock Fund, a fund primarily invested in Old Second Stock. Many Plan participants chose to have contributions to the Plan invested in the Company Stock Fund.

Named Plaintiffs allege that Defendants violated ERISA by, among other things, permitting the Plan to hold shares of Old Second Stock during the Class Period when they knew or should have known it was imprudent to do so. Named Plaintiffs allege that Defendants knew or should have known that such investment was imprudent because, as explained in more detail in the Second Amended Complaint, and among other things:

- the Company was overexposed to substantial losses from residential construction and development loans;
- the Company was facing an increasing and excessive amount of nonperforming loans;
- the Company would be required to continuously raise the amount of its loan loss reserves due to nonperforming loans;
- the Company was undercapitalized;
- two months prior to the beginning of the Class Period, the Company substantially increased the amount of nonperforming loans in its portfolio, with its acquisition of HeritageBanc, Inc. ("Heritage"), while the Plan simultaneously doubled its holdings of Company Stock; and

- as a consequence of the above, the Plan's significant investment of employees' retirement savings in Company Stock would inevitably result in significant losses to the Plan and, consequently, to the Plan's participants.

**THE DEFENSES IN THE ACTION**

The Defendants deny all of the claims made in this Action including that allowing the Plan to hold Old Second Stock was imprudent or that they have liability to the Plan or its participants or beneficiaries. If the Action were to continue, the Defendants would raise numerous defenses to liability, including:

- Defendants did not engage in any of the allegedly improper conduct charged in the Complaint;
- Defendants were not fiduciaries of the Plan, or if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the Action;
- Old Second Stock was at all times a prudent investment for the Plan and its participants;
- To the extent that they were fiduciaries as to the matters at issue in the Action, Defendants fully and prudently discharged all of their fiduciary duties under ERISA;
- Even if a court were to determine that Defendants failed to discharge any duty under ERISA, any such breach of fiduciary duty did not cause the Plan or its participants to suffer any loss.

**THE ACTION HAS BEEN AGGRESSIVELY LITIGATED**

Class Counsel have extensively investigated the allegations in the Action. Class Counsel obtained and reviewed tens of thousands of pages of documents, including Plan-governing documents and materials, communications with Plan participants, Securities and Exchange Commission filings, press releases, public statements, news articles and other publications, and other documents regarding the matters that the Named Plaintiffs allege made Old Second Stock an imprudent Plan investment. Additionally, Class Counsel took the depositions of numerous individuals Class Counsel believed to have knowledge of information pertinent to the Action.

This Action was litigated by the Named Plaintiffs and Class Counsel for almost two years before the Parties agreed on settlement terms. The initial complaint in this matter was filed against Defendants on February 17, 2011, by Named Plaintiff Mary Dalton. On June 21, 2011, Named Plaintiffs Mary Dalton and Emil Adolphson filed a First Amended Complaint. On August 16, 2011, Named Plaintiffs filed their motion for class certification. Defendants filed a brief in opposition to Named Plaintiffs' motion. On September 20, 2011, Judge Lindberg issued an opinion certifying a class, with Named Plaintiff Emil Adolphson as sole class representative, consisting of: All persons, except Defendants and their Immediate Family Members, who were participants in or beneficiaries of the Plan, at any time between April 25, 2008, and the present (the Class Period) and whose Plan accounts included investments in Old Second Stock. The portion of the motion seeking to have Named Plaintiff Mary Dalton named a class representative was denied.

On June 15, 2012, a Second Amended Complaint was filed. Defendants moved to dismiss ("Motion to Dismiss") the Second Amended Complaint on June 29, 2012. Named Plaintiffs filed a brief in opposition to Defendants' Motion to Dismiss. On November 11, 2012, Judge Lindberg issued an opinion denying, in full, Defendants' Motion to Dismiss. Following the Court's Order, Defendants filed their answer to the Second Amended Complaint on November 16, 2012.

**SETTLEMENT DISCUSSIONS**

The proposed Settlement is the product of hard-fought, lengthy negotiations between Class Counsel and the Defendants' counsel. On May 3, 2012 and October 30, 2012, the Parties mediated before an independent mediator. On November 21, 2012, the Parties participated in a mediation session with a second independent mediator. Following arm's-length negotiations and these mediation sessions, Named Plaintiffs and Defendants, through their respective attorneys, reached an agreement to settle the Action subject to the execution of definitive settlement documentation. Throughout the negotiations, Class Counsel was advised by various consultants and experts, including individuals with expertise in ERISA fiduciary liability issues and damages in cases involving ERISA fiduciary liability.

| **3. WHY IS THIS CASE A CLASS ACTION?** |
| --- |

In a class action, one or more plaintiffs, called "class representatives" or "named plaintiffs," sue on behalf of people who have similar claims. All of these people who have similar claims collectively make up the "class" and are referred to individually as "class members." One case resolves the issues for all class members together. Because the wrongful conduct alleged in this Action is claimed to have affected a large group of people—participants in the Plan during the Class Period—in a similar way, the Named Plaintiffs filed this case as a class action.

| **4. WHY IS THERE A SETTLEMENT?** |
| --- |

As in any litigation, all parties face an uncertain outcome. On the one hand, continuation of the case against the Defendants could result in a judgment greater than this Settlement. On the other hand, continuing the case could result in no recovery at all or in a recovery that is less than the amount of the Settlement. Based on these factors, the Named Plaintiffs, Class Counsel and the Independent Fiduciary have concluded that the proposed Settlement is in the best interests of all Settlement Class Members.

| **5. HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT?** |
| --- |

You are a member of the Settlement Class if you fall within the definition of the Settlement Class preliminarily approved by Judge Milton I. Shadur:

All Persons (excluding the Defendants and their Immediate Family Members) who were participants in or beneficiaries of the Plan at any time between April 25, 2008 and February 25, 2013, inclusive (the "Class Period"), and whose accounts included investments in Old Second Stock in their accounts at any point during the Class Period.

If you are a member of the Settlement Class, the amount of money you will receive, if any, will depend upon the Plan of Allocation, described below.

**THE SETTLEMENT BENEFITS—WHAT YOU GET**

## 6. WHAT DOES THE SETTLEMENT PROVIDE?

A Settlement Fund consisting of $7,500,000 is being established in the Action. The amount of money that will be allocated among members of the Settlement Class, after the payment of any taxes and Court-approved costs, fees, and expenses, including attorneys' fees and expenses of Class Counsel, any Court-approved Case Contribution Awards to be paid to the Named Plaintiffs, and payment of expenses incurred in calculating the Settlement payments and administering the Settlement is called the Net Settlement Fund. The amount of the Net Settlement Fund will not be known until these amounts are quantified and deducted. The Net Settlement Fund will be allocated to members of the Settlement Class according to a Plan of Allocation to be approved by the Court. The Plan of Allocation describes how Settlement payments will be distributed to Settlement Class Members who receive a payment. Not every member of the Settlement Class will receive a Settlement payment.

If the Settlement is approved by the Court, all Settlement Class Members and anyone claiming through them shall be deemed to fully release Plaintiffs' Released Persons from Plaintiffs' Released Claims. The Plaintiffs' Released Persons include (a) Old Second and its parents, Affiliates, subsidiaries, predecessors, Successors, assigns, and past or present directors, officers, controlling persons, attorneys, counselors, insurers, reinsurers, financial or investment advisors, consultants, accountants, representatives or agents, and (b) each of the other Defendants and their heirs, executors, trustees, personal representatives, estates or administrators, attorneys, counselors, insurers, reinsurers, financial or investment advisors, consultants, accountants, advisors, representatives or agents. The Released Claims are defined in the Settlement Agreement and include all claims that were or could have been asserted in the Action. This means that Settlement Class Members will not have the right to sue Plaintiffs' Released Persons for anything related to the investment of Plan assets in Old Second Stock or related matters during the Class Period.

The above description of the proposed Settlement is only a summary. The complete terms, including the definitions of Plaintiffs' Released Persons and Plaintiffs' Released Claims, are set forth in the Settlement Agreement (including its exhibits), which may be obtained at a dedicated Settlement Internet site, www.OldSecondERISALitigation.com or by contacting Class Counsel listed on Page 2 above.

## 7. HOW MUCH WILL MY PAYMENT BE?

Your share (if any) of the Net Settlement Fund will depend on your alleged loss, compared to other Settlement Class Members' alleged losses, related to Plan investments in Old Second Stock during the period from April 25, 2008 and February 25, 2013. Each Settlement Class Member's share will be calculated by a third-party vendor ("Settlement Administrator") designated by Class Counsel according to a Court-approved Plan of Allocation. Because the Settlement Amount and Net Settlement Fund are less than the total losses alleged by the Settlement Class, each Settlement Class Member's portion of the Settlement Amount will be less than his or her alleged loss on their investment in the Company Stock Fund. You are not required to calculate the amount you may be entitled to receive under the Settlement. In general, your proportionate share of the Settlement will be calculated as follows: For each Settlement Class Member, the Settlement Administrator shall determine his or her approximate alleged net loss ("Net Loss"). Net Loss = A + B − C − D, where for each Settlement Class Member's Plan account:

- For each Settlement Class member, his or her Net Loss will be equal to (A) the dollar value, if any, of his or her account balance invested in the Old Second Stock Fund on the first day of the Class Period (April 25, 2008); plus (B) the dollar value, if any, of all contributions or purchases of interests in the Old Second Stock Fund for his or her account during the Class Period, as of the time of the contribution(s) or purchase(s); minus (C) the dollar value, if any, of all dispositions of interests in Old Second Stock in his or her account during the Class Period, as of the time of the sale(s); minus (D) the dollar value, if any, of the balance in Old Second Stock Fund remaining in his or her account on the close of the market on the last day of the Class Period (February 25, 2013), or if a Settlement Class Member terminated his or her participation in the Plan before the end of the Class Period, the last day the Settlement Class Member was invested in the Company Stock Fund.
- All Net Losses will be aggregated to yield the total loss over the Class Period and each Class Member's percentage of that total loss will be calculated.
- Applying that percentage to the Net Settlement Fund, the Settlement Administrator will calculate each Class Member's share of those proceeds on a preliminary basis.
- All participants whose preliminary share is less than or equal to $10.00 (ten dollars) will be deemed to have a final share equal to $10.00. The Settlement Administrator will then recalculate the Net Loss percentage of those Class Members whose preliminary share was greater than $10.00, so as to arrive at each such Class Member's final share.

**You will not be required to produce records that show your Plan activity**. If you are entitled to a share of the Settlement Fund, your share of the Settlement will be determined based on the Plan's records for your account. If you have questions regarding the allocation of the Settlement proceeds, please contact Class Counsel listed on Page 2 above.

## 8. HOW MAY I RECEIVE A PAYMENT?

You do not need to file a claim. If you are a Class Member entitled to receive a share of the Settlement proceeds and you are a current Plan participant, your share will be deposited in your Plan account. If you are a Class Member entitled to receive a share of the Settlement proceeds but no longer a Plan participant, an account will be established for you in the Plan, and you will be notified of the account and how to withdraw the proceeds. If you are a former Plan participant and have not provided the Plan with your current address, please contact Class Counsel listed on Page 2 above.

## 9. WHEN WOULD I GET MY PAYMENT?

The Settlement cannot be completed unless and until several events occur. These events include final approval of the Settlement by the Court, approval of the Settlement by an independent fiduciary to the Plan, transfer of the Net Settlement Fund to the Plan, and calculation of the

amount of the Settlement owed to each Settlement Class Member. If objections are made to the Settlement or appeals are taken by objectors who oppose the approval of the Settlement, this process may take a long time to complete, possibly several years. The Settlement Fund, however, will be invested in secure, interest-bearing securities, and the interest income that is attributable to the Net Settlement Fund will be included in the amount paid to the Plan and allocated to Settlement Class Members.

**There will be no payments if the Settlement Agreement is terminated.**

The Settlement Agreement may be terminated for several reasons, including if (1) the Court does not approve, or materially modifies the Settlement Agreement, or (2) the Court approves the Settlement Agreement but the approval is reversed or materially modified by an appellate court. If the Settlement Agreement is terminated, the Action will proceed as if the Settlement Agreement had not been entered into. The Settlement is not conditioned upon the Court's approval of attorneys' fees and the reimbursement of expenses sought by Class Counsel and any appeal solely related thereto.

| **10. CAN I GET OUT OF THE SETTLEMENT?** |
|---|

**You do not have the right to exclude yourself from the Settlement.** The Settlement Agreement provides for certification of the Settlement Class as a non-opt-out class action under Federal Rule of Civil Procedure 23(b)(1), and the Court has preliminarily determined that the requirements of that rule have been satisfied. Thus, it is not possible for any Settlement Class Members to exclude themselves from the Settlement. As a Settlement Class Member, you will be bound by any judgments or orders that are entered in the Action for all claims that were or could have been asserted in the Action or are otherwise released under the Settlement.

Although you cannot opt out of the Settlement, you can object to the Settlement and ask the Court not to approve it. For more information on how to object to the Settlement, see the answer to Question 13 below.

### THE LAWYERS REPRESENTING YOU

| **11. DO I HAVE A LAWYER IN THE CASE?** |
|---|

The Court has preliminarily appointed the law firm of Kessler Topaz Meltzer & Check, LLP as Class Counsel along with the firm of The Collins Law Firm as Liaison Class Counsel for the Named Plaintiffs in the Action. You will not be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **12. HOW WILL THE LAWYERS BE PAID?** |
|---|

Class Counsel will file a motion for the award of attorneys' fees of not more than one third (33 1/3%) of the Settlement Amount, plus reimbursement of expenses incurred in connection with the prosecution of the Action. This motion will be considered at the Final Approval Hearing described below. Defendants do not have any position on that matter before the Court.

**OBJECTING TO THE ATTORNEYS' FEES**

By following the procedures described in the answer to Question 13, you can tell the Court that you do not agree with the fees and expenses the attorneys intend to seek and ask the Court to deny their motion or limit the award.

| **13. HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT?** |
|---|

If you are a Settlement Class Member, you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. To object, you must send a letter or other writing saying that you object to the Settlement in *Dalton, et al. v. Old Second Bancorp, Inc., et al.*, Case No. 11-cv-1112. Be sure to include your name, address, telephone number, signature, and a full explanation of all the reasons why you object to the Settlement. **Your written objection must be sent to the following counsel and must be postmarked by no later than _____, 2013.**

| **CLASS COUNSEL** | **DEFENDANTS' COUNSEL** |
|---|---|
| Edward W. Ciolko | W. Scott Porterfield |
| Peter A. Muhic | Roger H. Stetson |
| Mark K. Gyandoh | Alison Leff |
| Julie Siebert-Johnson | BARACK FERRAZZANO KIRSCHBAUM |
| KESSLER TOPAZ MELTZER & CHECK, LLP | & NAGELBERG, LLP |
| 280 King of Prussia Road | 200 West Madison Street, Suite 3900 |
| Radnor, PA 19087 | Chicago, IL 60606 |
| Telephone: 610-667-7706 | Telephone: 312-984-3100 |
| Facsimile: 610-667-7056 | Facsimile: 312-984-3150 |

**You must also file your objection with the Clerk of the Court of the United States District Court for the Northern District of Illinois, Eastern Division no later than _____.** The address is:

Clerk of the Court
United States District Court for the Northern District of Illinois, Eastern Division
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

The objection must refer prominently to *Dalton, et al. v. Old Second Bancorp, Inc. et al.*, Case No. 11-cv-1112.

### THE FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing to decide whether to approve the Settlement as fair, reasonable, and adequate. You may attend the Final Approval Hearing, and you may ask to speak, but you do not have to attend.

| **14. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?** |
|---|

The Court will hold the Final Approval Hearing at _____ a.m. on _____, at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Room 2303, Chicago, IL 60604, or such other courtroom as the Court may designate. **The Court may adjourn the Final Approval Hearing without further notice to the Settlement Class, so if you wish to attend, you should confirm the date and time of the Final Approval Hearing with Class Counsel before doing so.** At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will also rule on the motions for attorneys' fees and reimbursement of expenses and for Case Contribution Awards for the Named Plaintiffs. The Parties do not know how long these decisions will take or whether appeals will be taken.

### 15. DO I HAVE TO COME TO THE HEARING?

No, but you are welcome to come at your own expense. If you file an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, it will be before the Court when the Court considers whether to approve the Settlement. You also may pay your own lawyer to attend the Final Approval Hearing, but such attendance is also not necessary.

### 16. MAY I SPEAK AT THE HEARING?

If you submit a written objection to the Settlement to the Court and counsel before the Court-approved deadline, you may (but do not have to) attend the Final Approval Hearing and present your objections to the Court. You may attend the Final Approval Hearing even if you do not file a written objection, but you will only be allowed to speak at the Final Approval Hearing if you file a written objection in advance of the Final Approval Hearing AND you file a Notice of Intention To Appear, as described in this paragraph. To do so, you must file with the Court a letter or other paper called a "Notice of Intention To Appear at Final Approval Hearing in *Dalton, et al. v. Old Second Bancorp, Inc. et al.*, Case No. 11-cv-1112." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention To Appear must be sent to the attorneys listed in the answer to Question 13 above, postmarked no later than _____, 2013, and must be filed with the Clerk of the Court at the address listed in the answer to Question 13.

### IF YOU DO NOTHING

### 17. WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing and you are a Settlement Class Member, you will participate in the Settlement of the Action as described above in this Notice.

### GETTING MORE INFORMATION

### 18. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

Yes. This Notice summarizes the proposed Settlement. The complete terms are set forth in the Settlement Agreement. You may obtain a copy of the Settlement Agreement by making a written request to Class Counsel listed on Page 2 above. Copies may also be obtained at a dedicated Settlement website, OldSecondERISAsettlement.com, by calling the toll-free number, 855-756-6642, or by sending an email to OldSecondERISAsettlement@ktmc.com. You are encouraged to read the complete Settlement Agreement.

DATED: _____, 2013

**DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, THE COMPANY, OR DEFENDANTS REGARDING THIS NOTICE. THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

# EXHIBIT B
# to the Preliminary Approval Order

*Publication Notice*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10, )<br><br>Defendants. ) | **CASE NO. 1:11-cv-01112**<br><br>**Judge Milton I. Shadur** |

**NOTICE BY PUBLICATION OF PROPOSED**
**CLASS ACTION SETTLEMENT AND SETTLEMENT HEARING**

**TO:** **ALL PERSONS (EXCLUDING DEFENDANTS AND THEIR IMMEDIATE FAMILY MEMBERS) WHO WERE PARTICIPANTS IN OR BENEFICIARIES (INCLUDING ALTERNATE PAYEES) OF THE OLD SECOND BANCORP, INC. EMPLOYEES' 401K SAVINGS PLAN AND TRUST ("PLAN") AT ANY TIME BETWEEN APRIL 25, 2008 AND FEBRUARY 25, 2013 (THE "CLASS PERIOD") AND WHOSE PLAN ACCOUNTS INCLUDED INVESTMENTS IN OLD SECOND STOCK DURING THE CLASS PERIOD.**

**PLEASE READ THIS NOTICE CAREFULLY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION. YOU ARE NOT BEING SUED.**

A Settlement has been preliminarily approved by a federal court in a class action lawsuit against Old Second Bancorp, Inc. ("Old Second" or the "Company"), and certain individuals, including former officers and directors of Old Second, alleging breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The lawsuit is referred to herein as the "Action." This Settlement will provide for a Settlement Payment of $7,500,000 (seven million five hundred thousand U.S. dollars) to the Plan, minus Court-approved attorneys' fees and expenses, costs of administering the Settlement, and Case Contribution Awards to the Named Plaintiffs. The Settlement will be allocated to Plan participants who were invested in the Old Second Stock Fund ("Company Stock Fund") during the Class Period pursuant to the Court-approved Plan of Allocation. The United States District Court for the Northern District of Illinois authorized this Notice. A final approval hearing (the "Final Approval Hearing") will be held on _____, 2013, at _____ __.m., before the Honorable Milton I. Shadur, United States District Court Judge to determine, among other things (as set forth in the Parties' proposed Final Approval Order): (1) whether the proposed $7.5 million Settlement should be granted final approval; (2) whether the proposed Plan of Allocation is fair, reasonable, and adequate; (3) whether Class Counsel's request for an award of attorneys' fees, expenses and for a Case Contribution Award to the Named Plaintiffs relating to their representation of the Settlement Class should be approved; and (4) whether the Action and the claims of the members of the Settlement Class against Defendants should be dismissed on the merits with a direction to the Clerk of the Court to enter final judgment, finding that there is no just reason for delay of enforcement or appeal of the Order as set forth in the Settlement Agreement and Release (the "Settlement Agreement") filed with the Court. The Final Approval Hearing will be held at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, Room 2303, 219 South Dearborn Street, Chicago, IL 60604, or such other courtroom as the Court may designate.

If you are a member of the Settlement Class as defined above, your rights may be affected by the proposed Settlement and release of Parties and claims, as set forth in the Settlement Agreement. The Defendants and their Immediate Family Members are excluded from the Settlement.

**You do not have the right to exclude yourself from the Settlement in this case, but you do have the right to object by writing to the Court.** Any objection to the Settlement, must be filed with the clerk of the Court and served upon each of the following law firms **no later than _____, 2013**, at the addresses listed below:

QUESTIONS? VISIT WWW.OLDSECONDERISASETTLEMENT.COM OR CALL TOLL-FREE 855-756-6642

| CLERK | CLASS COUNSEL | DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of the Court | Edward W. Ciolko | W. Scott Porterfield |
| United States District Court for the Northern District | Peter A. Muhic | Roger H. Stetson |
| of Illinois, Eastern Division | Mark K. Gyandoh | Alison Leff |
| Everett McKinley Dirksen United States Courthouse | Julie Siebert-Johnson | BARACK FERRAZZANO |
| 219 South Dearborn Street | KESSLER TOPAZ | KIRSCHBAUM & NAGELBERG, LLP |
| Chicago, IL 60604 | MELTZER & CHECK, LLP | 200 West Madison Street, Suite 3900 |
|  | 280 King of Prussia Road | Chicago, IL 60606 |
|  | Radnor, PA 19087 |  |

If the Settlement is approved by the Court and you are a member of the Settlement Class, you will receive any Settlement payment you are entitled to receive under the Settlement Agreement without having to file a claim.

If you are a member of the Settlement Class and have not yet received the Class Notice, or if you want more information regarding anything in this Publication Notice, you may obtain such information by visiting www.OldSecondERISAsettlement.com, calling toll-free 855-756-6642, by writing to Class Counsel listed above or sending an email to OldSecondERISAsettlement@ktmc.com.

**DO NOT CONTACT THE COURT, THE CLERK'S OFFICE, THE COMPANY, OR DEFENDANTS REGARDING THIS NOTICE. THEY WILL NOT BE ABLE TO ANSWER YOUR QUESTIONS.**

DATED: _____, 2013          By Order of the United States District Court, Northern District of Illinois

# EXHIBIT C
## to the Preliminary Approval Order

## *CAFA Notice*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY DALTON and<br>EMIL ADOLPHSON, individually and<br>on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OLD SECOND BANCORP, INC.,<br>OLD SECOND NATIONAL BANK,<br>EMPLOYEE BENEFITS COMMITTEE<br>OF OLD SECOND BANCORP, INC.,<br>J. DOUGLAS CHEATHAM, JAMES<br>ECCHER, WILLIAM B. SKOGLUND,<br>ROBERT DICOSOLA, JEFF WEST,<br>STEWART BEACH and DOES 1-10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:11-cv-01112<br><br>Honorable Judge Milton I. Shadur |

**Class Action Fairness Act Notification (28 U.S.C. § 1715)**
**_In re Old Second Bancorp, Inc. ERISA Litigation_, No. 11-cv-01112 (N.D. Ill.)**

Pursuant to the Class Action Fairness Act of 2005 ("*CAFA*"), 28 U.S.C. § 1715, defendants Old Second Bancorp, Inc., Old Second National Bank, Employee Benefits Committee of Old Second Bancorp, Inc., J. Douglas Cheatham, James Eccher, William B. Skoglund, Robert DiCosola, Jeff West, and Stewart Beach (the "Defendants"), provide the following notification of the proposed settlement in *Dalton v. Old Second Bancorp, Inc., ERISA Litigation*, No. 11-cv-01112 (N.D. Ill.) (the "*Action*").[1]

On February 17, 2011, Mary Dalton filed the *Action* in the U.S. District Court for the Northern District of Illinois (the "*Court*") on behalf of herself, and a putative class of participants who invested in the Old Second Bancorp, Inc. ("*Old Second*") Common Stock Fund (the "*Old Second Stock Fund*") under the Old Second Bancorp, Inc. Employees' 401(k) Savings Plan and Trust (the "*Plan*"). On June 21, 2011, *Named Plaintiffs* filed a First Amended Complaint. The First Amended Complaint alleged that *Defendants* breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("*ERISA*"), 29 U.S.C. § 1101 *et seq.*, by (1) allowing the *Plan* to hold the common stock of *Old Second* when, according to *Named Plaintiffs*, *Old Second Stock* was an unsuitable and imprudent investment option, (2) misrepresenting and failing to disclose information concerning *Old Second's* financial condition, (3) failing to avoid

---

[1] All capitalized and italicized terms used herein shall have the meaning ascribed to them in the *Settlement Agreement*.

conflicts of interest with members of the putative class, and (4) failing to adequately monitor other Plan fiduciaries and provide them with accurate information (collectively, the "ERISA Claims").

On July 26, 2011, the *Court* granted *Defendants'* motion to strike *Named Plaintiffs'* jury demand. On August 16, 2011, *Plaintiffs* filed a motion for class certification.

On September 20, 2011, the *Court* granted *Named Plaintiffs'* motion for class certification in part. The *Court* certified a class with Plaintiff Emil Adolphson as sole class representative, consisting of: All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between April 25, 2008, and the present and whose Plan accounts included investments in Old Second common stock. The portion of the motion seeking to have Plaintiff Mary Dalton named a class representative was denied.

On June 15, 2012, *Named Plaintiffs* filed their *Second Amended Complaint* adding a new count under *ERISA*.

The *Parties* participated in three separate mediation sessions on May 3, 2012, October 30, 2012 and November 21, 2012. At the final mediation on November 21, 2012, the *Parties* agreed to settle the *Action*.

On February 25, 2013, the parties executed a Settlement Agreement and Release (the "*Settlement Agreement*"). The *Settlement Agreement* amends the definition of the class to mean: all persons (excluding *Defendants* and their *Immediate Family Members*) who were participants in or beneficiaries (including alternate payees) of the *Plan* at any time between April 25, 2008 and February 25, 2013 (the *Agreement Execution Date*) and whose individual *Plan* accounts included investments in *Old Second Stock* during the *Class Period*.

On February 25, 2013, an unopposed motion for preliminary approval of the Settlement Agreement was filed with the *Court*. The *Court* granted preliminary approval of the Settlement Agreement on _____. The deadline for filing any *Objections* is _____. The *Final Approval Hearing* has been set for _____ at _____.

The following information is submitted on the enclosed CD:

1. Copies of: (1) the original Complaint, (2) First Amended Complaint, and (3) Second Amended Complaint (*see* 28 U.S.C. § 1715(b)(1)).

2. The *Court's* Order dated _____ preliminarily approving the Settlement Agreement and setting the date of the final approval hearing (*see* 28 U.S.C. § 1715(b)(2)).

3. The *Class Notice* and *Publication Notice*, as preliminarily approved by the Court on _____. There is no right to exclusion from the class (*see* 28 U.S.C. § 1715(b)(3)).

4. The *Settlement Agreement*, together with the attached exhibits (*see* 28 U.S.C. § 1715(b)(4),(5)).

2

5. The *Parties'* proposed Final Judgment and Order approving the Settlement Agreement (*see* 28 U.S.C. § 1715(b)(6)).

6. Copies of the following *Court* Orders:

    a. The July 26, 2011 Order striking *Named Plaintiffs'* jury demand.

Section 1715 of *CAFA* provides two time deadlines for service of the *CAFA Notice*, and *Defendants* complied with both of these deadlines. First, § 1715(b) provides that *Defendants* must serve this notice "not later than 10 days after a proposed settlement of a class action is filed in court." *Defendants* complied with this deadline because the *Settlement Agreement* was filed in *Court* on February 25, 2013, and this notice is being served by Federal Express on _____. Second, § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after" service of the notice on the appropriate federal official. This notice complies with the second deadline because the final approval hearing has been set for _____ _____, more than 90 days after service of the notice.

The foregoing information is provided based on the information currently available to *Defendants* and is based on the status of the proceedings at the time of the submission of this notification. For additional information, please contact W. Scott Porterfield, Barack Ferrazzano Kirschbaum & Nagelberg, LLP, 200 West Madison Street, Suite 3900, Chicago, Illinois 60606 (312) 984-3100.


Dated: February ___, 2013           Respectfully submitted,

                                    OLD SECOND BANCORP, INC.,
                                    OLD SECOND NATIONAL BANK,
                                    RETIREMENT COMMITTEE OF OLD SECOND BANCORP, INC., RETIREMENT BENEFITS TRUSTEE COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, AND JEFF WEST

                                    By: _____
                                        W. Scott Porterfield
                                      One of Their Attorneys

W. Scott Porterfield
Roger H. Stetson
Alison Leff
BARACK FERRAZZANO
 KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois  60606
Telephone:  (312) 984-3100
Facsimile:   (312) 984-3150
E-mail:  scott.porterfield@bfkn.com
E-mail:  roger.stetson@bfkn.com
E-mail: alison.leff@bfkn.com

## CERTIFICATE OF SERVICE

I, W. Scott Porterfield, an attorney, hereby state that I caused a copy of the foregoing **Class Action Fairness Act Notification (28 U.S.C. §1715)** *In re Old Second Bancorp, Inc. ERISA Litigation*, **No. 11-cv-01112 (N.D. Ill.)** to be served via e-mail and first class mail, proper postage pre-paid, on February __, 2013, on the following:

> Peter Muhic
> Mark K. Gyandoh
> Julie Siebert-Johnson
> KESSLER TOPAZ MELTZER
>    & CHECK, LLP
> 280 King of Prussia Road
> Radnor, Pennsylvania 19087

                                                _____
                                                W. Scott Porterfield

# EXHIBIT D
# to the Preliminary Approval Order

## *Independent Fiduciary Resume*

Evercore | Trust
Company

## EVERCORE TRUST COMPANY OVERVIEW

Evercore Trust Company, N.A., a national trust bank regulated by the Office of the Controller of the Currency, is the nation's pre-eminent ERISA independent fiduciary. Originally founded as a part of U.S. Trust Company N.A., since 2009 we have been a subsidiary of Evercore Partners, Inc. (NYSE: EVR). Our team has provided independent fiduciary services to employee benefit plans at America's leading corporations and institutions since 1987. Our team has served as an independent fiduciary to employee benefit plans sponsored by approximately 75% of the top 20 corporate plan sponsors in the P&I 1,000, and 25% of the Fortune 500 companies. Our parent company Evercore Partners is a leading investment banking boutique providing advisory services to prominent multinational corporations and financial sponsors on significant mergers, acquisitions, divestitures, restructurings, and other strategic corporate transactions.

Evercore Trust Company provides specialized investment management, independent fiduciary, and trustee services to employee benefit plans. With more than $35 billion in assets under administration as of January 31, 2013, Evercore Trust Company has ongoing discretionary responsibility for qualified and non-qualified employee benefit plans, many of which hold large blocks of company stock, including:

- defined benefit pension plans;
- defined contribution plans, such as 401(k) plans and profit sharing plans;
- voluntary employees' beneficiary associations (VEBAs);
- employee stock ownership plans (ESOPs); and
- rabbi trusts.

We have a reputation for providing superior service to our clients, and ranks among the preeminent investment managers and fiduciary service providers in the United States. Plan sponsors routinely retain Evercore Trust Company to protect the interests of plan participants and beneficiaries where there may be an inherent conflict of interest between the plan and management. In these and other circumstances we provide significant value-added fiduciary services in a variety of situations while helping ensure compliance with the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). With offices in New York, California and Washington, D.C., we are a nationwide resource for employee benefit plans.

Experience with ERISA Prohibited Transactions

Evercore Trust Company has extensive experience with transactions implicating the prohibited transaction rules of ERISA. Over the last 15 years, our team (including our tenure with U.S. Trust) has served as an independent fiduciary on behalf of employee benefit plans in connection with more exemptions than the next two competing firms combined, including many of the most complex exemptions granted by the DOL to large financial institutions and Fortune 500 corporations. These prohibited transaction exemptions have permitted transactions including in-kind contributions, in-kind redemptions, captive reinsurance arrangements, sale of assets to plans, rights offerings, demutualizations, sale/leasebacks of real estate, provision of services to plans, and issues arising out of the consolidation of financial institutions.

In addition to transactions requiring an individual exemption, Evercore Trust Company also regularly serves as independent fiduciary pursuant to class exemptions issued by the U.S. Department of Labor including the settlement of litigation consistent with the requirements of Class Exemption 2003-39. Our team has served as an independent fiduciary for ERISA-covered plans in connection with approximately 85 ERISA, securities, and derivative class action settlements since the issuance of the Class Exemption in 2003. These settlements have included matters settling for only structural relief, cash settlements ranging from less than $5 million to more than $3 billion, and settlements requiring an ongoing monitoring role. Representative engagements include the following:

ERISA Settlements
- Bristol Myers Squibb Co.*
- BellSouth Corp.*
- Caterpillar Inc.
- Comerica, Inc.*
- Freddie Mac
- General Electric Company
- McKesson Corporation*
- Qwest Communications Int'l*
- The St. Paul Travelers Companies*
- Xerox Corporation*

Securities Settlements
- ChoicePoint*
- Lucent Technologies
- The Coca-Cola Co.
- Raytheon Company
- Royal Ahold*
- Royal Dutch/Shell*
- Schering Plough Corporation
- State Street Corporation (Enron)

\* SFS was separately engaged with respect to both the ERISA and the securities settlements.

Evercore Trust Company Management
Charles Wert and Norman Goldberg, both recognized leaders in the field, lead a team of 29 professionals, including relationship managers, plan administrators, financial analysts, and experienced in-house legal counsel. Our senior management has an average of over 25 years of industry experience. All settlement engagements are overseen by Mr. Goldberg, Evercore Trust Company's Chief Fiduciary Officer. Of note, Mr. Goldberg supervised most of the Department of Labor's ERISA litigation for eight years, from 1977 to 1985. Biographies for key SFS employees are below.

***Charles E. Wert***          ***President***
                   ***Chief Executive Officer***

Mr. Wert serves as President and CEO of Evercore Trust Company. Prior to joining Evercore, Mr. Wert served as an Executive Vice President and Senior Trust Officer of U.S. Trust for more than 20 years. Mr. Wert's responsibilities included administration and supervision of the Special Fiduciary Services business, as well as marketing of fiduciary services to corporate employee benefit plans. Mr. Wert founded United Mercantile Bank and Trust Company, a national bank in Pasadena, California, and served as its President and Senior Trust Officer from 1982 until 1987. Mr. Wert also spent twelve years as Vice President and Trust Officer of California First Bank, a state-chartered financial institution.

Mr. Wert received a B.A. degree in Finance and Business Administration from California State University, Los Angeles.

**Norman P. Goldberg**         **Chief Fiduciary Officer**
                              **Managing Director**

Located in the Washington, D.C. office, Mr. Goldberg serves as the fiduciary officer for many of the high profile clients of Evercore Trust Company, as he brings a great depth of experience and knowledge related to ERISA and fiduciary matters. Mr. Goldberg directs our financial analysis and legal groups. Mr. Goldberg's previous affiliations include serving as the supervising attorney for the Office of the Solicitor of the Department of Labor, where he was responsible for overseeing most of the litigation initiated by the Department of Labor under ERISA between 1977 and 1985. Mr. Goldberg served with two financial services firms specializing in ERISA prior to joining our team in 1993. He has a national reputation and is noted for his fiduciary expertise with respect to employee benefit plans subject to ERISA. Mr. Goldberg is also a frequent lecturer on employee benefit plans and fiduciary responsibilities and has published numerous articles.

Mr. Goldberg received his B.A. in Political Science from Brandeis University and his J.D. from Georgetown University.

**Gloria E. Pollack, Esq.**         **Chief ERISA Counsel**
                                   **Managing Director**

Ms. Pollack is located in the New York office and serves as in-house ERISA counsel for various client matters. Prior to joining our team in 1996, she was employed by the Office of the Solicitor of the Department of Labor (from 1978 to 1980) and in private practice at the law firm of Weil Gotshal & Manges.

Ms. Pollack earned her B.A. from the State University of New York at Binghamton and her J.D. from Washington University in St. Louis.

**David A. Cohen, Esq.**         **Senior Vice President**
                                 **Fiduciary Counsel**

Mr. Cohen is located in the Washington, D.C. office and serves as in-house fiduciary counsel. He provides advice and guidance on a broad range of ERISA matters relating to all aspects of our business. Prior to joining the SFS team in 2005, Mr. Cohen was in private practice at a major Washington, D.C. law firm, where his practice encompassed corporate law, mergers and acquisitions, and antitrust law. Mr. Cohen is admitted to practice in the District of Columbia and Maryland, and is an active member of the American Bar Association's Labor and Employment Law and Taxation Sections.

Mr. Cohen earned his B.A. in Politics and Economics from Brandeis University, his M.A. in International Economics and Finance from Brandeis University, his J.D. degree from The American University Washington College of Law, and his L.L.M. in Taxation, with Distinction, with a Certificate in Employee Benefits Law, from Georgetown University Law Center.

**Valeria Garcia-Tufro, Esq.**   *Vice President*
                                 *Counsel*

Ms. Garcia-Tufro is located in the New York office and serves as in-house counsel on a variety of matters. Prior to joining our team in 2006, she worked in private practice at a major New York law firm where she focused on a variety of matters including general corporate law, and mergers and acquisitions.

Ms. Garcia-Tufro earned her B.A. from the University of Virginia and her J.D. from the Georgetown University Law Center.

**William N. Glasgow**   *Senior Financial Analyst*
                         *Managing Director*

Mr. Glasgow is located in the Washington, D.C. office and leads the finance group of Evercore Trust. The finance group is primarily responsible for preparing financial reviews on client companies (both private and public), reviewing external financial analysts' reports, and overseeing outside financial advisors with regard to valuations performed for various types of transactions, including leveraged ESOPs, profit-sharing, and defined benefit plans. Mr. Glasgow is also responsible for portfolio management decisions on large blocks of company stocks held in employee benefit plans for client companies.

Mr. Glasgow received his B.S. in Biology from Hampden-Sydney College and his M.B.A. from Virginia Polytechnic Institute and State University.

**John M. Matelis, CFA**   *Financial Analyst*
                           *Senior Vice President*

Mr. Matelis is located in the Washington, D.C. office and serves as a financial analyst for Evercore Trust. His primary responsibilities include actively monitoring client companies, performing analyses to support investment management decision-making, and preparing financial reviews. He works on a variety of assignments, including prohibited transaction exemptions, corporate divestitures, negotiated sales of plan assets, and proxy voting. In addition, he supports the marketing efforts of Evercore Trust. Prior to joining the SFS team in 2006, Mr. Matelis spent three years in management consulting at Booz Allen Hamilton and five years in commercial lending at SunTrust Bank. He earned the right to use the Chartered Financial Analyst designation in 2009 and is a member of the CFA Institute and the CFA Society of Washington, DC.

Mr. Matelis earned his B.S. in Economics from James Madison University and his M.B.A. from the University of California at Irvine. He was the recipient of the George W. Brown Award in recognition of academic excellence and exceptional service to his business school community.

# EXHIBIT 2
## to the Settlement Agreement

## *Final Approval Order and Judgment*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated,    ) ) ) ) | **CASE NO. 1:11-cv-01112** |
| Plaintiffs,    ) ) ) | **Judge Milton I. Shadur** |
| v.    ) ) | |
| OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10.    ) ) ) ) ) ) ) ) ) | |
| Defendants.    ) ) | |

## FINAL APPROVAL ORDER AND JUDGMENT

This *Action* came for hearing on _____ to determine the fairness of the proposed settlement (the "*Settlement*") presented to the *Court* and the subject of this *Court's Order Granting Preliminary Approval of Class Action Settlement, Preliminarily Certifying a Class for Settlement Purposes, Approving Form and Manner of Class Notice, and Setting Date for Hearing on Final Approval of Settlement*. Due notice having been given and the *Court* having been fully advised in the premises,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

Except as otherwise defined herein, all capitalized and/or italicized terms used in this *Final Approval Order and Judgment* shall have the same meanings as ascribed to them in the *Settlement Agreement* executed by *Named Plaintiffs* and *Defendants*.

1

1.      The *Court* has jurisdiction over the subject matter of the *Action* and over all *Parties* to the *Action*, including all members of the *Settlement Class*.

2.      The *Court* has previously certified this *Action* as a class action pursuant to FED. R. CIV. P. 23.  On September 20, 2011, the *Court* issued its order certifying the following *Settlement Class* under FED. R. CIV. P. 23(b)(1):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between April 25, 2008, and the present (the "Class Period") and whose Plan accounts included investments in Old Second common stock.

(a)      In connection with the *Settlement*, *Named Plaintiffs* have requested, and *Defendants* do not oppose, modification of the certified class for settlement purposes only to include anyone who meets the following definition regardless of whether he or she signed a severance agreement and release upon terminating employment with *Old Second*:

> All *Persons* (excluding *Defendants* and their *Immediate Family Members*) who were participants in or beneficiaries (including alternate payees) of the *Plan* at any time between April 25, 2008 and February 25, 2013 (the "*Class Period*") and whose individual *Plan* accounts included investments in *Old Second Stock* during the *Class Period*.

(b)      Accordingly, the *Court*, in conducting the settlement approval process required by FED. R. CIV. P. 23, certifies solely for purposes of settlement the class set forth in section 2(a) above under FED. R. CIV. P. 23(b)(1) (the "*Settlement Class*").

(c)      Further, consistent with the *Court's* September 20, 2011 Order, the *Court* hereby appoints *Named Plaintiff* Emil Adolphson as the representative for the *Settlement Class* and *Class Counsel* and *Liaison Class Counsel* as counsel for the *Settlement Class*.  Mary Dalton remains a *Named Plaintiff* in the *Action*.

3.      The *Court* hereby approves the *Settlement Agreement* and orders that the

*Settlement Agreement* shall be consummated and implemented in accordance with its terms and conditions.

       4.     The *Court* finds that the *Settlement* embodied in the *Settlement Agreement* is fair, reasonable and adequate, and more particularly finds:

       (a)     The *Settlement* was negotiated vigorously and at arm's-length by counsel for the *Defendants,* on the one hand, and the *Named Plaintiffs* and *Class Counsel* on behalf of the *Class*, on the other hand;

       (b)     This *Action* settled after *Defendants'* motion to dismiss, which was denied by the *Court*, and after the *Named Plaintiffs'* motion for class certification was granted in part. The *Settlement* was reached following arm's-length negotiations among counsel, all of whom were thoroughly familiar with this litigation. *Named Plaintiffs* and *Defendants* had sufficient information to evaluate the settlement value of the *Action*;

       (c)     If the *Settlement* had not been achieved, *Named Plaintiffs* and *Defendants* faced the expense, risk, and uncertainty of extended litigation;

       (d)     The amount of the *Settlement* is fair, reasonable, and adequate. The *Settlement Amount* is within the range of settlement values obtained in similar cases;

       (e)     At all times, the *Named Plaintiffs* have acted independently of *Defendants* and in the interest of the *Settlement Class*; and,

       (f)     The *Court* has duly considered and denied any objections to the *Settlement* that were filed.

       5.     The *Plan of Allocation* is approved as fair and reasonable. *Class*

*Counsel* shall direct distribution of the *Net Settlement Fund* in accordance with the *Plan of Allocation* and the *Settlement Agreement*.

      6.    The *Court* has approved the following releases as set forth in Sections 1.18, 1.39, 3.1 and 3.2 of the *Settlement Agreement*:

    (a)    "*Defendants' Released Claims*" are any potential or asserted claims or demands against the *Named Plaintiffs*, *Class Counsel*, *Liaison Class Counsel*, or the *Settlement Class Members* by the *Individual Defendants*, the *Defendants' Insurers* and *Old Second* that arise from the institution or prosecution of this *Action* or relating to the settlement of any of *Plaintiffs' Released Claims*.

    (b)    "*Plaintiffs' Released Claims*" shall mean any and all *Claims* of any nature whatsoever, whether individual, representative, or derivative, known or unknown, accrued or unaccrued, by or on behalf of the *Plan*, the *Named Plaintiffs* and the *Settlement Class*, including respective heirs, beneficiaries, executors, administrators, *Successors* and assigns that: (a) were brought or could have been brought in the *Action* and arise out of the same or substantially similar facts, circumstances, situations, transactions or occurrences as those alleged in the *Action* during the *Class Period*; (b) were brought or could have been brought under *ERISA* based on or relating to the investment of *Plan* assets in *Old Second Stock* by or through the *Plan* during the *Class Period*; and/or (c) related to the prosecution, defense or settlement of the *Action*.

    (c)    <u>*Named Plaintiffs*, the *Settlement Class*, and the *Plan's* Releases</u>. Upon the *Effective Date*, the *Named Plaintiffs* (or their *Successors*) shall and hereby do conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge, and the *Plan* and the *Settlement Class* shall, by operation of the *Final Approval Order and Judgment*, be deemed to

have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the *Plaintiffs' Released Persons* from all *Plaintiffs' Released Claims*.

(d)     Defendants' Releases.   Upon the *Effective Date*, *Defendants* shall conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge *Defendants' Released Persons* from all of *Defendants' Released Claims*.

(e)     Scope of Releases.

The releases set forth in this section are not intended to include the release of any rights or duties of the parties arising out of this *Settlement Agreement*, including the express warranties and covenants contained therein, except as expressly provided in the *Settlement Agreement*.

7.     The *Action* is hereby dismissed without prejudice with a direction to the Clerk of the Court to enter final judgment pursuant to FED. R. CIV. P. 54(b), finding that there is no just reason for delay of enforcement or appeal of the instant Order. The *Court* hereby enjoins the *Parties* and *Settlement Class Members* from litigating or otherwise reopening issues resolved by this *Final Approval Order and Judgment*.  The dismissal without prejudice is solely to allow the *Court* to supervise the administration of the *Settlement*.

8.     The *Court* shall retain exclusive jurisdiction to resolve any disputes or challenges that may arise as to the performance of the *Settlement Agreement* or any challenges as to the performance, validity, interpretation, administration, enforcement, or enforceability of the *Class Notice*, *Plan of Allocation*, this *Final Approval Order and Judgment*, or the *Settlement Agreement* or the termination of the *Settlement Agreement*.  The *Court* shall also retain exclusive jurisdiction and rule by separate Order with respect to all applications for awards of attorneys'

5

fees and *Case Contribution Awards* to the *Named Plaintiffs*, and reimbursements of expenses, submitted pursuant to the *Settlement Agreement*.

9.     In the event that the *Settlement Agreement* is terminated, in accordance with its terms, this *Final Approval Order and Judgment* shall be rendered null and void, *ab initio,* and shall be vacated *nunc pro tunc*, and this *Action* shall for all purposes with respect to the *Parties* revert to its status as of the day immediately before November 21, 2012, the day the agreement was reached.  The *Parties* shall be afforded a reasonable opportunity to negotiate a new case management schedule.

10.     This *Final Approval Order and Judgment* shall not be construed or used as an admission, concession, or declaration of any fault, wrongdoing, breach or liability.  This *Final Approval Order and Judgment* is not admissible as evidence for any purpose against *Defendants* in any pending or future litigation involving any of the *Parties*.  This *Final Approval Order and Judgment* shall not be construed or used as an admission, concession, or declaration by or against *Defendants* of any fault, wrongdoing, breach, or liability and *Defendants* specifically deny any such fault, breach, liability or wrongdoing.  This *Final Approval Order and Judgment* shall not be construed or used as an admission, concession, or declaration by or against *Named Plaintiffs* or the *Settlement Class* that their claims lack merit or that the relief requested in the *Action* is inappropriate, improper or unavailable.  This *Final Approval Order and Judgment* shall not be construed or used as an admission, concession, declaration or waiver by any *Party* of any arguments, defenses, or claims he, she, or it may have in the event that the *Settlement Agreement* is terminated.  Moreover, the *Settlement Agreement* and any proceedings taken pursuant to the *Settlement Agreement* are for settlement purposes only.  Neither the fact of, nor any provision contained in the *Settlement Agreement* or its exhibits, nor any actions taken thereunder shall be

construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of

a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity

of any defense that has been, could have been, or in the future might be asserted.


IT IS SO ORDERED.


DATED: _____, 2013        _____

                                                 Hon. Milton I. Shadur
                                                 United States District Judge

# EXHIBIT 3
# to the Settlement Agreement

## *Plan of Allocation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10. <br><br> Defendants. | CASE NO. 1:11-cv-01112 <br><br> **Judge Milton I. Shadur** |

**PLAN OF ALLOCATION**

**I.      DEFINITIONS.**

Except as indicated in this *Plan of Allocation*, the capitalized and italicized terms used herein shall have the meaning ascribed to them in the *Settlement Agreement*.

**II.      CALCULATION OF ALLOCATION AMOUNTS.**

A.      Prior to disbursement of the *Net Settlement Fund* to the *Plan*, the *Company* or the *Company's Record Keeper* shall provide the *Settlement Administrator* with the data reasonably necessary to determine the amount of the *Net Settlement Fund* to be distributed to each *Settlement Class Member* in accordance with this *Plan of Allocation*.

B.      For each *Settlement Class Member*, the *Settlement Administrator* shall determine the approximate net loss ("*Net Loss*") as follows: *Net Loss* = A + B − C − D, where, for each *Settlement Class Member's* account:

1.  A = the dollar value, if any, of the balance invested in the *Company Stock Fund* on the first day of the *Class Period*;

2.  B = the dollar value, if any, of all acquisitions of the *Company Stock Fund* after the first day of the *Class Period* and during the *Class Period* as of the time of purchase(s);

3.  C = the dollar value, if any, of all dispositions of the *Company Stock Fund* during the *Class Period* as of the time of the sale(s); and

4.  D = the dollar value, if any, of the *Company Stock Fund* remaining on the last day of the *Class Period*.

In the event that a participant's account was transferred, in whole or in part, to a beneficiary (including an alternate payee) during the *Class Period*, the participant and the transferee beneficiary shall be treated as a single *Settlement Class Member* for the purpose of determining a *Net Loss*. The *Net Loss* shall then be allocated between the participant and beneficiary according to the proportion of the *Net Loss* attributable to the holdings of the participant and beneficiary.

C.      The *Net Losses* of the *Settlement Class Members* as calculated in Section II.B above will be totaled to yield the loss of the *Plan* as a whole over the *Class Period* (the "*Plan's Loss*").

D.      The *Settlement Administrator* shall calculate for each *Settlement Class Member* his or her "*Preliminary Fractional Share*" of the *Plan's Loss* by dividing each S*ettlement Class Member's Net Loss* by the *Plan's Loss*.

E.      The *Settlement Administrator* shall then calculate for each *Settlement Class Member* his or her "*Preliminary Dollar Recovery*" of the *Net Settlement Fund* by multiplying the *Settlement Class Member's Preliminary Fractional Share* by the *Net Settlement Fund*.

F.     The *Settlement Administrator* shall identify all *Settlement Class Members* whose *Preliminary Dollar Recovery* is greater than zero dollars ($0.00) but less than or equal to a minimum amount of ten dollars ($10.00) (the "*Minimum Amount*"). All such *Settlement Class Members* shall receive an allocation from the *Net Settlement Fund* of the *Minimum Amount*.

G.     The *Settlement Administrator* shall then, after subtracting out the amounts allocated to *Settlement Class Members* who receive the *Minimum Amount*, recalculate the *Preliminary Fractional Shares* and the *Preliminary Dollar Recoveries* so as to arrive at the "*Final Fractional Share*" and the "*Final Dollar Recovery*" for each *Settlement Class Member*. The sum of the *Final Dollar Recoveries* must equal the *Net Settlement Fund*.

## III.     DISTRIBUTION OF THE ALLOCATED AMOUNTS.

A.     As soon as practicable after the calculations pursuant to Section II above, *Class Counsel* shall direct the *Financial Institution* to deposit the *Net Settlement Fund* into the *Plan*. The funds deposited into the *Plan* shall be assets of the *Plan* for all purposes.

B.     **Settlement Class Members With Accounts Under the Plan.**  As promptly as reasonably possible after deposit of the *Net Settlement Fund* into the *Plan*, the *Settlement Administrator* shall forward to the *Plan* trustee for allocating into each *Settlement Class Member's* account under the *Plan* his or her *Final Dollar Recovery* as calculated above. The deposited amount shall be invested by the *Plan* trustee in any default investment option(s) designated by the *Plan*, and if the *Plan* has not designated any default investment option(s), in a stable value fund or similar fund under the *Plan*.

C.     **Settlement Class Members Without Accounts Under the Plan.**  With respect to *Settlement Class Members* who withdrew their accounts under the *Plan* after the beginning of the *Class Period* or whose accounts were transferred to a beneficiary (including an alternate payee),

3

the *Plan* trustee will establish an account for each such *Settlement Class Member* and deposit into that account the *Settlement Class Member's Final Dollar Recovery*. Each such *Settlement Class Member* will be notified of the account along with further instructions from the *Plan* trustee on how to access his or her account. The *Parties* agree that, pending instruction from such *Settlement Class Member*, the deposited amount in his or her account shall be invested in any default investment option(s) designated by the *Plan*, and if the *Plan* has not designated any default investment option(s), in a stable value fund or similar fund under the *Plan*.

D.      If any *Settlement Class Member* with a *Final Dollar Recovery* cannot be located despite reasonable efforts, such *Settlement Class Member's Final Dollar Recovery* shall be administered in accordance with the procedures of the *Plan* regarding participants who cannot be located. If any *Settlement Class Member* with a *Final Dollar Recovery* is deceased, such *Settlement Class Member's Final Dollar Recovery* shall be administered in accordance with the procedures of the *Plan* regarding deceased participants.

## IV.     QUALIFICATIONS AND CONTINUING JURISDICTION

A.      Depending on the manner in which the data is kept and the ease with which it can be manipulated, it may be appropriate to simplify some of the features of these calculations. Such simplifications are acceptable as long as the two basic features of the distribution of the *Net Settlement Fund* are preserved: (1) that each *Settlement Class Member* receives a proportionate share of the *Net Settlement Fund* based approximately on the decline in the value of the *Company Stock Fund* held in the *Settlement Class Member's* account over the *Class Period* in comparison with the decline in value of the *Company Stock Fund* held by all other *Settlement Class Members*; and (2) that the individual's share of the *Net Settlement Fund* is added to the *Settlement Class Member* or beneficiary's account under the *Plan* and distributed as a *Plan*

4

distribution so as to realize any potential tax advantage of investment in the *Plan*. Any such changes will be presented to the *Court* for approval pursuant to Section 5.B below.

B. The *Court* will retain jurisdiction over the *Plan of Allocation* to the extent necessary to ensure that it is fully and fairly implemented.


SO ORDERED this _____ day of _____, 2013.



_____
Hon. Milton I. Shadur

5