**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| MARY DALTON and EMIL ADOLPHSON, individually and on behalf of all others similarly situated, ) ) ) ) | **CASE NO. 1:11-cv-01112** |
| Plaintiffs, ) ) ) |  |
| v.  ) ) | Honorable Judge Milton I. Shadur |
| OLD SECOND BANCORP, INC., OLD SECOND NATIONAL BANK, EMPLOYEE BENEFITS COMMITTEE OF OLD SECOND BANCORP, INC., J. DOUGLAS CHEATHAM, JAMES ECCHER, WILLIAM B. SKOGLUND, ROBERT DICOSOLA, JEFF WEST, STEWART BEACH and DOES 1-10. ) ) ) ) ) ) ) ) ) |  |
| Defendants. ) ) |  |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION**
**FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,**
**AND CASE CONTRIBUTION AWARDS TO THE NAMED PLAINTIFFS**

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................3

        A.      Description of the Action..........................................................................3

        B.      Class Counsel Vigorously Litigated the Action......................................4

        C.      The Settlement Negotiations and Proposed Agreement .........................9

III.    NAMED PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS FAIR AND
        REASONABLE .................................................................................................11

        A.      The Percentage-of-the-Fund Method is the Preferred Method for this
                Action......................................................................................................12

        B.      The Request is Justified .........................................................................14

                1.      The Attorneys' Fees Application is Reasonable Given the Risks
                        Borne by Class Counsel ...............................................................14

                2.      Class Counsel is Experienced in Litigating Complex Class Actions ........17

                3.      The Attorneys' Fee Request Mirrors Awards in Analogous Matters ........20

        C.      The Lodestar Cross-Check and Multiplier Analysis Further Supports the
                30% Award of Attorneys' Fees...............................................................23

        D.      The Positive Reaction of the Settlement Class is Further Evidence of the
                Reasonableness of Class Counsel's Request .........................................25

        E.      The Court Should Reimburse Class Counsel for Expenses Incurred ...................25

        F.      The Requested Named Plaintiff Case Contribution Awards are Reasonable ........26

                1.      Plaintiff Adolphson's Service to the Class Justifies his Award................27

                2.      Plaintiff Dalton's Efforts in this Litigation Merits her Award .................29

IV.     CONCLUSION..................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*In re ADC Telecomm., Inc.,*
No. 03-cv-2989 (D. Minn. Oct. 16, 2006) ...................................................................22

*In re Advanta Corp. ERISA Litig.,*
No. 09-cv-04974 (E.D. Pa. June 4, 2010) ...................................................................18

*In re Advanta Corp. ERISA Litig.,*
No. 09-cv-4974, 2011 WL 4528341 (E.D. Pa. Sept. 30, 2011) ...............................17

*Alford v. United Community Banks, Inc.,*
No. 11-cv-309 (N.D. Ga. Jan. 31, 2013) ....................................................................17

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.,*
No. 02-cv-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005) ...............................17

*In re Aon ERISA Litig.,*
No. 04-cv-6875 (N.D. Ill. Sept. 15, 2010) .................................................................30

*In re Beazer Homes USA, Inc. ERISA Litig.,*
No. 07-cv-00952-RWS (N.D. Ga. Oct. 11, 2007) ....................................................18

*Blum v. Stenson,*
465 U.S. 886 (1984) .......................................................................................................12

*Brieger v. Tellabs,*
659 F. Supp. 2d 967 (N.D. Ill. 2009) ...............................................................11, 15

*Brieger v. Tellabs, Inc.,*
473 F. Supp. 2d 878 (N.D. Ill. 2007) .......................................................................17

*In re Cendant Corp., Der. Action Litig.,*
232 F. Supp. 2d 327 (D.N.J. 2002) .....................................................................28, 29

*In re Cendant Corp. Der. Action Litig.,*
232 F. Supp. 3d 327 (D.N.J. 2002) ...........................................................................25

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.,*
286 F.R.D. 621 (W.D. Okla. 2012) .....................................................................18, 19

*City of Burlington v. Dague,*
505 U.S. 557 (1992) .......................................................................................................14

*City of Greenville v. Syngenta Crop Protection, Inc.*,
  No. 10-cv-00188, 2012 WL 5252304 (S.D. Ill. Oct. 23, 2012)............................................20

*In re Cont'l Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..................................................................14, 24, 26

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................14, 26, 28

*Cooper v. IBM Personal Pension Plan*,
  No. 99-cv-829, 2005 WL 1981501 (S.D. Ill. Aug. 16, 2005)..........................................13, 19

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000)...............................................................25, 28

*Dann v. Lincoln Nat'l Corp.*,
  708 F. Supp. 2d 481 (E.D. Pa. Apr. 20, 2010) ...........................................................17

*Dann v. Lincoln Nat'l Corp.*,
  No. 08-cv-5740 (E.D. Pa. June 8, 2009) .................................................................18

*In re Diebold ERISA Litig.*,
  No. 06-cv-170 (N.D. Ohio Feb. 11, 2011)................................................................29

*DiFelice v. U.S. Airways, Inc.*,
  436 F. Supp. 2d 756 (E.D. Va. 2006) ....................................................................15

*Dudenhoefer v. Fifth Third Bancorp*,
  692 F.3d 410 (6th Cir. 2012) .............................................................................18

*In re Dynegy, Inc. ERISA Litig.*,
  309 F. Supp. 2d 861 (S.D. Tex. 2004) ...................................................................29

*Evans v. Akers*,
  534 F.3d 65 (1st Cir. 2008)............................................................................17

*Evans v. City of Evanston*,
  941 F.2d 473 (7th Cir. 1991), *cert. denied*, 502 U.S. 1219 (1992)..........................................11

*Fifth Third Bancorp, et al. v. Dudenhoeffer, et al.*,
  No. 12-751 (U.S. Dec. 14, 2012) .........................................................................15

*In re First American Corp. ERISA Litig.*,
  No. 07-cv-01357 (C.D. Cal. July 14, 2008)...............................................................17

*Florin v. Nationsbank of Georgia*,
  34 F.3d 560 (7th Cir. 1994) ................................................................11, 12, 13, 14

*Florin v. Nationsbank of Georgia, N.A.*,
   60 F.3d 1245 (7th Cir. 1995) ....................................................................24

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .....................................................................13

*Gee v. UnumProvident Corp.*,
   No. 03-cv-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005) ................17

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................14

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2nd Cir. 2000).......................................................................24

*Grosick v. Nat'l City Corp.*,
   No. 08-cv-00144-PAG (N.D. Ohio Jan. 17, 2008) ...................................18

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ..............................................................11, 24

*Harris v. First Regional Bancorp*,
   No. 10-cv-07164 (C.D. Cal. Jan. 26, 2011) ..............................................18

*In re Hartford Fin. Svc. Grp. Inc. ERISA Litig.*,
   No. 08-cv-01708, 2010 WL 135186 (D. Conn. Jan. 13, 2010) .................17

*Heekin v. Anthem, Inc.*,
   No. 05-cv-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012).............28

*In re Household Int'l, Inc. ERISA Litig.*,
   No. 02-cv-7921 (N.D. Ill. Nov. 22, 2004) ................................................29

*In re Ikon Office Solutions Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).................................................................20

*In re JDS Uniphase Corp. ERISA Litig.*,
   No. 03-cv-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005) ..............17

*Kling v. Fidelity Mgm't*,
   No. 01-cv-11939 (D. Mass. June 29, 2006).................................................14

*Kling v Fidelity Mgmt. Trust Co.*,
   No. 01-cv-11939 (D. Mass. June 29, 2006).................................................22

*Knight v. Red Door Salons, Inc.*,
   No. 08-cv-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).................17

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
  280 F.R.D. 364 (N.D. Ill. 2011) ............................................................................20, 21

*Landgraff v. Columbia/HCA Healthcare Corp.*,
  No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ...........................15

*In re Lear ERISA Litig.*,
  No. 06-cv-11735 (E.D. Mich. Apr. 10, 2006).........................................................18

*In re Lear ERISA Litig.*,
  No. 06-cv-11735 (S.D. Mich. Apr. 10, 2006).........................................................17

*In re Level 3, Inc. ERISA Litig.*,
  No. 09-cv-0658 (D. Colo. Mar. 26, 2012) ..............................................................22

*In re Linerboard Antitrust Litig.*,
  MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ..................................19

*Martin v. Caterpillar, Inc.*,
  No. 07-cv-1009 (C.D. Ill. Sept. 10, 2010) ..............................................................13

*Martin v. Caterpillar*,
  No. 07-cv-1009 (C.D. Ill. Sept. 10, 2010) ..............................................................21

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d 448 (D.N.J. 2008) .........................................................................21

*Mehling v. New York Life Ins. Co., et al.*,
  248 F.R.D. 455 (E.D. Pa. 2008)..............................................................................22

*In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
  No. 05-cv-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) ..................................17

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  No. 08-cv-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009).....................................17

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000), *aff'd*, 267 F.3d 743 (7th Cir. 2001) ..........25

*Meyenburg v. Exxon Mobil Corp.*,
  No. 05-cv-15, 2006 WL 2191422 (S.D. Ill. July 31, 2006).....................................21

*Morrison v. Citizens Republic Bancorp., Inc.*,
  No. 11-cv-11709, 2012 WL 6061928 (E.D. Mich. Aug. 20, 2012)........................17

*Nelson v. Hodowal (IPALCO)*,
  512 F.3d 347 (7th Cir. 2008) ..................................................................................15

*Nowak v. Ford Motor Co.*,
   240 F.R.D. 355 (E.D. Mich. 2006) .......................................................................18

*Pavlik v. FDIC*,
   No. 10-cv-816, 2011 WL 5184446 (N.D. Ill. Nov. 1, 2011) ....................................11

*Peabody v. Davis*,
   No. 05-cv-5026, 2010 WL 1416933 (N.D. Ill. Apr. 5, 2010), *aff'd in part, rev'd in
   part, and remanded*, Peabody v. Davis, 6363 F.3d 368 (7th Cir. 2011)................................15

*People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*,
   272 F.3d 939 (7th Cir. 2001) .............................................................................12

*In re R.H. Donnelley Corp. ERISA Litig.*,
   No. 09-cv-7571 (N.D. Ill. Jan. 10, 2011) ..............................................................17

*In re R.H. Donnelley Corp. ERISA Litig.*,
   No. 09-cv-7571 (N.D. Ill. Nov. 14, 2012) .............................................................30

*In re R.H. Donnelley Corp. ERISA Litig.*,
   No. 09-cv-7571 (N.D. Ill. Nov. 14, 2012) .............................................................22

*In re R.H. Donnelley ERISA Litig.*,
   No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010).............................................................18

*Rankin v. Rots*,
   No. 02-cv-71045 (E.D. Mich. June 27, 2006) .......................................................13

*In re Ready-Mixed Concrete Antitrust Litig.*,
   No 05-cv-0979 (S.D. Ind. Mar. 31, 2009) ............................................................13

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3rd Cir. 2005) ........................................................................23, 24

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012)......................................29

*In re Schering-Plough Corp. ERISA Litig.*,
   420 F.3d 231 (3d Cir. 2005)...............................................................................18

*In re Schering-Plough Corp. ERISA Litig.*,
   No. 03-cv-1204 (D.N.J. July 30, 2003)..................................................................18

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................12, 23

*In re Sears, Roebuck & Co., ERISA Litig.*,
   No. 02-cv-8324 (N.D. Ill. June 26, 2007)...............................................................30

*Shane, et al. v. Edge, et al.*,
No. 10-cv-50089 (N.D. Ill. Mar. 24, 2011)...........................................................18

*Silverman v. Motorola, Inc.*,
No. 07-cv-4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012).....................................12, 15, 26

*In re: SLM Corp. ERISA Litig.*,
No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008)...........................................................18

*Spann v. AOL Time Warner, Inc.*,
No. 02-cv-8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ..............................................21

*Summers v. State Street Bank and Trust Co.*,
453 F.3d 404 (7th Cir. 2006) ...........................................................16

*In re SunTrust Banks, Inc. ERISA Litig.*,
No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) ...........................................................18

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ...........................................................11, 14, 20

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ...........................................................18

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...........................................................20, 26

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ...........................................................20

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) ...........................................................14, 15, 20, 22

*Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.*,
No. 02-cv-1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004)..................................................21

*In re Trans Union Corp. Privacy Litig.*,
No. 00-cv-4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009), *modified and remanded on other grounds*, *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011).....12, 23

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ...........................................................12

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
886 F. Supp. 445 (E.D. Pa. 1995) ...........................................................14

*US Airways, Inc. v. McCutchen*,
133 S.Ct. 1537 (2013)...........................................................13

*In re Wafarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ........................................................................19

*In re Westar Energy Inc. ERISA Litig.*,
    No. 03-cv-4032 (D. Kan. July 27, 2006) .......................................................13, 22

*Will v. General Dynamics Corp.*,
    No. 06-cv-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)........................ passim

*Williams v. Rohm and Haas Pension Plan*,
    No. 04-cv-0078, 2010 WL 1644571 (S.D. Ind. Apr. 21, 2010), *aff'd Williams v. Rohm*
    *and Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011)..........................................12

*Wilson v. Federal Home Loan Mortgage Corp.*,
    No. 04-cv-2632 (S.D.N.Y. Feb. 7, 2005) .......................................................17

*Woods v. Southern Co.*,
    396 F. Supp. 2d 1351 (N.D. Ga. 2005) ..........................................................17

*In re Xerox Corp. ERISA Litig.*,
    No. 02-cv-1138 (D. Conn. Apr. 14, 2009) ......................................................22

*In re YRC Worldwide, Inc. ERISA Litig.*,
    No. 09-cv-2593 (D. Kan. Mar. 6, 2012) ..........................................................22

*In re YRC Worldwide, Inc. ERISA Litig.*,
    No. 09-cv-2593 (D. Kan. Oct. 29, 2010) ........................................................17

**STATUTES**

29 U.S.C. § 1001, *et seq*.................................................................................1

29 U.S.C. § 1024(b)(4) ..................................................................................4

29 U.S.C. § 1109 .........................................................................................3

29 U.S.C. § 1132 .........................................................................................3

**RULES**

FED. R. CIV. P. 23(g) ...................................................................................18

FED. R. CIV. P. 23(h) ...................................................................................25

FED. R. CIV. P. 30(b)(6) ................................................................................7

Plaintiffs Mary Dalton and Emil Adolphson (collectively, the "Named Plaintiffs"), participants in the Old Second Bancorp, Inc. Employees' 401(k) Savings Plan and Trust (the "Plan"), respectfully submit this Memorandum in Support of their Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards to the Named Plaintiffs. Named Plaintiffs file this memorandum along with their Unopposed Motion for Final Approval of Class Action Settlement,[1] Modification of the Class Definition, and Approval of Plan of Allocation (the "Final Approval Memorandum"). Named Plaintiffs request an award of attorneys' fees in the amount of $2,250,000, which represents thirty percent (30%) of the Class Settlement Amount of $7,500,000.00. In addition, Named Plaintiffs request reimbursement of out-of-pocket costs and expenses incurred in connection with the prosecution of this Action in the amount of $135,853.39. Class Counsel also asks the Court to approve the payment of Case Contribution Awards in the amount of $10,000 to Named Plaintiff Adolphson and $5,000 to Named Plaintiff Dalton in recognition of their contributions to this Action.

## I.      INTRODUCTION

This Settlement follows more than two years of hard-fought litigation. Class Counsel, experienced in ERISA[2]-based class actions, understood and accepted the risks inherent in this type of litigation, and obtained a meaningful recovery for the Settlement Class that will result in payments projected to average over $8,600 for each member of the Settlement Class which is

---

[1]     The Settlement Agreement is attached as Exhibit 1 to the Declaration of Mark K. Gyandoh in Support of Plaintiffs' Unopposed Motions for Final Approval of Class Action Settlement, Modification of Class Definition, and Approval of Plan of Allocation, and for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to the Named Plaintiffs (the "Gyandoh Declaration" or "Gyandoh Decl.") which further discusses the extensive efforts of Class Counsel in achieving this excellent result. The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein. Thus, all capitalized terms not otherwise defined in this Memorandum of Law shall have the same meaning as ascribed to them in the Settlement Agreement.

[2]     Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.

multiples of the amounts typically considered fair and reasonable in these types of cases. *See Report of Independent Fiduciary for Merry F. Shane et al. v. Kenneth E. Edge et al. Civil Action No. 3:10 CV 50089 (United States District Court for the Northern District of Illinois) (the "Litigation") Approving of Settlement and Release [Amcore]* ("Amcore IF Report"), at 7 (finding in an analogous ERISA action that "the net recovery will exceed $1000/ participant, which is substantial for these types of settlements.") (attached as part of Plaintiffs' Compendium of Law provided herewith). Due to the nature of this litigation, and the ever-evolving case law, at all times Class Counsel faced the very real risk of recovering nothing for the Class, while it expended substantial time and expenses. However, Class Counsel committed itself to the Action and successfully fought, on behalf of the Class, for an excellent recovery – particularly when viewed on an individual Settlement Class Member basis. This substantial recovery was due to the efforts of Class Counsel, aided by Liaison Class Counsel throughout the litigation. Class Counsel aggressively advocated for the Class and pursued all appropriate discovery and avenues of recovery. It was their skill, creativity, perseverance, and hard work that led to a successful resolution of this Action.

In light of the extensive efforts of Class and Liaison Counsel to recover for the Settlement Class, as well as the significant recovery obtained, the lack of any objections to any aspect of the Settlement by any Settlement Class Member to date,[3] and the expected approval of the Settlement by the Independent Fiduciary retained by Defendants, Plaintiffs believe their request for an award of fees in the amount of thirty percent of the recovery and for

---

[3] The deadline for objecting to the Settlement has not yet elapsed. Per the Order Granting Preliminary Approval of Class Action Settlement, Modifying Class Certification for Settlement Purposes, Approving Form and Manner of Class Notice, and Scheduling of a Final Approval Hearing, ("the Preliminary Approval Order") (Dkt. No. 175) entered by this Court on March 1, 2013, objectors have until May 24, 2013 to file objections. To the extent objections are filed, Class Counsel will submit a supplemental brief to the Court prior to the Final Approval hearing addressing those objections.

reimbursement of expenses is both reasonable and appropriate. Further, the fee request is plainly appropriate in light of the fact that the lodestar "cross-check" yields a "fractional" multiplier of 0.80. In other words, the requested fee represents a fraction of the actual amount of time expended by counsel in this matter. Lastly, in light of the willingness of the Named Plaintiffs to pursue this Action on behalf of the Class and assist Class Counsel with the litigation, Class Counsel asks that the Court approve Case Contribution Awards in the amount of $10,000 to Plaintiff Adolphson and $5,000 to Plaintiff Dalton.[4]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description of the Action

Plaintiff Mary Dalton initiated the Action against Defendants on February 17, 2011 by filing a complaint pursuant to §§ 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132. Dkt. No. 1. An amended complaint ("First Amended Complaint" or "FAC") was filed on June 21, 2011, in which Plaintiff Adolphson was added as an additional Named Plaintiff in the Action. Dkt. No. 39.

Plaintiffs alleged in Count I that Defendants breached their fiduciary duties to the Plan, to Plaintiffs, and to the proposed Class by, *inter alia*, failing to prudently and loyally manage the Plan's investment in Company securities by continuing to offer Old Second Stock as a Plan investment option when it was imprudent to do so. Plaintiffs alleged in Count II that certain Defendants breached their fiduciary duties by failing to adequately monitor other fiduciaries to whom management/administration of Plan assets was delegated. On June 15, 2012, Plaintiffs filed a second amended complaint ("Second Amended Complaint" or "SAC") to add a third count. Dkt. No. 103. The new Count contains additional allegations against Defendant Beach,

---

[4]    Per the Settlement Agreement, unless the Independent Fiduciary has an objection, Defendants will not oppose any motion for a Case Contribution Award. *See* Settlement Agreement § 11.3.

specifically for breach of the duty of loyalty and for failing to avoid conflicts of interest while serving as a fiduciary of the Plan. These allegations were associated with Defendant Beach's activities prior to resigning from the wealth management division of Old Second National Bank (the "Bank") in July 2011 to establish a rival financial advisory firm.

### B. Class Counsel Vigorously Litigated the Action[5]

Before filing the initial complaint in this matter, Class Counsel performed an in-depth investigation into the facts of the case by reviewing several years of public filings that relate to the Company and the Plan, reviewed respected publications and news reports that described the Company and the problems plaguing the banking industry, analyzed relevant case law and analogous ERISA actions to determine the potential viable legal claims, and interviewed multiple Plan participants. These efforts enabled Class Counsel to assemble the factual and legal underpinnings, including the identities of Plan fiduciaries, necessary for filing a detailed complaint.

This complex ERISA matter was contested by Defendants from the outset. Concurrently with filing the original complaint on February 17, 2011 (Dkt. No. 2), Plaintiffs immediately sought the production of all Plan-related materials from Defendants pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and requested all potentially relevant documents, information, and objects be preserved. On March 17, 2011, Old Second responded through its counsel producing several hundred pages of the requested documents. In anticipation of the exchange of voluminous confidential documents, on May 20, 2011, the parties negotiated, executed, and

---

[5] The Gyandoh Declaration filed herewith sets forth in detail the work performed by Class Counsel, the hours involved, and the lodestar incurred. *See* Gyandoh Decl. at ¶¶ 29-38 and Exhibit 4. Liaison Class Counsel also provides details of the work it performed, the hours involved and the lodestar incurred. *See* Declaration of Robert L. Dawidiuk in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to the Named Plaintiffs ("Dawidiuk Declaration") at ¶¶ 2-5. The Dawidiuk Declaration itself is attached to the Gyandoh Decl. as Exhibit 7.

submitted a stipulated protective order on confidentiality (Dkt. No. 27), which the Court entered on May 31, 2011 (Dkt. No. 30).

Based upon information acquired from Defendants subsequent to the filing of the initial complaint, Plaintiffs prepared and filed the FAC on June 21, 2011. Dkt. No. 39. In response, Defendants filed a motion to dismiss (Dkt. No. 47) and a motion to strike Plaintiffs' request for a jury demand (Dkt. No. 45), both of which were filed on July 20, 2011. On July 26, 2011, before Plaintiffs had the opportunity to respond, the Court entered a minute order granting Defendants' motion to strike Plaintiffs' jury demand. Dkt. No. 54.

Following the Court's order regarding the motion to strike, Plaintiffs opposed Defendants' motion to dismiss, filing their memorandum on August 10, 2011. Dkt. No. 66. Defendants filed their reply memorandum seven days later. Dkt. No. 71. During the pendency of a decision on the motion to dismiss, the Parties moved ahead with the litigation. On August 16, 2011, Plaintiffs filed their motion for class certification. Dkt. No. 68. Defendants responded to Plaintiffs' class certification motion on August 30, 2011 (Dkt. No. 76), and Plaintiffs filed their reply memorandum on September 6, 2011 (Dkt. No. 78). On September 20, 2011, this Court granted in part and denied in part Plaintiffs' class certification motion. Dkt. No. 79. Specifically, the Court certified a class with Plaintiff Adolphson as the sole class representative.

On December 23, 2011, the Parties filed an agreed motion with the Court seeking to stay the litigation so the Parties could select an appropriate mediator and participate in a formal mediation session. Dkt. No. 91. The Court granted the motion on January 11, 2012, and stayed the Action until March 14, 2012. Dkt. No. 93. After a request by the Parties, the Court extended the stay until May 17, 2012. Dkt. No. 96. As described below, despite serious efforts, no settlement was reached at that time. Accordingly, following a status hearing on May 30, 2012,

the Court lifted the stay and the Parties resumed a full litigation posture.

Based on information obtained during Plaintiffs' investigatory and discovery efforts described above, Plaintiffs filed the Second Amended Complaint on June 15, 2012. On June 29, 2012, Defendants moved to dismiss the SAC. Dkt. No. 109. Plaintiffs responded on July 13, 2012 (Dkt. No. 130), and Defendants filed a reply on July 20, 2012 (Dkt. No. 143).

The Parties also engaged in significant discovery throughout the litigation. As noted above, informal discovery was initiated with the filing of the initial complaint when Class Counsel wrote to Old Second on behalf of Plaintiff Dalton requesting all operative Plan-related documents during the Class Period. Old Second responded through its counsel on March 17, 2011, producing several hundred pages of the requested documents which Plaintiffs diligently reviewed. Thereafter, the Parties engaged in formal discovery, which was both complex and expansive.

On May 6, 2011 and May 13, 2011, respectively, Plaintiffs served Defendants with requests for production of documents and interrogatories regarding ERISA-specific issues. Defendants served their responses to the interrogatories on June 24, 2011, but the requests for production required a lengthy meet and confer process. It was not until September 23, 2011 that the Parties reached an agreement regarding the scope of documents to be produced.

Plaintiffs also served Defendants with separate requests for production of documents and interrogatories regarding merits-related issues on September 7, 2011, to which Defendants responded on October 7, 2011. Altogether, Defendants produced over 90,000 pages of documents in this Action, which Plaintiffs diligently reviewed.

Defendants also served discovery upon Plaintiffs. On May 16, 2011, Defendants served a request for production of documents on Plaintiff Dalton, and subsequently served a request for

production of documents on Plaintiff Adolphson on June 27, 2011 to which Plaintiffs responded.

On August 10, 2011, Plaintiffs conducted a FED. R. CIV. P. 30(b)(6) deposition of the Plan. In late 2011 and into 2012, Plaintiffs served supplemental discovery requests on Old Second and also took the depositions of two Defendants – Robert DiCosola (December 7, 2011) and Jeff West (January 4, 2012). During that time period, Plaintiffs also served subpoenas on the Plan's auditor Grant Thorton, the Plan's two recordkeepers during the Class Period, HPL&S and Retirement Direct, and the Plan's fiduciary counsel Barack Ferrazzano Kirschbaum & Nagelberg LLP ("Barack Ferrazzano"). Plaintiffs also served subpoenas on former Bank employees, Rodney Sloan (former Chief Risk Officer), and as described in greater detail below, on Jonathon Hylton, Nicholas A. Latko, and Michael J. Morcos. Additionally, Plaintiffs served a subpoena on the firm of Bazos, Freeman, Kramer, Schuster, Vanek and Kolb with respect to allegations against Defendant Beach. Meanwhile, Defendants also continued their discovery efforts which included deposing Plaintiff Dalton on January 12, 2012 and Plaintiff Adolphson on January 13, 2012.

After a stay of the case through May 2012 for the Parties to engage in mediation (as discussed in more detail below), discovery resumed. This included the production and review of substantial documents and other electronically stored information.

Thereafter, the Parties engaged in significant briefing related to discovery sought by the Plaintiffs in June and July of 2012. As noted above, on June 20, 2012, Plaintiffs served subpoenas on three former Bank employees, who were associates of Defendant Beach, seeking documents and information related to the conflicts of interest allegations against Defendant Beach. On July 6, 2012, Defendants moved to quash the subpoenas (Dkt. No. 112), and on July 10th, the three third-parties filed a motion to join the motion to quash (Dkt. No. 128). Plaintiffs

filed an opposition to Defendants' motion to quash on August 1, 2012 (Dkt. No. 144), and Defendants filed their reply memorandum five days later (Dkt. No. 145).

Additionally, on July 16, 2012, Plaintiffs filed three motions to compel production of discovery regarding three sets of discovery topics: (1) the conflicts of interest allegations against Defendant Beach; (2) the financial performance of Old Second during the Class Period; and (3) Old Second's acquisition of HeritageBanc, Inc. Dkt. Nos. 131-139. Defendants opposed Plaintiffs' motions to compel on July 19, 2012 (Dkt. Nos. 140, 141), and Plaintiffs filed their reply memoranda on August 6, 2012. Dkt. Nos. 146-148.

On August 7th, the Court entered a minute order granting two of Plaintiffs' motions to compel (Dkt. No. 151), and three weeks later on August 28th entered another minute order granting Plaintiffs' third motion to compel. Dkt. No. 152. Additionally, the Court denied Defendants' motion to quash the three third-party subpoenas related to the conflicts of interest allegations against Defendant Beach. Dkt. No. 151.

On September 19, 2012, Plaintiffs deposed Mr. Morcos, who worked closely with Defendant Beach, and on October 18, 2012, Plaintiffs deposed Mr. Sloan. On November 7, 2012, Plaintiffs deposed Andrew K. Strimaitis, an attorney with Barack Ferrazano, in his capacity as the Plan's fiduciary counsel.

This Court entered a Memorandum Opinion and Order on November 2, 2012 denying Defendants' motion to dismiss in its entirety. Dkt. No. 161. Subsequently, on November 16, 2012, Defendants filed their answer to Plaintiffs' Second Amended Complaint. Dkt. No. 162. Shortly thereafter, the Parties agreed to restart their settlement discussions.

The above efforts enabled Plaintiffs to delve into the merits of the Action including identifying the Defendants, other persons and entities believed to have discretionary fiduciary

authority or control over the Plan and the Plan's assets. With respect to the Second Amended Complaint in particular, Plaintiffs' allegations against Defendant Beach were based on information obtained through their counsel's investigation (including pleadings from a separate case) and diligent review of documents produced in discovery, as well as deposition testimony.

### C.     The Settlement Negotiations and Proposed Agreement

The settlement negotiations in this Action were intense and certainly arm's-length. As noted above, the Parties participated in three separate mediation sessions and utilized two different mediators before reaching the Settlement. First, on May 3, 2012, the Parties participated in a full-day mediation session in Chicago before the Honorable Donald P. O'Connell, Chief Judge Circuit Court of Cook County, IL (Ret.). In advance of that session, the Parties submitted extensive, written, confidential mediation memoranda to Judge O'Connell, and Class Counsel consulted with appropriate experts concerning damages and liability issues. During the mediation, attended by counsel and individual parties, the Parties made formal presentations and engaged in spirited debate as to critical legal and factual issues concerning liability and damages. The Parties concluded discussions that day remaining far apart in their respective positions and returned to a litigation posture.

On October 30, 2012, Class Counsel and individual parties (including Plaintiff Adolphson) again attended an in-person mediation session in Chicago before Judge O'Connell. After another round of spirited debates, the Parties were unable to reach an agreement to settle but mutually agreed to participate in a subsequent mediation session with another well-respected mediator, David Geronemus of JAMS. On the eve of Thanksgiving (November 21, 2012), the Parties met with Mr. Geronemus in Stamford, Connecticut and presented their respective positions. Following a day of intense negotiations, the Parties agreed in principle to the

Settlement.

Throughout the litigation and extensive mediation process, Class Counsel was cognizant of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. The arm's-length nature of the three mediations (as well as interim settlement discussions) involving well-respected mediators and the participation of experienced advocates for the Parties, all strongly support the conclusion that the proposed Settlement is fair, reasonable, and adequate.

As noted above, the Settlement provides that the Defendants will pay $7,500,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[6] The Settlement allows for an excellent recovery for the individual members of the Settlement Class, because it is estimated that, on average, each Settlement Class Members will recover approximately $8,600.

The Settlement also accounts for the risks of proceeding with this matter to summary judgment or trial. One risk in particular is the establishment of the "breach date" that the fact-finder would have to determine. Specifically, assuming Plaintiffs could prove that Defendants breached their fiduciary duties, Plaintiffs would have to prove the date of such breach. The "breach date" would significantly impact the amount of damages the Class could recover. If the Court found the "breach date" to be closer to the end of the proposed Class Period when the Old Second Stock price was low, damages would be relatively smaller in comparison to a finding that the "breach date" occurred at the start of the Class Period or close to it when the Old Second Stock price was higher. *See* Discussion of the "breach date" in the Final Approval Memorandum, pp. 10-12.

Ultimately, Plaintiffs entered into the Settlement with a full and comprehensive

---

[6]    The Plan of Allocation is attached to the Settlement Agreement as Exhibit 3 and to the Gyandoh Declaration as Exhibit 2. It is discussed in detail in the Final Approval Memorandum at 19-21.

understanding of the strengths and weaknesses of their claims based on Class Counsel's extensive investigation during the prosecution of the Action, as well as their unique experience litigating ERISA-based matters.[7]

## III. NAMED PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS FAIR AND REASONABLE

In a common fund case such as this, the Court is empowered to compensate attorneys from the recovery obtained for plaintiffs, and award fees that are appropriate under the circumstances. *See Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit."); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991). "Also known as the common fund doctrine, this payment scheme is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton*, 504 F.3d at 691. While there is "no correct formula for determining a fee award," there are two methods of calculating the amount of fees that counsel may recover from a common fund that have been generally accepted: the "lodestar method" and the "percentage of the fund method." *Pavlik v. FDIC*, No. 10-cv-816, 2011 WL 5184446, at *3 (N.D. Ill. Nov. 1, 2011) (citing *Evans v. City of Evanston*, 941 F.2d 473, 477 (7th Cir. 1991), *cert. denied*, 502 U.S. 1219 (1992))). *See also Florin v. Nationsbank of Georgia*, 34 F.3d 560, 565 (7th Cir. 1994). The "lodestar" method entails multiplying the number of hours that the attorneys expended by the attorneys' normal hourly rates to create a "lodestar" figure. This "lodestar" figure is then adjusted by the court to compensate counsel for the contingent nature of the case, the quality of the work performed, delay in payment, and other factors. *See Florin*, 34

---

[7]  As discussed in greater detail below, Class Counsel tried an analogous ERISA suit to verdict four years ago in this Court. *See Brieger v. Tellabs*, 659 F. Supp. 2d 967 (N.D. Ill. 2009). *Tellabs* was one of only four ERISA-based actions that Class Counsel believes ever went to trial.

F.3d at 565. Alternatively, under the percentage of the fund method, the attorneys are paid a reasonable percentage of the fund created for the benefit of the class. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

In the Seventh Circuit, district courts have the discretion to employ either method (*see, e.g.*, *Florin*, 34 F.3d at 565-66; *Silverman v. Motorola, Inc.*, No. 07-cv-4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012)), but primarily have applied the percentage of the recovery method, cross-checked by a "rough" lodestar analysis. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011); *Will v. General Dynamics Corp.*, No. 06-cv-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010); *Williams v. Rohm and Haas Pension Plan*, No. 04-cv-0078, 2010 WL 1644571, at *1 (S.D. Ind. Apr. 21, 2010), *aff'd Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) (noting that "[i]n circuits where percentage-based awards are preferred or mandated, district courts are encouraged to use the lodestar method as a cross-check in order to ensure that a percentage-based amount falls within reasonable bounds."); *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729, 2009 WL 4799954, at *6 (N.D. Ill. Dec. 9, 2009), *modified and remanded on other grounds*, *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011).

A.      **The Percentage-of-the-Fund Method is the Preferred Method for this Action**

Although district courts have the discretion to use either approach, for over a decade the Seventh Circuit has strongly endorsed the percentage-of-the-fund method because it more closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases. *See People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 272 F.3d 939, 938 (7th Cir. 2001) ("we think the proper approach to the calculation of [attorneys' fees prejudgment] interest requires consideration of prevailing practices in the legal-services

market. This follows from the 'market mimicking' approach, orthodox in this circuit, to computing the fee award."). *See also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."); *Florin*, 34 F.3d at 566. The percentage of the fund method is "favored in the Seventh Circuit" particularly where that approach replicates the market. *Cooper v. IBM Personal Pension Plan*, No. 99-cv-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005); *see also Will*, 2010 WL 4818174, at *2; *In re Ready-Mixed Concrete Antitrust Litig.*, No 05-cv-0979, slip op. at 10 (S.D. Ind. Mar. 31, 2009) (noting the Seventh Circuit "has expressed a preference for the percentage of the fund approach").

To be sure, in these types of sophisticated ERISA class actions, there are few, if any, prospective class representatives with the ability to front the costs to litigate the case, and at the same time, compensate experienced attorneys for their time and effort to pursue the case. Here, a percentage of the benefit approach clearly best replicates the market. *See Martin v. Caterpillar, Inc.*, No. 07-cv-1009, slip op. at 4 (C.D. Ill. Sept. 10, 2010) ("[c]onsidering the paucity of cases such as this one, successfully challenging 401K pension plans for alleged ERISA violations, it would be unrealistic to believe that any lawyer would undertake such a case on other than a contingency-fee basis.").

Moreover, the common fund doctrine is appropriate in this ERISA Action and has been successfully applied in numerous ERISA cases.[8] *See supra* at pages 11-12. *See also In re Westar Energy Inc. ERISA Litig.*, No. 03-cv-4032 (D. Kan. July 27, 2006); *Rankin v. Rots*, No.

---

[8]    In a very recent decision, the Supreme Court endorsed the common fund method for recovery in an ERISA § 502(a)(3) suit. *See US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537 (2013) (holding where a health benefits plan is silent on the allocation of attorney fees as between the plan participant and the plan administrator, the common fund doctrine provides the appropriate default).

02-cv-71045 (E.D. Mich. June 27, 2006); *Kling v. Fidelity Mgm't*, No. 01-cv-11939 (D. Mass. June 29, 2006); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 456 (E.D. Pa. 1995) (reasoning common fund award of fees furthers the policies underlying ERISA); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (concluding common funds awards are appropriate in 401(k) and other ERISA class actions litigation to the same extent as in any other type of litigation).

### B.     The Fee Request is Justified

In affirming an award of fees equaling 30% of the settlement fund plus expenses, the Seventh Circuit in *Taubenfield v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) considered the following factors:  (1) risks borne by class counsel, (2) the quality of legal services rendered and (3) awards made by courts in other class actions which amounted to 30-39% of the settlement fund.  *Id.* at 600.

### 1.     The Attorneys' Fees Application is Reasonable Given the Risks Borne by Class Counsel

Courts have long recognized there is some degree of risk that attorneys will receive no fee – or at least not a fee that reflects their efforts – when representing a class.  *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) (citing *In re Cont'l Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)).  Accordingly, a court must factor a risk of loss into its fee assessment, otherwise counsel, whose only source of a fee is a contingent one, may be undercompensated.  *See Sutton*, 504 F.3d at 693-94.  When applying the percentage-of-the-fee approach, a court must assess the riskiness of the litigation by measuring the probability of success *at the outset* of the process, *see Florin*, 34 F.3d at 565 (emphasis in original), as the degree of risk in a particular case depends upon the merits of the claim and the difficulty of establishing those merits.  *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562

(1992)).

Class Counsel is in a unique position to evaluate the risks in this type of ERISA suit based not only on its extensive experience with similar ERISA class actions, but also specifically based on the fact that KTMC tried an analogous ERISA suit to verdict four years ago in this Court. *See Brieger v. Tellabs*, 659 F. Supp. 2d 967 (N.D. Ill. 2009). *Tellabs* was one of only four cases involving this type of ERISA-based action that Class Counsel believe ever went to trial[9] – all of which resulted in a verdict for Defendants, underscoring the extraordinary risks involved in litigating sophisticated ERISA class actions such as this one, including the risk of receiving no recovery at all.

As Class Counsel is fully aware, in general, complex class actions face significant litigation and trial risks on multiple fronts. *See Silverman*, 2012 WL 1597388, at *3 (court found the risk of nonpayment and the stakes of the case were significant where the matter was litigated for years, on a contingent basis, and plaintiffs faced risks at a lengthy trial). First, such cases take years to litigate and all costs are paid up-front by counsel. *See Taubenfeld*, 415 F.3d at 600 (court took into account the "contingent nature of the case" and "that lead counsel was taking on a significant degree of risk of non-payment with the case."). Further, the law in this area of ERISA jurisprudence is ever evolving and defendants challenge these cases at every stage of the process with ample resources. *See, e.g.*, *Fifth Third Bancorp, et al. v. Dudenhoeffer, et al.*, No. 12-751, Petition For A Writ of Certiorari (U.S. Dec. 14, 2012) (included in the Compendium of Law).

---

[9]       *Nelson v. Hodowal (IPALCO)*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006); *Landgraff v. Columbia/HCA Healthcare Corp.*, No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000). *Cf. Peabody v. Davis*, No. 05-cv-5026, 2010 WL 1416933 (N.D. Ill. Apr. 5, 2010) (finding at trial that fiduciaries of a retirement plan in a closely-held corporation breached their fiduciary duties under ERISA), *aff'd in part, rev'd in part, and remanded*, *Peabody v. Davis*, 6363 F.3d 368 (7th Cir. 2011).

In the instant Action, the Named Plaintiffs assumed a high degree of risk that their legal and factual arguments could be defeated. The uncertain nature of the claims is further supported by the fact that no other attorneys filed suits challenging Defendants' conduct in connection with the losses to the Plan. Instead, Class Counsel undertook their own investigation into the facts and developed their own theories of liability without the support or insight of an independent agency or independent report. These "theories of liability" could have been rejected by the Court at any stage of the litigation process, leaving Class Counsel with no recovery for any of their time or substantial expenses being advanced.

As noted above, another major hurdle Class Counsel faced from the beginning of the lawsuit was the likelihood of proving a breach of fiduciary duty as of April 25, 2008, assuming any breach could be proven. In fact, this was a major point of contention during the three mediations in light of its effect on damage calculations. *See* Discussion of the "breach date" in the Final Approval Memorandum, pp. 10-12. As the Seventh Circuit acknowledged in *Summers v. State Street Bank and Trust Co.*, 453 F.3d 404, 411 (7th Cir. 2006), "determining the 'right' point, or even range of 'right' points for a [] fiduciary to break the plan and start diversifying may be beyond the practical capacity of the courts to determine." *Id.*

Another major issue specific to the Action recognized by Class Counsel at the inception was the fact that at least some potential class members – an amount unknown at the time – signed employment releases. Class Counsel had to anticipate arguments regarding the effect of these releases, both with respect to class certification and damages. In fact, this issue was briefed by the Parties and addressed by this Court in its Order granting, in part, Plaintiffs' class certification motion, and resulted in Named Plaintiff Dalton not being certified as a class representative.

## 2.  Class Counsel is Experienced in Litigating Complex Class Actions

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08-cv-01520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009).  This is particularly true when litigating ERISA-based class actions in general and in prosecuting this Action in particular.  Class Counsel undertook this case due to their substantial experience handling class actions, complex litigation, and claims of the type asserted.  Class Counsel, led by Joseph H. Meltzer, Chair of the ERISA Litigation Department, and his partners Edward W. Ciolko and Peter A. Muhic, are experienced ERISA class action attorneys.  *See* Firm Resume of KTMC attached to the Gyandoh Declaration as Exhibit 6.  KTMC is experienced in opposing high-level motions, propounding and responding to sophisticated discovery requests, and analyzing plan-related documents and information that support the underlying substantive allegations.  The firm has routinely defeated motions to dismiss and motions for summary judgment,[10] and has prevailed in appeals before the First, Third, Sixth and Ninth Circuits, resulting in seminal decisions that have helped shape this evolving area of ERISA jurisprudence.  For instance, in *Evans v. Akers*, 534 F.3d 65 (1st Cir.

---

[10]     *See, e.g., Alford v. United Community Banks, Inc.*, No. 11-cv-309, slip op. (N.D. Ga. Jan. 31, 2013); *Morrison v. Citizens Republic Bancorp., Inc.*, No. 11-cv-11709, 2012 WL 6061928 (E.D. Mich. Aug. 20, 2012); *In re Advanta Corp. ERISA Litig.*, No. 09-cv-4974, 2011 WL 4528341 (E.D. Pa. Sept. 30, 2011); *In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-7571 (N.D. Ill. Jan. 10, 2011); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-cv-2593 (D. Kan. Oct. 29, 2010); *Dann v. Lincoln Nat'l Corp.*, 708 F. Supp. 2d 481 (E.D. Pa. Apr. 20, 2010); *In re Hartford Fin. Svc. Grp. Inc. ERISA Litig.*, No. 08-cv-01708, 2010 WL 135186 (D. Conn. Jan. 13, 2010); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009); *In re First American Corp. ERISA Litig.*, No. 07-cv-01357 (C.D. Cal. July 14, 2008); *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878 (N.D. Ill. 2007); *In re Lear ERISA Litig.*, No. 06-cv-11735 (S.D. Mich. Apr. 10, 2006); *In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, No. 05-cv-2369, 2006 WL 2050577 (D.N.J. July 11, 2006); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-cv-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005); *Gee v. UnumProvident Corp.*, No. 03-cv-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, No. 02-cv-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005); *Wilson v. Federal Home Loan Mortgage Corp.*, No. 04-cv-2632 (S.D.N.Y. Feb. 7, 2005).

2008), KTMC successfully argued that former employees who received lump sum distributions of the entire balance of their retirement plan have standing to sue under ERISA for fiduciary mismanagement of plan assets before they opted out. *See also In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005) (finding that a subset of participants in a defined contribution plan had standing to sue on behalf of the plan pursuant to ERISA § 502(a)(2)); *Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410 (6th Cir. 2012) (finding that defendants' express incorporation of SEC filings into the plan's summary plan description was sufficient to support an allegation that defendants conveyed misleading information to plan participants); *In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) (overturning the district court's grant of summary judgment). Indicative of their expertise, KTMC has been named Lead or Co-Lead Counsel in numerous breach of fiduciary duty class actions across the nation.[11] Recently, in appointing KTMC as interim lead class counsel in another ERISA breach of fiduciary duty class action, the Western District of Oklahoma stated:

> [T]he Court finds that KTMC is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary class actions. Further, KTMC's litigation efforts have resulted in favorable court opinions in a number of ERISA decisions denying motions to dismiss and motions for summary judgment. KTMC has also prevailed in appeals

---

[11]     Actions in which KTMC was appointed Lead or Co-Lead counsel include *In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. 621 (W.D. Okla. 2012) (appointing KTMC interim class counsel); *Harris v. First Regional Bancorp*, No. 10-cv-07164 (C.D. Cal. Jan. 26, 2011) (Order appointing KTMC interim class counsel); *Shane, et al. v. Edge, et al.*, No. 10-cv-50089 (N.D. Ill. Mar. 24, 2011) (appointing KTMC as Interim Co-Lead Class Counsel for the putative class); *In re Advanta Corp. ERISA Litig.*, No. 09-cv-04974 (E.D. Pa. June 4, 2010); *In re R.H. Donnelley ERISA Litig.*, No. 09-cv-07571 (N.D. Ill. Mar. 16, 2010); *Dann v. Lincoln Nat'l Corp.*, No. 08-cv-5740 (E.D. Pa. June 8, 2009) (order appointing KTMC as Interim Class Counsel for the putative plaintiff class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure); *In re SunTrust Banks, Inc. ERISA Litig.*, No. 08-cv-3384 (N.D. Ga. Oct. 5, 2009) (appointing KTMC Interim Co-Lead Class Counsel); *In re: SLM Corp. ERISA Litig.*, No. 08-cv-4334 (S.D.N.Y. Sept. 30, 2008); *Grosick v. Nat'l City Corp.*, No. 08-cv-00144-PAG (N.D. Ohio Jan. 17, 2008); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-cv-00952-RWS (N.D. Ga. Oct. 11, 2007); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006); *In re Lear ERISA Litig.*, No. 06-cv-11735 (E.D. Mich. Apr. 10, 2006); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-cv-1204 (D.N.J. July 30, 2003).

before the First, Third, Sixth, and Ninth Circuits resulting in seminal decisions that have helped shape this relatively new area of ERISA jurisprudence. Moreover, KTMC is one of only a very few firms in the country with trial experience in ERISA "company stock" fiduciary breach class actions. Finally, in addition to its extensive litigation experience, KTMC has also successfully engaged in extensive, intricate and successful settlement negotiations and mediations involving complex legal and factual issues involving ERISA claims, resulting in large recoveries for affected classes.

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. at 624.

Class Counsel was aided by Liaison Class Counsel, The Collins Law Firm, P.C., a well-respected and highly experienced litigation firm.[12] Based on their experience with these types of cases, Class Counsel expected to be challenged at every stage of the process, from the inception of the case until a settlement in principle was reached, which is precisely what occurred.

Class Counsel navigated a difficult case and ultimately negotiated a settlement that provides a significant benefit to Settlement Class Members on an individual basis. "The quality of Class Counsel's legal work both in and out of the courtroom is ably demonstrated by the benefits conferred on the Class as a result of the Settlement." *Cooper*, 2005 WL 1981501, at *16. As reflective of Class Counsel's skills and experience in this type of ERISA matter, the Settlement they negotiated is estimated to yield an individual recovery of over $8,600 per Settlement Class Member, on average, which, as discussed *supra* (on pages 1-2, 10), is well above the per participant recovery typically obtained in this type of litigation. *See* Amcore IF Report, at 7, included in Plaintiffs' Compendium of Law. As sister district courts have recognized, this factor strongly supports the adequacy of Class Counsel's fee request. *See, e.g.*, *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise."); *In re*

---

[12]   The Dawidiuk Declaration on behalf of Liaison Class Counsel, The Collins Law Firm, P.C., which includes the firm's resume, is attached as Exhibit 7 to the Gyandoh Declaration.

*Wafarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (noting counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"); *In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting "the most significant factor in this case is the quality of representation, as measured by the 'quality of the result achieved, … the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case'"). The significant Settlement here is indicative of Class Counsel's considerable work.

### 3. The Attorneys' Fee Request Mirrors Awards in Analogous Matters

In deciding fee levels in common fund cases, the Seventh Circuit directs district courts to "award counsel the market price for legal services" and instructs courts to make the determination "in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). In the Seventh Circuit, district courts have routinely awarded 30% for attorneys' fees in common fund matters. *See, e.g.*, *Taubenfeld*, 415 F.3d at 599-600 (finding the district court was within its discretion in awarding attorneys' fees to lead counsel of 30% of the settlement); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) (awarding class counsel 30% of the first $10 million recovered for the class).

In fact, one court in this Circuit recently observed, the established benchmark for fee awards in class actions is 33%. *See City of Greenville v. Syngenta Crop Protection, Inc.*, No. 10-cv-00188, 2012 WL 5252304, at *6 (S.D. Ill. Oct. 23, 2012) ("Courts throughout the Seventh Circuit routinely consider the fee awards in other class actions and conclude that a one-third contingency fee is standard."). *See also In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 380 (N.D. Ill. 2011) ("The fee request in this case equals just

under 32.7% of the cash common fund created under the settlement. Such a figure is widely recognized as a reasonable percentage"); *Will*, 2010 WL 4818174, at *2 ("Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market is 33.33% of the common fund recovered."); *Meyenburg v. Exxon Mobil Corp.*, No. 05-cv-15, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation"); *Teamsters Local Union No. 604 v. Inter–Rail Transp., Inc.*, No. 02-cv-1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in [sic] not uncommon"). The court in *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.* further noted "[t]hese figures are also in accord with a Federal Judicial Center Study that found that in federal class actions, median attorney fee awards were in the range of 27% to 30%." 280 F.R.D. at 381 (citing Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Federal Judicial Center 1996)). Indeed, higher percentages have been routinely awarded in similar actions in the Seventh Circuit as well as across the nation. *See, e.g.*, *Martin v. Caterpillar*, No. 07-cv-1009, slip op. at 2, 12 (C.D. Ill. Sept. 10, 2010) (court awarded one-third in attorneys' fees of the gross settlement fund of $16.5 million); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (awarding over 32% in attorneys' fees for a $215 million settlement); *Spann v. AOL Time Warner, Inc.*, No. 02-cv-8238, 2005 WL 1330937, at *7-8 (S.D.N.Y. June 7, 2005) (awarding 33% in attorneys' fees for a $2.9 million settlement).

The Seventh Circuit has underscored the importance of examining "[a]ttorneys's fees

from analogous class action settlements" because, it reasons, such awards can be "indicative of a rational relationship between the record" in the instant case "and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. Very recently, a court in this district awarded attorneys' fees of 30% of the settlement amount in a directly analogous ERISA breach of fiduciary class action. *See In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-7571 (N.D. Ill. Nov. 14, 2012) (Order granting plaintiffs' motion for award of attorneys' fees, reimbursement of expenses, and case contribution awards approving attorneys' fees representing 30% of settlement amount). This award has been mirrored by courts nationwide, confirming that awarding 30% for attorneys' fees is typical in ERISA fiduciary breach cases. *See, e.g.*, *In re Level 3, Inc. ERISA Litig.*, No. 09-cv-0658 (D. Colo. Mar. 26, 2012) (Order approving attorneys' fees representing 30% of settlement amount); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-cv-2593 (D. Kan. Mar. 6, 2012) (same); *In re Xerox Corp. ERISA Litig.*, No. 02-cv-1138 (D. Conn. Apr. 14, 2009) (same); *Mehling v. New York Life Ins. Co., et al.*, 248 F.R.D. 455, 464, 468 (E.D. Pa. 2008) (same); *In re ADC Telecomm., Inc.*, No. 03-cv-2989 (D. Minn. Oct. 16, 2006) (same); *In re Westar Energy, Inc., ERISA Litig.*, No. 03-cv-4032 (D. Kan. July 27, 2006) (awarding 30% of $9.25 million settlement); *Kling v Fidelity Mgmt. Trust Co.*, No. 01-cv-11939 (D. Mass. June 29, 2006) (awarding 30% of $10.85 million settlement fund).

As illustrated, Class Counsel's request for an attorneys' fee award of 30% of the Settlement here reflects the general market rate for class actions, including ERISA-based matters. In addition, Class Counsel's fee application of 30% is supported by the Settlement Agreement itself, a contract negotiated and executed with experienced defense counsel who agreed that Plaintiffs could seek a fee award up to 33.3% of the common fund. *See* Settlement Agreement § 11.1, attached to the Gyandoh Declaration as Exhibit 1. Further, the fact that no

Settlement Class Member has objected to this provision underscores its reasonableness.

**C.    The Lodestar Cross-Check and Multiplier Analysis Further Supports the 30% Award of Attorneys' Fees**

When evaluating attorneys' fee requests relating to settlement of large, complex class actions such as in this Action, courts may use the "lodestar" method as a "cross-check" of the percentage of fund approach.  *See, e.g.*, *Schulte*, 805 F. Supp. 2d at 598; *In re Trans Union Corp. Privacy Litig.*, No. 00-cv-4729, 2009 WL 4799954, at *6 (N.D. Ill. Dec. 9, 2009).  By using the "lodestar" method to verify the percentage-of-the-fee approach, the court preserves the ease of the latter with the accountability of the former.  *Id.* at *10.  The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours worked by counsel, or whether the fee is within some reasonable multiple of the lodestar.  *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 309 (3rd Cir. 2005) ("The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method…."); Manual For Complex Litigation (Fourth) § 14.122 (2004) ("the lodestar is at least useful as a cross-check ... using affidavits and other information provided by the fee applicant.")

Applying the lodestar method as a cross-check further supports awarding Class Counsel a 30% fee.  The requested fee of $2,250,000.00, is significantly less than Class Counsel's lodestar amount of $2,804,331.75 which arises from 7,930 hours prosecuting this matter.  In particular, and as discussed above, in the Final Approval Memorandum, and in the Gyandoh Declaration, Class Counsel vigorously prosecuted and pursued voluminous discovery throughout this Action. From the outset, Class Counsel worked diligently, conducting detailed investigative interviews of Plan participants, requesting and reviewing documents produced by Defendants and third-parties, successfully opposing Defendants' motion to dismiss, successfully obtaining class

certification, conducting numerous depositions both in Illinois as well as other states across the country including Arizona and Iowa, successfully moving to compel vital discovery from both Defendants and key third-parties/non-parties, participating in three, full-day mediation sessions, and successfully negotiating the fair and reasonable Settlement on behalf of the Class.

Courts are discouraged from second-guessing counsel's hourly rate and reported time. *See Continental I*, 962 F.2d at 568-70; *see also Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2nd Cir. 2000) (court took claimed lodestar at face value for purpose of running the cross-check); *Will*, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-07 (court may rely on summaries submitted by attorneys and need not review actual billing records)). Reference to the lodestar of $2,804,331.75 as reflected on the books and records of counsel, reveals that the requested amount results in a fractional multiplier of 0.80. Moreover, Class Counsel's time does not include the significant amount of additional time they will spend in connection with the administration of the settlement.

In short, Class Counsel requests fees that are a fraction of the total lodestar, as opposed to the typical situation where counsel seek a multiple of their lodestar. Such a fractional multiplier fails to account for the risk of loss Class Counsel accepted in pursuing this matter. *See, e.g.*, *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) ("a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for the services'") (quoting *Continental*, 962 F.2d at 569). As courts commonly approve a multiplier anywhere between one and four, *see Harman v. Lyphomed, Inc.*, 945 F.2d at 972, Class Counsel's request for a 30% award, which results in a fractional multiplier, underscores the reasonableness of their fee application.

**D.** **The Positive Reaction of the Settlement Class is Further Evidence of the Reasonableness of Class Counsel's Request**

Class Counsel specifically stated in the Class Notice, which was disseminated on April 1, 2013, or six weeks before the instant filing, that they would seek attorneys' fees up to 33%. The fact that no Settlement Class Member has objected to Class Counsel's request of an award of attorneys' fees *higher* than what Class Counsel is actually seeking is thus further support for the reasonableness of the request.[13] *See, e.g.*, *In re Cendant Corp. Der. Action Litig.*, 232 F. Supp. 3d 327, 337 (D.N.J. 2002) ("The absence of large numbers of objections mitigates against reducing fee awards); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (lack of objections supported approval of the fee request); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding, the fact that "99.9% of class members have neither opted out nor filed objections … is strong circumstantial evidence in favor of the settlements"), *aff'd*, 267 F.3d 743 (7th Cir. 2001). Further, as outlined in section 11.1 of the Settlement Agreement, counsel for Defendants do not oppose Class Counsel's request for attorneys' fees up to 33% along with the reimbursement of expenses from the common fund.

**E.** **The Court Should Reimburse Class Counsel for Expenses Incurred**

It is well established that counsel who create a common fund like the one in this Action are entitled to the reimbursement of litigation costs and expenses. *See* FED. R. CIV. P. 23(h). Courts regularly award reimbursement of those expenses that are reasonable and were necessarily incurred in litigating an action that ultimately settles with the creation of a settlement common fund. In prosecuting this Action for over two years, Class Counsel and Liaison Class Counsel expended $135,853.39 in expenses. These expenses are detailed in the declarations

---

[13] As noted *supra*, the objection deadline is May 24, 2013. To the extent objections are filed, Class Counsel will submit a supplemental brief to the Court prior to the Final Approval Hearing addressing the objections.

submitted by Class Counsel and Liaison Class Counsel, *see* Exhibits 5, 7 to the Gyandoh Declaration (setting forth in detail the work performed, the hours involved, the expenses incurred and the lodestar incurred), and reflect the typical costs of litigating this type of matter. *See Synthroid*, 264 F.3d at 722; *Continental I*, 962 F.2d at 570.

Among the major expenses is the payment to liability and damages experts, the necessary and reasonable costs related to the three separate mediation sessions with two different mediators, taking and defending multiple depositions across the country, including in Illinois, Arizona, and Iowa, and frequent travel to Chicago for Court hearings and conferences. All of these expenses equate to less than 2% of the Class Settlement Amount, an amount in-line with similar cases. *See Silverman*, 2012 WL 1597388, at *4 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. EMPIRICAL LEGAL STUD. 27, 70 (2004) (finding that "[c]osts and expenses for the sample as a whole were, on average 4 percent of the relief for the class")).

### F. The Requested Named Plaintiff Case Contribution Awards are Reasonable

The Seventh Circuit has explained that incentive awards "are justified when necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722. In deciding whether an incentive award is proper, and, if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d at 1016 (approving incentive award of $25,000). Indeed, as the *Cook* Court noted, "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Id.*

The excellent result obtained in this Action could not have been achieved without the substantial and continuing effort of the two Named Plaintiffs. From the time the initial complaint was filed, through the consolidation process and the amendments to the complaint, the Named Plaintiffs were kept abreast of the details of the litigation and offered their insight and opinions. To attest to their services as Named Plaintiffs, both Plaintiff Adolphson and Plaintiff Dalton have submitted declarations, which are attached to the Gyandoh Declaration as Exhibits 8 and 9, respectively. Therein, both Named Plaintiffs describe their employment with Old Second, their participation in the Plan, how they joined the Action, and the work they performed throughout the Action in connection with their roles as Named Plaintiffs, and in Plaintiff Adolphson's case, as the class representative. As detailed therein and discussed below, each Named Plaintiff estimates that he/she spent more than eighty (80) hours assisting with the Action. In recognition of the Named Plaintiffs' extensive efforts, and their contributions to the creation of the common fund available to the Settlement Class, the Settlement Agreement provides that the Named Plaintiffs may be paid from the Settlement Fund an amount of $10,000 for Plaintiff Adolphson and $5,000 for Plaintiff Dalton, both of which are warranted.

1.    **Plaintiff Adolphson's Service to the Class Justifies his Award**

Plaintiff Adolphson's service to the Class in this Action cannot be understated. From the time Plaintiff Adolphson was added to the Action on June 21, 2011 with the filing of the FAC, Plaintiff Adolphson spent approximately ninety (90) to one hundred (100) hours assisting with the litigation. Just some of the work Plaintiff Adolphson has done in connection with this Action includes his response to Defendants' request for production of documents on August 1, 2011, in which he produced seventy five pages of documents, and his subsequent supplemental two page production on August 24th, his frequent review of drafts of key submissions to which he provided

27

feedback prior to the filings, and his frequent contact with Class Counsel including dozens of telephone and written communications. Moreover, Plaintiff Adolphson spent half of a day preparing for his deposition, which Defendants conducted on August 31, 2012. Additionally, Plaintiff Adolphson attended the second mediation session on October 30, 2012, and spoke briefly to the attendees about his experiences at Old Second and his reasons for pursing this Action. Importantly, following the Court's September 20, 2011 class certification order, Plaintiff Adolphson was appointed as the sole Class Representative in the Action, meaning he had to shoulder all the risk and responsibility moving forward, a fact for which he should be compensated. *See, e.g.*, *In re Cendant Corp., Der. Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) ("awards are granted to reward the public service performed by lead plaintiffs"); *Cullen*, 197 F.R.D. at 145 ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

In total, Plaintiff Adolphson estimates that he spent between ninety (90) and one hundred (100) hours assisting with the litigation, including meeting face-to-face with Class Counsel three different times. In light of his significant contributions to the litigation and the Settlement Class, in connection with his role as both a Named Plaintiff and a Class Representative, Class Counsel requests a Case Contribution Award of $10,000 for Plaintiff Adolphson.

Courts within this Circuit have approved incentive awards of $10,000 or more in recognition of the efforts of named plaintiffs like Plaintiff Adolphson. *See Cook*, 142 F.3d at 1016 (Seventh Circuit affirmed award of $25,000 incentive payment to named plaintiff in ERISA action); *Heekin v. Anthem, Inc.*, No. 05-cv-01908, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving payment of $25,000 to each of the two named plaintiffs); *Will*, 2010 WL

4818174, at *4 (awarding $25,000 to each of the three named plaintiffs, noting "awards of $25,000 for each Plaintiff are well within the ranges that are typically awarded in comparable cases"); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-cv-7921 (N.D. Ill. Nov. 22, 2004) (awarding $10,000 to each class representative). *See also In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *8 (D.N.J. May 31, 2012) (approving a $10,000 incentive award); *In re Diebold ERISA Litig.*, No. 06-cv-170 (N.D. Ohio Feb. 11, 2011) (awarding $10,000 to each of the four named plaintiffs); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) (awarding $10,000 to the named plaintiff); *In re Cendant Corp., Der. Action Litig.*, 232 F. Supp. 2d. at 344 (awarding $25,000 to the named plaintiff) .

### 2.     Plaintiff Dalton's Efforts in this Litigation Merits her Award

Plaintiff Dalton stepped forward and initiated this Action in February 2011, and has been an integral part of the Action ever since.  Among the duties she fulfilled, Plaintiff Dalton responded to Defendants' request for production of documents on June 17, 2011, at which time she produced seventy seven pages of documents.  She also exchanged dozens of written communications with Class Counsel and spoke numerous times with Class Counsel by telephone, and reviewed many pertinent pleadings prior to their filing.  Plaintiff Dalton also accompanied Class Counsel to the first in-person settlement conference between counsel for the Parties on June 15, 2011.  Additionally, Plaintiff Dalton spent half a day preparing for her deposition, followed by a full-day deposition by Defendants on August 30, 2012.  All told, Plaintiff Dalton estimates that she spent approximately eighty (80) to ninety (90) hours assisting with the litigation, including two and a half days meeting face-to-face with Class Counsel.  The fact the Court did not certify Plaintiff Dalton as a class representative in its September 20, 2011 Order in no way diminishes her role as a Named Plaintiff or the immense amount of work she

performed over the past two and a half years to advance this case and assist in bringing it to a successful conclusion..   Accordingly, Class Counsel requests a Case Contribution Award of $5,000 for Plaintiff Dalton.

The requested award of $5,000 for Plaintiff Dalton is eminently reasonable and is in-line with other decisions from courts within this Circuit.  *See, e.g.*, *In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-cv-7571 (N.D. Ill. Nov. 14, 2012) (approving $5,000 case contribution awards to the two named plaintiffs); *In re Aon ERISA Litig.*, No. 04-cv-6875 (N.D. Ill. Sept. 15, 2010) (court approved $5,000 compensation to each of the named plaintiffs); *In re Sears, Roebuck & Co., ERISA Litig.*, No. 02-cv-8324 (N.D. Ill. June 26, 2007) (court approved case contribution awards of $5,000 for the four named plaintiffs).

## IV.   CONCLUSION

For all of these reasons, Named Plaintiffs respectfully request the Court award attorneys' fees in the amount of $2,250,000.00, approve the reimbursement of expenses in the amount of $135,853.39, and approve Case Contribution Awards in the amount of $10,000 to Named Plaintiff Adolphson and $5,000 to Named Plaintiff Dalton.

Dated:  May 14, 2012

Respectfully submitted,

/s/ Mark K. Gyandoh
Edward W. Ciolko
Peter A. Muhic
Mark K. Gyandoh
Julie Siebert-Johnson
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Class Counsel*

**THE COLLINS LAW FIRM, P.C.**
Shawn M. Collins
Robert J. Dawidiuk
Megan A. Drefchinski
1770 North Park Street
Suite 200
Naperville, Illinois 60563
Telephone:  (630) 527-1595
Facsimile:  (630) 527-1193

*Liaison Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.


*/s/ Mark K. Gyandoh*
Mark K. Gyandoh